LIONEL Z. GLANCY (#134180)
ROBERT V. PRONGAY (#270796)
LESLEY F. PORTNOY (#304851)
CHARLES LINEHAN (#307439)
PAVITHRA RAJESH (#323055)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff Ervin Derr*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERVIN DERR, Individually and on Behalf of All Others Similarly Situated,, <br><br> Plaintiff, <br><br> v. <br><br> RA MEDICAL SYSTEMS, INC., DEAN IRWIN, ANDREW JACKSON, MELISSA BURSTEIN, MARTIN BURSTEIN, RICHARD HEYMANN, MAURICE BUCHBINDER, MARTIN COLOMBATTO, RICHARD MEJIA, JR., PIPER JAFFRAY & CO., CANTOR FITZGERALD & CO., SUNTRUST ROBINSON HUMPHREY, INC., NOMURA SECURITIES INTERNATIONAL, INC., and MAXIM GROUP LLC, <br><br> Defendants. | Case No. '19CV1079 LAB NLS <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Ervin Derr ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ra Medical Systems, Inc. ("Ra Medical" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ra Medical; and (c) review of other publicly available information concerning Ra Medical.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Ra Medical securities pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's September 2018 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants, under the Securities Act of 1933 (the "Securities Act").

2. Ra Medical is a medical device company that purports to use its excimer laser-based platform for treatment of vascular and dermatological immune-mediated inflammatory diseases.

3. On September 27, 2018, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 4,485,000 shares of common stock at a price of $17.00 per share. The Company received proceeds of approximately $67.6 million from the Offering. The proceeds from the IPO were purportedly to be used for expansion of its direct sales force and marketing of its products; clinical studies for new products and product enhancements; and other research and development activities, working capital, and general corporate purposes.

4.   On March 14, 2019, the Company revealed that the fourth quarter 2018 financial results were negatively impacted by issues related to the hiring and training of qualified sales personnel as well as production limitations in the Company's manufacturing process.

5.   On this news, the Company's share price fell $2.14, nearly 33%, to close at $4.43 per share on March 15, 2019, on unusually heavy trading volume.

6.   By the commencement of this action, Ra Medical stock was trading as low as $4.00 per share, a nearly 77% decline from the $17 per share IPO price.

7.   The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that the Company's evaluation of sales personnel candidates was inadequate; (2) that the Company's training program for sales personnel was inadequate; (3) that, as a result, the Company could not reasonably assure that its newly hired sales personnel were adequately experienced; (4) that, as a result, the Company would suffer a shortage of qualified sales personnel; (5) that the Company's manufacturing process could not reasonably support increased catheter production; (6) that, as a result, the Company would suffer production delays; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **JURISDICTION AND VENUE**

9.   The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b). The Company's principal executive offices are in this district.

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13. Plaintiff Ervin Derr, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Ra Medical securities pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Ra Medical is incorporated under the laws of Delaware with its principal executive offices located in Carlsbad, California. Ra Medical's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "RMED."

15. Defendant Dean Irwin ("Irwin") was, at all relevant times, the Chief Executive Officer ("CEO"), Co-President, Chief Technology Officer, and Chairman of the Board of Directors of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Andrew Jackson ("Jackson") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Melissa Burstein ("Melissa Burstein") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendant Martin Burstein ("Martin Burstein") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant Richard Heymann ("Heymann") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendant Maurice Buchbinder ("Buchbinder") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21. Defendant Martin Colombatto ("Colombatto") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22. Defendant Richard Mejia, Jr. ("Mejia") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23. Defendants Irwin, Jackson, Melissa Burstein, Martin Burstein, Heymann, Buchbinder, Colombatto, and Mejia are collectively referred to hereinafter as the "Individual Defendants."

24. Defendant Piper Jaffray & Co. ("Piper Jaffray") served as an underwriter for the Company's IPO.

25. Defendant Cantor Fitzgerald & Co. ("Cantor") served as an underwriter for the Company's IPO.

26. Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") served as an underwriter for the Company's IPO.

27. Defendant Nomura Securities International, Inc. ("Nomura") served as an underwriter for the Company's IPO.

28. Defendant Maxim Group LLC ("Maxim") served as an underwriter for the Company's IPO.

CLASS ACTION COMPLAINT
4

29. Defendants Piper Jaffray, Cantor, SunTrust, Nomura, and Maxim are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Ra Medical securities issued in connection with the Company's IPO. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

31. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ra Medical's common shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Ra Medical common stock were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Ra Medical or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

34. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ra Medical; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

36. Ra Medical is a medical device company that purports to use its excimer laser-based platform for treatment of vascular and dermatological immune-mediated inflammatory diseases.

### The Company's False and/or Misleading Registration Statement and Prospectus

37. On September 24, 2018, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on September 26, 2018.

38. On September 27, 2018, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 4,485,000 shares of common stock at a price of $17.00 per share. The Company received proceeds of approximately $67.6 million from the Offering. The proceeds from the IPO were purportedly to be used for expansion of its direct sales force and marketing of its products; clinical studies for new products and product enhancements; and other research and development activities, working capital, and general corporate purposes.

39. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

40. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

41. Regarding the Company's sales force, the Registration Statement stated, in relevant part:

> We market and sell DABRA and Pharos primarily through our direct sales force in the U.S. As of June 30, 2018, we had a 15-person direct sales force in the U.S. with 12 persons focused on vascular and three persons focused on dermatology. Our sales force is organized by geographic sales territories, and each territory is managed by a sales manager who acts as the primary customer contact. We plan to continue to increase the size of our sales organization to expand our installed unit base and to increase utilization of the DABRA and Pharos. Our initial focus for DABRA is high-volume OBLs. We partner with distributors for DABRA and Pharos in select geographies outside of the U.S.
>
> Our marketing department currently consists of five professionals. Our marketing program focuses on:

- educating physicians regarding the proper use and application of DABRA and Pharos;

- supporting physicians' efforts to enhance referral opportunities;

- improving patient and caregiver awareness of our treatments; and

- facilitating national and international marketing programs.

We use a targeted marketing approach to introduce our products to the medical marketplace. We primarily target our marketing efforts to practitioners through marketing materials, medical conferences and journals. In addition, we host seminars and webinars where industry leaders discuss case studies and treatment techniques using DABRA and Pharos.

42. Moreover, regarding risks related to growing the Company's salesforce, the Registration Statement stated, in relevant part:

*We will need to grow the size of our organization, and we may experience difficulties in managing this growth.*

At June 30, 2018, we had 75 full-time employees. As our sales and marketing strategies develop, and as we transition into operating as a public company, we expect to need additional managerial, operational, sales, marketing, financial, and other personnel. Future growth would impose significant added responsibilities on members of management, including:

- identifying, recruiting, integrating, maintaining, and motivating additional employees;

- managing our internal development efforts effectively, while complying with our contractual obligations to contractors and other third parties; and

- improving our operational, financial and management controls, reporting systems and procedures.

Our future financial performance and our ability to successfully market and sell our products will depend, in part, on our ability to effectively

CLASS ACTION COMPLAINT

8

manage any future growth, and our management may also have to divert a disproportionate amount of its attention away from day-to-day activities in order to devote a substantial amount of time to managing these growth activities.

If we are not able to effectively expand our organization by hiring new employees and expanding our groups of consultants and contractors, we may not be able to successfully implement the tasks necessary to further develop and commercialize our products and, accordingly, may not achieve our research, sales and marketing goals, which would have a material adverse effect on our business, financial condition, and results of operations.

43.  Regarding risks affecting production, the Registration Statement stated, in relevant part:

*We may experience development or manufacturing problems or delays that could limit the potential growth of our revenue or increase our losses.*

We may encounter unforeseen situations in the manufacturing and assembly of our products that would result in delays or shortfalls in our production. For example, our production processes and assembly methods may have to change to accommodate any significant future expansion of our manufacturing capacity, which may increase our manufacturing costs, delay production of our products, reduce our product margin, and adversely impact our business. Conversely, if demand for our products shifts such that a manufacturing facility is operated below its capacity for an extended period, we may adjust our manufacturing operations to reduce fixed costs, which could lead to uncertainty and delays in manufacturing times and quality during any transition period.

Additionally, since all of our products are manufactured at our facility in Carlsbad, any contamination of the controlled environment, equipment malfunction, or failure to strictly follow procedures can significantly reduce our yield. A drop in yield can increase our cost to manufacture our products or, in more severe cases, require us to halt the manufacture of our products until the problem is resolved. Identifying and resolving the cause of a drop in yield can require substantial time and resources.

> If our manufacturing activities are adversely impacted, or if we are otherwise unable to keep up with demand for our products by successfully manufacturing, assembling, testing, and shipping our products in a timely manner, our revenue could be impaired, market acceptance for our products could be adversely affected and our customers might instead purchase our competitors' products, which would have a material adverse effect on our business, financial condition, and results of operations.

44. The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that the Company's evaluation of sales personnel candidates was inadequate; (2) that the Company's training program for sales personnel was inadequate; (3) that, as a result, the Company could not reasonably assure that its newly hired sales personnel were adequately experienced; (4) that, as a result, the Company would suffer a shortage of qualified sales personnel; (5) that the Company's manufacturing process could not reasonably support increased catheter production; (6) that, as a result, the Company would suffer production delays; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## The Subsequent Disclosures

45. On March 14, 2019, the Company revealed that the fourth quarter 2018 financial results were negatively impacted by issues related to the hiring and training of qualified sales personnel as well as production limitations in the Company's manufacturing process. The Company stated a press release, in relevant part:

> "During our steep ramp in the back half of 2018, we experienced certain issues that had an impact on our fourth quarter revenue and into 2019. In particular, the hiring and training of qualified sales personnel was dependent on the onboarding of our CCO and we also found that we needed a more robust training program for

CLASS ACTION COMPLAINT
10

our newly hired sales personnel," he added. "In addition, we experienced production limitations in our manufacturing process as we scaled up catheter production. We believe we addressed those issues and will begin to see the positive impact on revenue beginning in the second quarter of 2019."

46. On this news, the Company's share price fell $2.14, nearly 33%, to close at $4.43 per share on March 15, 2019, on unusually heavy trading volume.

47. By the commencement of this action, Ra Medical stock was trading as low as $4.00 per share, a nearly 77% decline from the $17 per share IPO price.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act
### (Against All Defendants)

48. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

49. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

50. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

51. Ra Medical is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

52. As issuer of the shares, Ra Medical is strictly liable to Plaintiff and the Class for the misstatements and omissions.

53. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

54. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

55. Plaintiff acquired Ra Medical shares pursuant and/or traceable to the Registration Statement for the IPO.

56. Plaintiff and the Class have sustained damages. The value of Ra Medical common stock has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

57. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

58. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

59. The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Ra Medical within the meaning of Section 15 of the Securities Act. The Individual Defendants had the power and influence and exercised the same to cause Ra Medical to engage in the acts described herein.

60. The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

61. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: June 7, 2019         GLANCY PRONGAY & MURRAY LLP

By:   *s/ Lesley F. Portnoy*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Ervin Derr*

## SWORN CERTIFICATION OF PLAINTIFF

Ra Medical Systems, Inc., **SECURITIES LITIGATION**

I, Ervin Derr, certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Ra Medical Systems, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Ra Medical Systems, Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ___ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 6/6/19

(Please Sign Your Name Above)

[REDACTED]

**Ervin Derr's Transactions in**
**Ra Medical Systems, Inc. (RMED)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 02/06/2019 | Bought | 500 | $7.3000 |