PHILIP C. TENCER (173818)
Phil@TencerSherman.com
LAUREN BUSHMAN (314865)
LaurenB@TencerSherman.com
TENCER SHERMAN, LLP
12520 High Bluff Drive, Suite 240
San Diego, CA  92130
T:  858-408-6900; F:  858-754-1260

*Counsel for Defendants Dean Irwin,
Melissa Burstein and Martin Burstein*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERVIN DERR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RA MEDICAL SYSTEMS, INC., DEAN IRWIN, ANDREW JACKSON, MELISSA BURSTEIN, MARTIN BURSTEIN, RICHARD HEYMANN, MAURICE BUCHBINDER, MARTIN COLOMBATTO, RICHARD MEJIA, JR., PIPER JAFFRAY & CO., CANTOR FITGERALD & CO., SUNTRUST ROBINSON HUMPHREY, INC., NOMURA SECURITIES INTERNATIONAL., and MAXIM GROUP LLC,<br><br>Defendants. | CASE NO. 3:19-cv-01079-LAB-AHG<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT BY DEFENDANTS DEAN IRWIN, MELISSA BURSTEIN AND BURSTEIN**<br><br>**CLASS ACTION**<br><br>**Date:**       **July 20, 2020**<br>**Time:**       **11:30 a.m.**<br>**Courtroom: 14A, 14th Floor**<br>**Judge:       Hon. Larry Alan Burns** |

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

**07-CV-01111-IEG(RBB)**
REPLY MEMORANDUM ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

I.   REPLY ................................................................................................... 1

II.   PLAINTIFFS' SECTION 11 CLAIM FAILS ............................................... 1

   A.   Plaintiffs Lack Standing Because They Do Not, And Cannot, Tie Their Stock Purchases To Shares Issued At The Ipo. ................... 1

   B.   Plaintiffs Do Not Plead A Material Misstatement Or Omission.......... 3

      1.   Claim That The Registration Statement Failed To Disclose "Off-Label" Marketing By Improperly Referring To "Atherectomy" Is Contrary To Risk Warning .................... 3

      2.   Plaintiffs Fail To Offer Any Evidence That The 2018 Calibration Issues Are The Same As The 2019 Calibration Issues. ................................................................... 5

      3.   Purported Lack Of Inadequate Documentation For Reporting Payments To Physicians ......................................... 5

      4.   Purported Failure To Disclose A Patient Injury Is Not Material.......................................................................... 6

      5.   Confidential Witnesses Are Not Reliable Because Plaintiffs Fail To Disclose Facts Supporting Accuracy ............ 6

   C.   Statements About Laws or Regulations are Misplaced ...................... 8

   D.   Defendants Met Their Duty to Disclose Under Item 303 ................... 8

III.   PLAINTIFFS' SECTION 10(B) CLAIM FAILS FOR LACK OF PARTICULARITY .................................................................................... 9

IV.   PLAINTIFFS' SECTION 10(B) CLAIM FAILS FOR LACK OF PARTICULARITY .................................................................................... 9

   A.   Allegations that "DABRA Failed to Calibrate and Ra Medical "Recalled Product" Fails for Lack of Specificity ............................... 9

   B.   Inadequate Sales Training Allegations Lack Specificity................... 11

   C.   Plaintiffs Conflate Marketing and Billing for Atherectomy ............. 11

   D.   No Facts Showing Disclosed Risk Factors Existed at the IPO.......... 12

   E.   There is No Evidence of Scienter ..................................................... 12

      1.   CW Allegations Do Not Support Strong Inference of Scienter ............................................................................ 13

      2.   Stock Sales Do Not Support Scienter ..................................... 13

      3.   The Core Operations Doctrine is Not Applicable ................... 14

      4.   Plaintiffs' Other Arguments Do Not Support Scienter ........... 14

V.   CONCLUSION...................................................................................... 15

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

# TABLE OF AUTHORITIES

## CASES

*Foster v. Wilson*, 504 F.3d 1046, 1050-51 (9th Cir. 2007) ............................................................. 13

*Gallagher v. Abbott Labs., Inc.*, 269 F.3d 806, 808-09 (7th Cir. 2001)......................................... 12

*In Re Dauo System* ............................................................................................................................ 7

*In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 347 (D.N.J. 2008) ................................ 2

*In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1042–43 (S.D. Cal. 2014)............................................................................................................................................ 14

*Inchen Huang v. Higgins*, 2019 WL 1245136, at \*14 (N.D. Cal. Mar. 18, 2019) ........................ 15

*Krim v. pcOrder.com, Inc.,* 402 F.3d 489, 498 (5th Cir. 2005).......................................................... 2

*Lifschitz v. NextWave Wireless Inc.*, 2011 WL 5839682, at \*1 (S.D. Cal. Nov. 21, 2011)............................................................................................................................................. 12

*S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784–85 (9th Cir. 2008) ......................................... 14

*Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 (7th Cir. 1995)............................. 12

## STATUTES

17 C.F.R. § 230.144 2007 ..................................................................................................................... 3

17 C.F.R. § 240.16a-2 2011 .................................................................................................................. 3

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

## I.   REPLY

In their moving papers, Dean Irwin, Melissa Burstein and Martin Burstein ("Defendants") addressed Plaintiffs' allegations and established why plaintiffs fail to properly allege a Section 11 claim. With respect to all claims, plaintiffs' allegations are not pled with the particularity mandated by Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Defendants also demonstrated that Plaintiffs have not pled facts giving rise to a "strong inference" of scienter. Rather than address these fatal defects, Plaintiffs continue to conflate unrelated issues, offer rank speculation, materially misrepresent allegations based upon purported confidential witnesses ("CWs"), and rely on conjecture to cobble together their securities fraud claim. Plaintiffs have introduced no facts – not a single CW statement – that suggest Defendants knew about or were part of an intentional scheme to defraud. Similarly, plaintiffs have articulated no theory why Ra Medical's independent directors, outside counsel or auditors engaged in such a scheme.

The Amended Complaint ("AC") and plaintiff's Opposition fails to establish any basis to infer scienter.  Not a single CW offers facts to show Defendants knew of, or acquiesced in, the issues giving rise to the troubles that Ra Medical faces. Likewise, Plaintiffs' "motive" allegations are pure conjecture.  Considered in their entirety, the scienter allegations fall well short of the mandate to plead "strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999). Accordingly, the AC suffers from fatal defects on multiple levels, and this Court should grant Defendants' Motion to Dismiss ("MTD") in its entirety.

## II.   PLAINTIFFS' SECTION 11 CLAIM FAILS

### A.   PLAINTIFFS LACK STANDING BECAUSE THEY DO NOT, AND CANNOT, TIE THEIR STOCK PURCHASES TO SHARES ISSUED AT THE IPO.

In their Opposition, plaintiffs' standing argument rests on their conclusion

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

that, "all of Ra Medical's publicly traded shares were issued in the IPO. (Opp. at 10). However, this allegation is negated by the more than eight million Ra Medical shares issued before the IPO, thirty-eight percent of which were held by persons or entities other than insiders or affiliates.

Plaintiffs fail to make out a Section 11 claim because they did not purchase their stock at the IPO and have failed to trace their shares back to the IPO. As one court explained, the "rigid application of the tracing requirement is a product of Congress' decision to balance the low-burden substantive proof [with a] high-burden standing requirement, and courts should not abrogate the congressional intent by expanding the 'virtually absolute' liability to claims of purchasers whose securities cannot be traced." *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 347 (D.N.J. 2008).

To the extent changes to the system of securities holding have made the tracing requirement too difficult to satisfy in some circumstances, the solution is legislative – not judicial. *See, e.g., Krim v. pcOrder.com, Inc.,* 402 F.3d 489, 498 (5th Cir. 2005) ("That present market realities, given the fungibility of stock held in street name, may render Section 11 ineffective as a practical matter in some aftermarket scenarios is an issue properly addressed by Congress. It is not within our purview to rewrite the statute to take account of changed conditions."). Of course, injured shareholders, such as plaintiffs here, who cannot satisfy Section 11's strict tracing requirement, can pursue their claims under Section 10(b), which is exactly what plaintiffs here have attempted to do.

In their opposition, plaintiffs argue that they do not have to trace their shares to the IPO because there were no Form 4s or Form 144s filed between the time Ra Medical went public and plaintiffs' purchase of shares in February 2019. (Opp. 10-12 and fn. 5.) Plaintiffs proffer that they reviewed all Form 4s and Form 144s filed for Ra Medical and that unregistered shares did not enter the market until April 11, 2019 and plaintiffs purchased their shares in February 2019. (*Id.* at fn. 5). Of

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

course, this argument ignores that only insiders and affiliates are required to file Form 4s or Form 144s when selling stock or unregistered securities. (*See, e.g.,* 17 C.F.R. § 240.16a-2 2011; 17 C.F.R. § 230.144 2007).

Before the IPO, sixty-two percent (62%) of the then-outstanding 8,204,851 shares of Ra Medical stock were held by insiders. (RJN, Ex. A at 146-47). That means that, at the IPO, more than three million shares of pre-IPO Ra Medical stock were held by non-insiders or affiliates. These stockholders had no obligation to file Form 4s or Form 144s with the SEC when selling their Ra Medical stock. Given that plaintiffs do not, and cannot, allege that any unregistered Ra Medical stock, for which Form 4s or Form 144s were not required to be filed, was not sold on the open market before plaintiffs acquired their Ra Medical stock in February 2019, plaintiffs are unable to trace their shares back to the IPO. This failure means they do not, and cannot, properly plead actual standing to assert a Section 11 claim.

**B.**      **PLAINTIFFS DO NOT PLEAD A MATERIAL MISSTATEMENT OR OMISSION**

      **1.**      **CLAIM THAT THE REGISTRATION STATEMENT FAILED TO DISCLOSE "OFF-LABEL" MARKETING BY IMPROPERLY REFERRING TO "ATHERECTOMY" IS CONTRARY TO RISK WARNING**

Plaintiffs further argue that Defendants failed to disclose "off-label" marketing because Ra Medical informed doctors that it was proper to bill Medicare using an Atherectomy billing code, which was an off-label use. (Opp. at 15-18). However, the issue of Atherectomy was fully disclosed in the Registration Statement in the Risk Warnings. First, in its Registration Statement, Ra Medical disclosed:

> DABRA is used as a tool in the treatment of peripheral artery disease, or PAD, a form of peripheral vascular disease, which commonly occurs in the legs. These procedures are typically referred to in the medical community as *atherectomy* procedures. Even though the medical community refers to it as *atherectomy*, DABRA is not cleared for *atherectomy*. We intend to pursue an investigational

device exemption, or IDE, for DABRA to expand its indications for use to include an *atherectomy* indication for use, which FDA currently defines to include a prespecified improvement in luminal patency, and an indication for use for the treatment of in-stent restenosis. (RJN, Ex. D at 5 (numbered "1" in document) (emphasis added).)

Second, Ra Medical warned investors in the Registration Statement that:

Providers are also eligible for reimbursement for procedures that are performed using DABRA by using existing Current Procedural Terminology, or CPT, codes. The existence of a CPT code does not guarantee reimbursement, and payors impose restrictions on the use of codes. In addition, DABRA's easy setup and fast ablation speed reduce both treatment and fluoroscopy time, or x-ray exposure time, for the patient, physician, and staff, improving the providers' patient throughput. The average lasing time in our pivotal study was approximately two and a half minutes per procedure. Cost and time efficiencies can trigger Medicare payment reductions based on the resource based relative value payment methodology. (*Id.* at 8 (numbered "4" in document).)

Third, Ra Medical also warned investors in the Registration Statement that:

We recently received correspondence from a competitor claiming our promotion for the DABRA as an atherectomy tool used by surgeons to treat peripheral vascular disease is off-label promotion for the product. We disagree. If we are subject to enforcement action or competitor lawsuits relating to engaging in off-label promotion of our products, it could harm our reputation, financial condition or divert financial and management resources from our core business, and would have a material adverse effect on our business, financial condition and results of operations. (*Id.* at 25 (numbered "21" in document).)

Fourth, Ra Medical further disclosed in the Registration Statement that: [C]overage and reimbursement by third-party payors to our customers is also related to billing codes to describe procedures performed using our products. Hospitals and physicians use several billing codes to bill for such procedures. Third-party payors may not continue to recognize the CPT codes available for use by our customers. The CPT codes may change undermining our customer's ability to use those codes

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

4

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

and reimbursement may be interrupted. Furthermore, some payors may not recognize these codes for payment. ***If payors do not cover atherectomy, physicians may not perform as many DABRA treatments as they otherwise would perform.*** Consequently, we may not be able to sell as many catheters for DABRA treatments as projected. (*Id.* at p. 40 (numbered "36" in document) (emphasis added).)

Taken together, these disclosures make clear that it was Ra Medical's practice at the IPO to inform doctors that they could use the Atherectomy billing codes for DABRA. As such, plaintiffs were not misled about this issue.

### 2. PLAINTIFFS FAIL TO OFFER ANY EVIDENCE THAT THE 2018 CALIBRATION ISSUES ARE THE SAME AS THE 2019 CALIBRATION ISSUES.

Plaintiffs argue in their opposition that the calibration issue that Ra Medical identified to the FDA in February 2018 is the same issue that Ra Medical identified and faced in 2019. (Opp. pp. 13-15). According to the disclosure in February 2018, four DABRA machines experienced a calibration issue. (RJN, Ex. T). Approximately 18 months later, Ra Medical again experienced a calibration issue, this time dealing with the catheter. Plaintiffs offer no witnesses – only an assumption – that the calibration issue that was disclosed in 2018 was the same issue that purportedly continued to occur in 2019. As such, this claim fails for lack of specificity and is based upon pure conjecture.

### 3. PURPORTED LACK OF INADEQUATE DOCUMENTATION FOR REPORTING PAYMENTS TO PHYSICIANS

Plaintiffs next argue that Ra Medical failed to disclose a lack of an adequate system for reporting expenses to physicians. (Opp. at 18-19). However, the Company disclosed that it needed to "implement additional internal systems and infrastructure, including financial and reporting systems, as we become a public company." (RJN, Ex. D at p. 19 (numbered "15" in document).) Ra Medical also disclosed that it "identified a material weakness in our internal control over

financial reporting" (*Id.* at p. 29 (numbered "25" in document)) and that under Section 404, Ra Medical had a two year exemption from the public company requirement of an independent registered public accounting firm to attest to Ra Medical's effectiveness of its internal controls. (*Id.*) Taken together, these disclosures informed plaintiffs that Ra Medical lacked internal controls over its financial reporting systems and would not have those systems in place for twenty-four months. Thus, this issue was adequately disclosed.

### 4. PURPORTED FAILURE TO DISCLOSE A PATIENT INJURY IS NOT MATERIAL

Plaintiffs further argue that Ra Medical failed to disclose a patient injury which occurred during the pivotal study required for FDA approval. (Opp. at 20). Plaintiffs fail to allege, and their purported confidential witness fails to provide, facts concerning what that injury was and why Ra Medical was required to report that injury to the FDA. The FDA has guidelines and requirements for disclosures of patient injuries during pivotal studies. The confidential witness fails to: 1) identify the FDA requirements for reporting a pivotal study injury; 2) fails to identify the injury that occurred; and 3) fails to provide any facts to suggest that reporting was necessary. If an injury occurred during the pivotal study and it was not material, why would Ra Medical have any duty to disclose this fact in the Registration Statement, as plaintiffs suggest. Certainly, they cite no authority for their opposition on this point.

### 5. CONFIDENTIAL WITNESSES ARE NOT RELIABLE BECAUSE PLAINTIFFS FAIL TO DISCLOSE FACTS SUPPORTING ACCURACY

Plaintiffs argue, in reliance upon the Ninth Circuit's decision in *In Re Dauo Systems, Inc.,* 411 F.3d 1006, 1016 (9th Cir. 2005), that its CWs are credible because: 1) CW1 was the whistleblower who triggered the investigation by Ra Medical's Audit Committee; 2) CW2 was the Marketing Coordinator and Melissa Burstein's executive assistant before the IPO and submitted Melissa Burstein's

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

6

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

expense reports; and 3) CW3 sold DABRA catheters after the IPO so therefore CW3 knew about sales training, problems with DABRA and remedial efforts undertaken by Ra Medical. (Opp. at 20-21).

With respect to CW1, plaintiffs fail to satisfy the standard set forth in *In Re Dauo Systems*. As the Ninth Circuit explained, reliance on confidential witnesses requires "'sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.' *See Nursing Home*, 380 F.3d at 1233; *Silicon Graphics*, 183 F.3d at 985." (*In Re Dauo System,* 411 F.3d at 1016). As the Ninth Circuit explained, plaintiffs must allege facts that "'provide an adequate basis for believing that the defendants' statements were false.' *Novak,* 216 F.3d at 314; *see also Silicon Graphics*, 183 F.3d at 985 (complaint should include "adequate corroborating details")." In the AC, plaintiffs fail to allege any facts concerning CW1's position at Ra Medical. As such, there is no basis upon which to infer that CW1 was in a position to know the statements that are attributed to him in the AC.

With respect to CW2, plaintiffs argue in the opposition that CW2 "would have interacted with sales representatives regularly [and was] responsible for submitting [Ms. Burstein's] expense reports so CW2 would know about Ra Medical's reimbursement system." (Opp. at 21). Simply because someone is an executive assistant does not mean that she interacted with sales representatives or that she knew about Ra Medical's reimbursement system. Attending a trade show or sales training meeting as an executive assistant does not equate to interaction with sales representatives or knowledge about various company policies.

As to CW3, there is no basis for this witness to have any knowledge about problems reported by physicians regarding DABRA, unless the physician experiencing the problem was one of the physicians that CW3 visited as a salesman for Ra Medical. There are no other facts in the AC to support knowledge by CW3, other than attendance at training seminars put on by Ra Medical.

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

7

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

The lack of detail with respect to CW1's position and the lack of facts to suggest that CW2 and CW3 have any knowledge about much of what is attributed to them in the AC undermines their reliability.

## C.   STATEMENTS ABOUT LAWS OR REGULATIONS ARE MISPLACED

Plaintiffs' next argument in the opposition is that Ra Medical made false statements concerning various laws and regulations because it engaged in off-label marketing before the IPO. (Opp. at 21-22). Rather than provide factual allegations in the AC that the purported: 1) improper off-label marketing; 2) improper physician payments; and 3) failure to properly record those payments occurred both before and after the IPO, plaintiffs simply rely upon the conclusory statements of the Audit Committees finding in 2019 to assume that these issues existed before the IPO. There are no allegations in the complaint to support this conclusion. None of the confidential witness provide any facts, much less a basis for their knowledge, that these events occurred before the IPO.

## D.   DEFENDANTS MET THEIR DUTY TO DISCLOSE UNDER ITEM 303

Plaintiffs argue that Defendants had a duty to disclose omitted information – calibration failures that occurred in early 2018. (AC at 22-23). Their argument rests upon a faulty premise – that "according to the February 2018 Recall Notice, since February 2018 Ra Medical experienced problems with DABRA because it failed to calibrate." (*Id.* at 22). The February 2018 Recall Notice says nothing of the sort. While it does disclose that there were calibration issues on four DABRA devices before February 2018, it does not, and could not, state Ra Medical experienced calibration problems thereafter. (*See, e.g.,* RJN, Ex. T). While it may be the case that calibration issues occurred both before and after the IPO, there are no facts or witnesses to suggest that these issues were ongoing or that they arose from the same issue. As such, plaintiffs' conclusion is pure conjecture and this argument does not support falsity nor does it support plaintiffs' argument that Defendants failed to disclose a material fact under Item 303.

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

### III.   PLAINTIFFS' SECTION 10(B) CLAIM FAILS FOR LACK OF PARTICULARITY

In support of their Section 10b claim, plaintiffs rely upon the same arguments and issues used to support their Section 11 claims.  None of the claims are pled with the requisite particularity required by the Ninth Circuit.  As plaintiffs concede, they must state with particularity all facts to show how a statement or omission was materially misleading.  (Opp. at 25). Having relied upon the same facts to support both their Section 11 and Section 10(b) claims, plaintiffs conclude, without any factual support in the AC that "undisclosed problems in the Registration Statement also existed during the Class Period" and that "Defendants misleadingly attributed the problems to "production limitations" and a "new commercial strategy."'  (*Id.*) As set forth in the moving papers and explained in further detail below, plaintiffs' allegations do not meet the Ninth Circuit's pleading standard for a 10(b) claim.

### IV.   PLAINTIFFS' SECTION 10(B) CLAIM FAILS FOR LACK OF PARTICULARITY

To support their Section 10b claim, plaintiffs rely upon the same arguments and issues offered to support their Section 11 claims.  None of the claims are pled with the requisite particularity.  As plaintiffs concede, they must state with particularity all facts to show how a statement or omission was materially misleading.  (Opp. at 25). Having relied upon the same facts to support both their Section 11 and Section 10(b) claims, plaintiffs conclude, without any factual support pled in the AC, that "undisclosed problems in the Registration Statement also existed during the Class Period" and that "Defendants misleadingly attributed the problems to 'production limitations' and a 'new commercial strategy.'"  (*Id.*)  As set forth in the moving papers and explained in further detail below, plaintiffs' allegations do not meet the Ninth Circuit's pleading standard for a 10(b) claim.

#### A.   ALLEGATIONS THAT "DABRA FAILED TO CALIBRATE AND RA MEDICAL "RECALLED PRODUCT" FAILS FOR LACK OF SPECIFICITY

Plaintiffs fail to link calibration issues involving four devices that occurred in or before February 2018 with issues that arose approximately twelve months later

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

9

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

concerning "product limitations" in the manufacturing of catheters, due to increased demand. (Opp. at 25-26). Entirely absent from the AC are any facts or witnesses offering that the four unit calibration issues disclosed by Ra Medical in February 2018 continued to exist in September 2018, when Ra Medical issued its Registration Statement and that those issues continued thereafter.

As Ra Medical disclosed, "[t]here are many nuances to using our products as intended. For example, the DABRA catheter is fragile and may be prone to bending at the entry of the artery, a problem known as kinking. Further, physicians and their staff must utilize the technology on a regular basis to ensure they maintain the skill set necessary to use our products." (RJN, Ex. D at 22). Any bending of the catheter will result in a failure to calibrate. Even a perfect catheter, if not handled properly, can kink and cause a failure to calibrate.

Ra Medical warned of potential manufacturing problems, letting investors know that it "may encounter unforeseen situations in the manufacturing and assembly of our products that would result in delays or shortfalls in our production. For example, our production processes and assembly methods may have to change to accommodate any significant future expansion of our manufacturing capacity…. If our manufacturing activities are adversely impacted, or if we are otherwise unable to keep up with demand for our products by successfully manufacturing, assembling, testing, and shipping our products in a timely manner, our revenue could be impaired, market acceptance for our products could be adversely affected…." (RJN, Ex. D at 26). That Ra Medical experienced various unrelated issues with its catheter manufacturing after the IPO and unrelated calibration issues before the IPO does not make any statement false or misleading. The CWs do not offer facts to suggest otherwise.

As for the Recall Notice, the moving papers addressed this issue. Ra Medical never issued a recall notice. It did replace catheters out of an abundance of caution to ensure that its new and growing customer base had the best experience.

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

### B.   INADEQUATE SALES TRAINING ALLEGATIONS LACK SPECIFICITY

Plaintiffs argue that Ra Medical failed to disclose that it "lacked an adequate sales training program." (Opp. at 26-27). There are no facts to support this claim. CW2's opinion that Ms. Burstein was "disorganized and "jumped around" during presentations and could not answer representatives' questions" does not mean that the sales training program was inadequate. First CW2 was not a salesperson. Second, her opinion is not corroborated by CW3, who allegedly was a salesperson and would be in a better position to offer this opinion (which is not a fact). Again, the DABRA catheter is fragile and Ms. Burstein's sales training was only part of the education for new salespeople. Training would include both general sales instructions by Ms. Burstein, such as product description, DABRA advantages, costs, promotional talking points and the like, coupled with hands on training by others on the use of the DABRA device.  As such, plaintiffs plead conclusions, not facts that give rise to a strong inference of scienter.

### C.   PLAINTIFFS CONFLATE MARKETING AND BILLING FOR ATHERECTOMY

Plaintiffs conflate marketing that DABRA performs atherectomy with using an atherectomy billing code for Medicare and Medicaid because the procedure performed by DABRA is what doctors call atherectomy.  (Opp. 27).  As set forth above, the Registration Statement made clear that: 1) doctors refer to the FDA approved procedure for DABRA as atherectomy and 2) the proper billing code for the DABRA procedure was atherectomy. Reminding doctors that the Medicare atherectomy billing code should be used is not marketing the product as atherectory.  As plaintiffs concede, the FDA instructed Ra Medical to remove any mention of atherectomy from its marketing literature. (AC at 170). There are no facts to support that Ra Medical or any defendant included the word "atherectomy" in any marketing materials after the FDA instruction to discontinue this practice. Simply because the FDA informed Ra Medical that it could not use the word

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

11

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

atherectomy in marketing materials does not mean that it was prohibited from discussing proper billing codes with doctors, which could include the billing code for atherectomy, provided that was the proper code. None of the CWs or any facts alleged by plaintiffs suggest that a physician's use of the atherectomy billing code was improper or that Ra Medical violated FDA guidelines to inform doctors of this. *See, e.g., Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 (7th Cir. 1995) (investors are presumed to know the law under which companies operate).

### D. NO FACTS SHOWING DISCLOSED RISK FACTORS EXISTED AT THE IPO

Plaintiffs argue that calibration failures that occurred in or before February 2018, evidences that the Registration Statement was misleading. (Opp. at 28-29). Not so. The key information plaintiffs do not, and cannot allege is that the same calibration issues that were disclosed in February 2018 continued to occur thereafter. Plaintiffs offer no facts in the AC that calibration issues occurred after February 2018 and before issuing the Registration Statement. Events that occur after IPO do not, and cannot create a false statement in the Registration Statement. *See, e.g., Gallagher v. Abbott Labs., Inc.*, 269 F.3d 806, 808-09 (7th Cir. 2001) (the securities laws do not require firms to disclose all information).

### E. THERE IS NO EVIDENCE OF SCIENTER

Plaintiffs rely upon fraud by hindsight to support their allegations of scienter. As plaintiffs concede, the purported evidence in support of scienter arises from 1) employee allegations that do not address what Irwin knew or when he learned of any alleged fact; and 2) the Audit Committee's published summary investigative findings that also fail on the same front. (Opp. at 29-30). As this Court has held, it is plaintiff's obligation to overcome the presumption of mistake to plead fraud and corporate mismanagement does not equal fraud by hindsight. *See, e.g., Lifschitz v. NextWave Wireless Inc.*, 2011 WL 5839682, at *1 (S.D. Cal. Nov. 21, 2011).

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

12

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

### 1. CW ALLEGATIONS DO NOT SUPPORT STRONG INFERENCE OF SCIENTER

Plaintiffs conclude, without explanation or legal citation, that the CWs "corroborate each other" and support scienter.  (Opp. at 21). To support an inference of scienter, each CW and their respective statements must be sufficiently particularized to show reliability and personal knowledge. *Foster v. Wilson*, 504 F.3d 1046, 1050-51 (9th Cir. 2007).  Neither requirement is satisfied in the AC.

As to CW1, being a "whistleblower" does not evidence reliability or knowledge.  There is no job description for CW1 and there are no facts to support personal knowledge of information attributable to CW1. For example, CW1 purportedly knows about calibration issues occurring in 2017 (Opp. at 15), but there is no allegation that CW1 worked for Ra Medical in 2017.

As to CW2, her various statements contradict each other.  CW2 fails to give the requisite details for her statements and offers inconsistencies that undermine scienter.  For example, CW2 represents that Ra Medical was engaged in a covert product recall and wanted to keep calibration issues a secret (AC, ¶167) but also purportedly states that DABRA's failure to calibrate was regularly discussed at training sessions.  (Opp. at 15).

As to CW3, the statements attributable to this confidential witness in the AC lack the requisite specificity. CW3 claims that "representatives' concerns about a possible defect were dismissed by Ra Medical.…" (Opp. at 26).  This purported concern is not tied to any person, any particular point in time, and is without any contextual background. As such, it fails to meet the particularity requirements of the PSLRA.

### 2. STOCK SALES DO NOT SUPPORT SCIENTER

Plaintiffs seemingly ignore that Irwin's stock sales were by way of a 10b5-1 trading plan, which negates an inference of insider trading and that all stock sales outside of his 10b5-1 plan were nondiscretionary to cover tax withholdings. Plaintiffs do not even address that Irwin sold an insignificant fraction of his rather

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

13

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

substantial total holdings, thus suffering the same financial losses as every other investor.  Irwin sold just 2.2 percent of his holdings. Plaintiffs proffer "at best this factor is neutral." (Opp. at 32). Not so.  Sales by management during the very time Irwin and Ra Medical purportedly knew of undisclosed negative information and Ra Medical's stock was massively inflated undermines an inference of scienter. (*See, e.g.*, MTD at 25).

### 3.  THE CORE OPERATIONS DOCTRINE IS NOT APPLICABLE

The Core Operations Doctrine requires specific allegations that Irwin had actual access to particular information and knowledge thereof. (Opp. at 33). Plaintiffs' allegations fail to meet this requirement.  Instead, they argue that Ra Medical was small so Irwin had to be aware of some unidentified information.  (*Id.*) The allegations and argument are insufficient. *See, e.g., S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784–85 (9th Cir. 2008) ("corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud"). Plaintiffs further allege "Irwin…knew…representatives were instructed to market DABRA for off-label use because they were present at the trainings." (Opp. at 30). There is no allegation that Irwin was present when these purported instructions occurred, or that he gave the instruction. (AC, ¶¶ 171-73). Nowhere do plaintiffs allege who made this statement, when, how, to whom or any other requisite detail. As such, there is no evidence a strong inference of scienter here.

### 4.  PLAINTIFFS' OTHER ARGUMENTS DO NOT SUPPORT SCIENTER

Plaintiffs offer a few additional arguments to suggest scienter, none of which meet the Ninth Circuit's particularity requirements.

***Investigations.*** Reliance on the investigations of and by Ra Medical to support an inference of scienter is insufficient. *See, e.g., In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1042–43 (S.D. Cal. 2014).

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

14

07-CV-01111-IEG(RBB)
REPLY MEMORANDUM ISO MOTION
TO DISMISS AMENDED COMPLAINT

***Termination.*** Plaintiffs concede the Company terminated Irwin "without cause" before completion of the investigation. (AC, ¶ 335). Nevertheless, they argue that Irwin was "fired" as a result of, or "[i]n connection with the [Audit Committee's] investigation." (Opp. at 30-31). Even if true, it does not support a finding of scienter. *See, e.g.*, *Inchen Huang v. Higgins*, 2019 WL 1245136, at *14 (N.D. Cal. Mar. 18, 2019)(holding that departure from employment is not enough to support inference of scienter absent specific facts to refute assumption that defendant was forced out "simply because the errors…occurred on his watch or because he failed adequately to supervise….") (citation omitted).

***SOX Certifications.*** The SOX certifications does not support scienter and Plaintiffs fail to distinguish cases cited in the motion.

## V. CONCLUSION

Based on the foregoing and the moving papers, Defendants respectfully submit that plaintiffs' amended complaint should be dismissed in its entirety.

DATED: May 27, 2020        TENCERSHERMAN LLP

By: _____

PHILIP C. TENCER
Attorneys for Defendants

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

15

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case, and am over eighteen years old. On May 27, 2020, I served true and correct copies of the foregoing document, along with the accompanying REPLY in Support of Request for Consideration of Documents Incorporated by Reference and Documents Judicially Noticeable by Defendants Dean Irwin, Melissa Burstein and Martin Burstein by posting the documents electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 27, 2020, at San Diego, California.

_____
Karla Horne

.

TENCERSHERMAN
ATTORNEYS AT LAW
SAN DIEGO

1