Gregory L. Watts, State Bar No. 197126
Stephanie L. Jensen, WSBA No. 42042 (*pro hac vice*)
Jennifer E.K. Kendrex, WSBA No. 55596 (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:  (206) 883-2500
Facsimile:   (206) 883-2699
gwatts@wsgr.com
sjensen@wsgr.com
jkendrex@wsgr.com

*Counsel for Defendants Ra Medical Systems, Inc., Andrew Jackson, Richard Heymann, Maurice Buchbinder, Martin Colombatto, Richard Mejia, Jr., Mark E. Saad, and William Enquist, Jr.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERVIN DERR, and PETER SHOEMAKER, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RA MEDICAL SYSTEMS, INC., DEAN IRWIN, ANDREW JACKSON, MELISSA BURSTEIN, MARTIN BURSTEIN, RICHARD HEYMANN, MAURICE BUCHBINDER, MARTIN COLOMBATTO, RICHARD MEJIA, JR., MARK E. SAAD, and WILLIAM ENQUIST, JR.,<br><br>Defendants. | Case No.:  3:19-cv-1079-LAB-AHG<br><br>**THE RA MEDICAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>CLASS ACTION<br><br>ORAL ARGUMENT REQUESTED<br><br>DATE:        October 11, 2021<br>TIME:        11:30 AM<br>CTRM:       14A, 14th Floor<br>JUDGE:      Hon. Larry Alan Burns |

3:19-cv-1079-LAB-AHG

**TO LEAD PLAINTIFFS ERVIN DERR AND PETER SHOEMAKER AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 11, 2021 at 11:30 a.m., in Courtroom 14A before the Honorable Chief Judge Larry Alan Burns of the United States District Court for the Southern District of California, located at 333 West Broadway, San Diego, CA 92101, Defendants Ra Medical Systems, Inc., Andrew Jackson, Richard Heymann, Maurice Buchbinder, Martin Colombatto, Richard Mejia, Jr., Mark E. Saad, and William Enquist Jr. will and hereby do move this Court to dismiss Plaintiffs' Second Amended Complaint (ECF No. 53), pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers filed in this action, and on such further argument and matters as may be offered at the time of the hearing on this Motion.

Dated: June 10, 2021                    **WILSON SONSINI GOODRICH & ROSATI, P.C.**

/s/ Gregory L. Watts
Gregory L. Watts, State Bar No. 197126
Stephanie L. Jensen, WSBA No. 42042 (*pro hac vice*)
Jennifer E.K. Kendrex, WSBA No. 55596 (*pro hac vice*)
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:  (206) 883-2500
Facsimile:   (206) 883-2699
Email:  gwatts@wsgr.com
Email:  sjensen@wsgr.com
Email:  jkendrex@wsgr.com

*Counsel for Defendants Ra Medical Systems, Inc.*
*Andrew Jackson, Richard Heymann, Maurice*
*Buchbinder, Martin Colombatto, Richard Mejia, Jr.,*
*Mark E. Saad, and William Enquist, Jr.*

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

PROCEDURAL HISTORY .................................................................................. 3

LEGAL STANDARDS ........................................................................................ 3

ARGUMENT ........................................................................................................ 5

    I.     PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM ......................... 5

          A.    This Court Previously Dismissed the Section 11 Claim for Lack of Standing, and Should Do So Again ................................................. 5

          B.    Statements Outside the Registration Statement Cannot Form the Basis of a Section 11 Claim ......................................................... 9

    II.    WITH THE EXCEPTION OF THE MISSTATEMENTS THIS COURT HELD STATED A CLAIM IN ITS PRIOR ORDER, ALL ALLEGED MISSTATEMENTS IN THE SAC SHOULD BE DISMISSED ................................................................................... 10

          A.    Except for One Category of Statements this Court Held Actionable Under Section 10(b), Plaintiffs Fail to Plead Any False or Misleading Statements ............................................. 10

          B.    Categories of Statements this Court Already Ruled Were Not Actionable Under Section 10(b) ................................................. 11

               1.    Plaintiffs Allege No False or Misleading Statements Regarding Off-Label Promotion ............................................. 11

               2.    The SOX Certifications Are Not False or Misleading ............. 15

          C.    Categories of Statements this Court's March 24 Order Did Not Address Should Be Dismissed Now ................................................. 17

               1.    Plaintiffs Fail to Plead Misstatements or Omissions Regarding Absence of a Reported Serious Adverse Event ...... 17

i

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

2.      Plaintiffs Fail to Plead Misstatements or Omissions Regarding Documentation of Expenses and Payments to Physicians ............................................................................... 19

3.      Plaintiffs Fail to Plead Misstatements or Omissions in Ra Medical's September 27, 2019 Form 8-K Regarding the Voluntary Recall of DABRA Catheters .................................. 21

CONCLUSION .............................................................................................. 22

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbey v. Comput. Memories, Inc.*,
        634 F. Supp. 870 (N.D. Cal. 1986)............................................................... 8

*Alaska Elec. Pension Fund v. Adecco S.A.*,
        371 F. Supp. 2d 1203 (S.D. Cal. 2005),
        *aff'd*, 256 F. App'x 74 (9th Cir. 2007) ...................................................... 19

*Ashcroft v. Iqbal*,
        556 U.S. 662 (2009)..................................................................................... 3

*Baker v. SeaWorld Ent., Inc.*,
        No. 14cv2129-MMA (KSC),
        2016 WL 2993481 (S.D. Cal. Mar. 31, 2016)........................................... 19

*Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007)..................................................................................... 4

*Brody v. Transitional Hosps. Corp.*,
        280 F.3d 997 (9th Cir. 2002) ....................................................................... 5

*Cement & Concrete Workers Dist. Council Pension Fund*
        *v. Hewlett Packard Co.*,
        964 F. Supp. 2d 1128 (N.D. Cal. 2013)..................................................... 21

*Doherty v. Pivotal Software, Inc.*,
        No. 3:19-CV-03589-CRB,
        2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ............................................. 9

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
        778 F.3d 228 (1st Cir. 2015)...................................................................... 12

*Glazer Capital Mgmt., LP v. Magistri*,
        549 F.3d 736 (9th Cir. 2008) ............................................................... 13, 14

*In re Ashworth Secs. Litig.*,
        No. 99-CV-0121-L (JAH),
        2000 WL 33176041 (S.D. Cal. July 18, 2000)......................................... 18

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

*In re Atossa Genetics, Inc. Sec. Litig.*,
No. C13-1836 RSM,
2014 WL 4983551 (W.D. Wash. Oct. 6, 2014),
*aff'd in part, rev'd in part on other grounds*,
868 F.3d 784 (9th Cir. 2017) ...................................................................... 8

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010)...................................................... 4

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ............................................................ 5, 6, 9

*In re Infonet Servs. Corp. Sec. Litig.*,
310 F. Supp. 2d 1080 (C.D. Cal. 2003)...................................................... 11

*In re Initial Pub. Offering Sec. Litig.*,
227 F.R.D. 65 (S.D.N.Y. 2004),
*vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006) ......................... 8, 9

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
616 F. App'x 442 (2d Cir. 2015) ............................................................. 16

*In re Maxwell Techs., Inc. Sec. Litig.*,
18 F. Supp. 3d 1023 (S.D. Cal. 2014) ...................................................... 19

*In re Quarterdeck Office Sys., Inc. Sec. Litig.*,
No. CV 92-3970-DWW,
1993 WL 623310 (C.D. Cal. Sept. 30, 1993) ............................................ 8

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .................................................................... 9

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ............................................................... 4, 10

*In re Tesla Motors, Inc. Sec. Litig.*,
75 F. Supp. 3d 1034 (N.D. Cal. 2014),
*aff'd*, 671 F. App'x 670 (9th Cir. 2016) .................................................. 18

*In re Tibco Software Inc.*,
No. C 05-2146 SBA,
2006 WL 1469654 (N.D. Cal, May 25, 2006)............................................ 17

iv

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

*Kipling v. Flex Ltd.*,
No. 18-CV-02706-LHK,
2020 WL 2793463 (N.D. Cal. May 29, 2020)..........................................................19

*Krim v. pcOrder.com, Inc.*,
402 F.3d 489 (5th Cir. 2005) ..........................................................................................9

*Lake v. Zogenix, Inc.*,
No. 19-cv-01975-RS,
2020 WL 3820424 (N.D. Cal. Jan. 24, 2020)..............................................................5

*Lilley v. Charren*,
936 F. Supp. 708 (N.D. Cal. 1996)..............................................................................8

*Lovallo v. Pacira Pharms., Inc.*,
No. Cv. 14-06172 (WHW),
2015 WL 7300492 (D.N.J. Nov. 18, 2015) ................................................................13

*Mallen v. Alphatec Holdings, Inc.*,
861 F. Supp. 2d 1111 (S.D. Cal. 2012),
*aff'd sub nom,*
*Fresno Cty. Emps.' Ret. Ass'n v. Alphatec Holdings*, *Inc.*,
607 F. App'x 694 (9th Cir. 2015)................................................................................22

*Metzler Inv. GMBH v. Corinthian Colls.*,
540 F.3d 1049 (9th Cir. 2008) ......................................................................................5

*Mosco v. Motricity, Inc.*,
649 F. App'x 526 (9th Cir. 2016)................................................................................22

*O'Sullivan v. Trident Microsystems, Inc.*,
No. C 93-20621 RMW (EAI),
1994 WL 124453 (N.D. Cal. Jan. 31, 1994)..............................................................10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)..........................................................................................................4

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ......................................................................................4

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund*
*v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017)....................................................................................21

v

*Rok v. Identiv, Inc.*,
    No. 15-cv-5775-CRB,
    2017 WL 35496 (N.D. Cal. Jan. 4, 2017),
    *aff'd sub nom, Cunningham v. Identiv, Inc.*,
    716 F. App'x 663 (9th Cir. 2018) ............................................................... 16

*Rubke v. Capitol Bancorp, Ltd*,
    551 F.3d 1156 (9th Cir. 2009) ...................................................................... 4

*Stein v. U.S. Xpress Enters., Inc.*,
    No. 1:19-CV-98,
    2020 WL 3584800 (E.D. Tenn. June 30, 2020) ........................................... 10

*Wanca v. Super Micro Comput., Inc.*,
    No. 5:15-cv-04049-EJD,
    2018 WL 3145649 (N.D. Cal. June 27, 2018),
    *appeal denied*, No. 18-16391,
    2018 WL 7107616 (9th Cir. Oct. 30, 2018) ........................................... 16, 17

*Zee v. Green Dot Corp.*,
    No. CV 12-6492-GW,
    2013 WL 12133841 (C.D. Cal. May 2, 2013) ............................................... 4

## STATUTES

Private Securities Litigation Reform Act of 1995,
    Pub L. 104-67, 109 Stat. 737 ..................................................................... 4, 5

Securities Exchange Act of 1934,
    15 U.S.C. §§ 78a-78qq ......................................................................*passim*

Securities Act of 1933,
    15 U.S.C. §§ 77a-77aa ......................................................................*passim*

15 U.S.C. § 77k ............................................................................................. 5, 6

15 U.S.C. § 77k(a) ...................................................................................... 4, 10

15 U.S.C. § 78u-4(b)(1) ............................................................................... 4, 5

## RULES AND REGULATIONS

17 C.F.R. § 229.303(b)(2)(ii) ......................................................................... 22

17 C.F.R. § 230.144(a)(1) ................................................................................ 7

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

17 C.F.R. § 230.144(b)(1)(ii) ........................................................................................ 7

17 C.F.R. § 240.10b-5(b) .......................................................................................... 4, 5

17 C.F.R. § 240.16a-2 ................................................................................................. 7

21 C.F.R. § 803.50(a) ............................................................................................ 17, 18

Fed. R. Civ. Proc. 8(a) ................................................................................................ 3

Fed. R. Civ. Proc. 9(b) ............................................................................................... 4

**MISCELLANEOUS**

"Advisory Action Letters" (https://www.fda.gov/animal-
        veterinary/compliance-enforcement/advisory-action-letters) ................................ 12

"FDA Form 483 Frequently Asked Questions"
        (https://www.fda.gov/inspections-compliance-enforcement-and-
        criminal-investigations/inspection-references/fda-form-483-
        frequently-asked-questions)........................................................................................ 12

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

Defendants Ra Medical Systems, Inc. ("Ra Medical" or the "Company"), Andrew Jackson, Richard Heymann, Maurice Buchbinder, Martin Colombatto, Richard Mejia, Jr., Mark E. Saad, and William Enquist, Jr. (collectively, the "Ra Medical Defendants"), submit this motion to dismiss Plaintiffs' Second Amended Complaint ("SAC" or "¶ _"), ECF No. 53, for failure to plead standing and failure to state a claim under Sections 11 or 15 of the Securities Act, and for failure to state a claim under Section 10(b) of the Exchange Act for alleged misstatements this Court previously dismissed or did not address in its March 24, 2021 Order, ECF No. 50.

## INTRODUCTION

In its March 24 Order, the Court dismissed Plaintiffs' Section 11 claim (and thus also the attendant Section 15 claim) in the First Amended Complaint (the "FAC") because Plaintiffs failed to plead sufficient facts to show they can trace their shares to the IPO Registration Statement, a requirement for Plaintiffs to have standing. ECF No. 50 at 16–18. Plaintiffs attempt to resuscitate this Section 11 claim in the SAC. But Plaintiffs admit (as they must) that when Ra Medical's IPO closed, *65 percent* of the Company's stock was not sold pursuant or traceable to the IPO Registration Statement. Plaintiffs also admit (as they must) that they bought their shares in the *aftermarket*, four months *after* the Company IPO and *after* at least 316,431 non-IPO shares (nearly 4 percent of the Company's outstanding shares) became eligible for purchase. While Plaintiffs allege that approximately half of those eligible non-IPO shares were held by an individual who did not sell them by the time of Plaintiffs' purchases, they fail to plead sufficient facts to show the other half of those eligible non-IPO shares (165,360 shares) did not enter the market. The SAC, therefore, still fails to plead the traceability of Plaintiffs' shares, and Plaintiffs' Section 11 and Section 15 claims must again be dismissed.

In its March 24 Order, the Court dismissed Plaintiffs' Section 10(b) claim as to alleged misstatements in the Company's September 2018 Registration Statement and subsequent public statements on the topics of (a) the quality and training of sales

1

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

representatives, (b) alleged off-label promotion of the DABRA system for atherectomy, and (c) Sarbanes-Oxley certifications. *Id*. at 12–14.[1] In the SAC, Plaintiffs abandon their salesforce quality and training allegations, but attempt to rehabilitate their dismissed off-label promotion and SOX certification allegations. Plaintiffs' attempt fails. *First*, as the Court stated in its prior Order, the Company's SEC filings disclosed to investors that Ra Medical was engaging in what it thought was "'truthful, non-misleading and non-promotional speech concerning the off-label use'" of the DABRA system for atherectomy, that the FDA or other regulatory agencies "'could conclude'" that this speech constituted "'off-label promotion,'" and that a competitor had claimed the Company's conduct constituted off-label promotion. *Id*. at 13 (citing the Company's 3Q18 10-Q and 2018 10-K filings). The Court concluded that the Company's statements were not false or misleading because "[a] reasonable investor would have understood" that Ra Medical "was encouraging physicians to use DABRA for atherectomy and risking regulatory scrutiny as a result." *Id*. *Second*, the challenged SOX certifications still lack an unqualified certification that the Company's internal controls over financial reporting were effective. Indeed, the Company disclosed in the Registration Statement that it had identified a material weakness in its internal control over financial reporting. The SAC still fails to allege that Irwin or Jackson were aware of any additional, unremediated and undisclosed material weaknesses when they signed later certifications.

While the Court stated that Plaintiffs' "remaining theories [] don't manage to identify any misleading statements," *id*. at 12, the Court did not expressly reach Plaintiffs' allegations of misstatements or omissions regarding unreported serious adverse events

---

[1] In its March 24 Order, the Court denied Defendants' motion to dismiss Plaintiffs' Section 10(b) claim (and thus also the attendant Section 20(a) claim) as to alleged misstatements in the Registration Statement and March 2019 press release and earnings call on the topics of manufacturing, poor calibration, and product recalls. ECF No. 50 at 11–12. Defendants do not move to dismiss the SAC's Section 10(b) claim as to those statements.

("SAE") or improper physician payments.  Plaintiffs reassert them in the SAC.  These allegations are deficient.  *First*, Plaintiffs' allegations regarding unreported SAEs in the Company's 2017 pivotal study fail because the challenged statements were accurate and Plaintiffs fail to plead that any adverse event constituted an SAE that required reporting to the FDA.  *Second*, the alleged omissions regarding physician payments fail because the Company disclosed a material weakness in its internal controls, and the SAC's allegations do not plead with particularity the timing or the Individual Defendants' knowledge (scienter) of any improper payments.

The Court should dismiss the SAC's Section 11 and 15 claims in their entirety with prejudice for lack of standing, and dismiss the SAC's Section 10(b) and 20(a) claims as to alleged misstatements on the topics of off-label promotion, SOX certifications, unreported SAEs, and improper payments to physicians.

## STATEMENT OF FACTS

Since the SAC only varies slightly from the FAC, the Court is already well-versed in the alleged facts from the initial motion to dismiss briefing and this Court's March 24 Order.  The Ra Medical Defendants will not repeat them here, but will address any pertinent alleged facts in their argument below.

## PROCEDURAL HISTORY

On June 7, 2019, this lawsuit was filed alleging violations of Sections 11 and 15 of the Securities Act.  ECF No. 1.  On January 13, 2020, after the appointment of a lead plaintiff, Plaintiffs filed the FAC, re-asserting the Securities Act claims and adding claims under Sections 10(b) and 20(a) of the Exchange Act.  ECF No. 21.  On March 24, 2021, this Court granted in part Defendants' motions to dismiss the FAC without prejudice.  ECF No. 50.  On April 19, 2021, Plaintiffs filed the SAC.  ECF No. 53.

## LEGAL STANDARDS

Claims that do not sound in fraud must satisfy Rule 8(a), which requires that a complaint state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The court need not accept "bare assertion[s]" or "conclusory" or

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

"speculative" allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). But where, as here, a claim sounds in fraud, the complaint must meet the heightened pleading requirements of Rule 9(b). *See* Fed. R. Civ. Proc. 9(b). A claim "sounds in fraud" when it alleges a "unified course of fraudulent conduct" and relies "entirely on that course of conduct as a basis of a claim," or when a complaint "employs the exact same factual allegations" to plead a non-fraud claim as it does a fraud claim. *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1068 (N.D. Cal. 2010) (citation omitted); *see also Rubke v. Capitol Bancorp, Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009).

To state a claim under Section 11 of the Securities Act, Plaintiffs must plead facts sufficient to show that the Registration Statement either contained a false statement of material fact or omitted material facts necessary to make a challenged statement not misleading. 15 U.S.C. § 77k(a). A fact is material only where there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Zee v. Green Dot Corp.*, No. CV 12-6492-GW (CWx), 2013 WL 12133841, at *9 (C.D. Cal. May 2, 2013) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996)). The Court must review a challenged statement in the context of the entire document. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190–91 (2015) (statements in registration statement must be read "in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information"). For omissions, "Section 11 does not require the disclosure of all information a potential investor might take into account when making his decision[.]" *Rubke*, 551 F.3d at 1163.

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Plaintiffs must satisfy the high bar of pleading fraud with particularity under Rule 9(b) and meeting the "more exacting" pleading requirements of the PSLRA. *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1057–58 (9th Cir. 2014); Fed. R. Civ. Proc. 9(b) (plaintiffs "must state with particularity the circumstances constituting fraud"). No Section 10(b) claim can proceed unless Plaintiffs first plead the threshold element of an "untrue

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

statement of a material fact" or an omission of "a material fact" that was "necessary in order to make the statements made…not misleading," 17 C.F.R. § 240.10b-5(b), that can withstand the "formidable pleading requirements" of the PSLRA. *Metzler Inv. GMBH v. Corinthian Colls.*, 540 F.3d 1049, 1055, 1070 (9th Cir. 2008); 15 U.S.C. § 78u-4(b)(1). For an omission to be actionable, it "must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (citation omitted); *see also Lake v. Zogenix, Inc.*, No. 19-cv-01975-RS, 2020 WL 3820424, at *9 (N.D. Cal. Jan. 24, 2020) (complaint dismissed when it failed to meet *Brody*'s "high bar for a materially misleading omission").

## ARGUMENT

### I.    PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM

#### A.    This Court Previously Dismissed the Section 11 Claim for Lack of Standing, and Should Do So Again

This Court dismissed Plaintiffs' Section 11 and Section 15 claims in the FAC for lack of standing. ECF No. 50 at 16–18. In the FAC, Plaintiffs alleged they purchased Ra Medical stock "pursuant and/or traceable to the Registration Statement." FAC ¶¶ 31–32. The Court held that Plaintiffs could not trace their shares and thus failed to demonstrate their standing to bring a Section 11 claim because they did not purchase their shares in the IPO, but rather bought their shares four months after the IPO in a polluted aftermarket pool of stock that included unregistered, non-IPO shares. ECF No. 50 at 17. Plaintiffs' efforts to rehabilitate this dismissed Section 11 (and related Section 15 claim) fail. Having now had three opportunities to plead their standing (in the original complaint, FAC, and SAC), the Court should dismiss the Section 11 claim with prejudice.

To have statutory standing to assert a Section 11 claim, Plaintiffs bear the burden of showing they either (a) bought their shares directly in an offering with a materially false or misleading registration statement, or (b) can trace their later-purchased shares back to that offering and registration statement. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

1104, 1106–07 (9th Cir. 2013); 15 U.S.C. § 77k; ECF No. 50 at 17.  Plaintiffs do neither. Here, because non-IPO shares became eligible for sale before Plaintiffs purchased any Ra Medical stock, they face the significant burden of tracing their shares to the IPO Registration Statement.  Such tracing "is often impossible, because most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares, and many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position." *Century Aluminum*, 729 F.3d at 1107 (citation and quotations omitted).

In the SAC, Plaintiffs still do not allege they purchased their shares directly in the IPO.  Instead, Plaintiffs concede they purchased shares in the aftermarket, four months ***after*** Ra Medical's IPO, at ***different prices*** from the IPO's $17.00 per share offering price, and after ***316,431 non-IPO shares*** became eligible for purchase.  ¶¶ 2, 46; Exs.[2] 1, 2 (Derr and Shoemaker certifications listing share purchases); Ex. 3 (Registration Statement) at 153–54 (316,431 non-IPO shares eligible for purchase on December 26, 2018).  Attempting to remedy their tracing deficiency, the SAC alleges there were 12,689,251 outstanding shares of Ra Medical common stock when the IPO closed, 4,485,000 of which were sold pursuant to the IPO's Registration Statement.  ¶ 47.  Accordingly, when the IPO closed, ***65 percent*** of the Company's outstanding stock was not sold pursuant to the Registration Statement.  Of the 8,204,251 non-IPO shares, Plaintiffs allege 7,887,820 shares were restricted and became eligible for sale on March 27, 2019, ¶ 48, and that the remaining 316,431 shares were eligible for sale pursuant to Rule 144, ¶¶ 47, 49.  These 316,431 shares became eligible for sale ***90 days*** after the IPO on December 26, 2018, *i.e.*, over a month ***before*** either Plaintiff purchased any shares.  Ex. 3 at 153; ¶ 46 (earliest of either Plaintiffs' purchase was February 6, 2019).  Plaintiffs concede (as they must) all of this.

---

[2] Unless otherwise specified, references to "Ex." are to exhibits attached to the Declaration of Jennifer E.K. Kendrex in Support of the Ra Medical Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, filed concurrently herewith.

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

In an effort to plead the traceability of their shares, Plaintiffs allege that they have communicated with an individual who owned roughly half (151,071) of the 316,431 non-IPO shares eligible for sale at the time of Plaintiffs' first purchase on February 6, 2019 and were told that he did not sell his shares until after Plaintiffs purchased theirs. ¶ 50. This, of course, does not solve Plaintiffs' problem because the other half of the non-IPO shares eligible for sale remain unaccounted for.

Endeavoring to show that these remaining non-IPO shares did not enter the market and pollute the pool of Ra Medical stock trading at the time of Plaintiffs' purchases, Plaintiffs plead that they "believe" none of the remaining 165,360 non-IPO shares entered the market before February 2019. ¶ 52. Plaintiffs mistakenly base this belief on an argument that Form 4s or Form 144s must be filed with the SEC when *any* unregistered, *i.e.*, non-IPO shares, are sold into the market, the absence of which allegedly proves none of these shares were sold. ¶¶ 51–52. But there is a critical flaw in Plaintiffs' analysis. Form 4s must only be filed for transactions involving company insiders, 17 C.F.R. § 240.16a-2,[3] and Form 144s must only be filed for transactions involving "affiliates" of the company, defined as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer[,]" 17 C.F.R. § 230.144(a)(1). *Persons who are not company insiders or affiliates* of the company during the three months preceding their sale and owned the shares to be sold for at least six months, *may sell their shares without filing Form 4s or Form 144s*. *See* 17 C.F.R. § 230.144(b)(1)(ii).[4] Here, as the Registration Statement discloses, there were 316,431 non-IPO shares eligible for sale in the market upon completion of the IPO held by non-insider/non-affiliates who were not required to file these forms. Ex. 3 at 153–54. Even assuming the SAC's allegation that half of those shares were not sold prior to Plaintiffs' first purchases, the other half (165,360 shares) remain both eligible for sale and

[3] *See also* https://www.sec.gov/files/forms-3-4-5.pdf.
[4] *See also* https://www.sec.gov/reportspubs/investor-publications/investorpubsrule144htm.html.

7

unaccounted for.  Plaintiffs, therefore, cannot trace their shares to the IPO Registration Statement because the pool of tradeable shares at the time of their first purchases was polluted with non-IPO shares.  *See* ECF No. 50 at 17 (Defendants need not show shares were "actually sold"); *In re Atossa Genetics, Inc. Sec. Litig.*, No. C13-1836 RSM, 2014 WL 4983551, at *5 (W.D. Wash. Oct. 6, 2014) (dismissing Section 11 claim "after 50,122 unregistered shares became *available* for sale") (emphasis added), *aff'd in part, rev'd in part on other grounds*, 868 F.3d 784 (9th Cir. 2017); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 119 (S.D.N.Y. 2004) ("section 11 class periods . . . must end . . . when unregistered shares *became tradeable*") (emphasis added), *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006).

Plaintiffs cannot meet their burden through a presumption of traceability either.  On February 6, 2019—the earliest share purchase by Plaintiffs—nearly *4 percent* of Ra Medical shares eligible for trading on the NYSE were non-IPO shares (4,485,000 + 165,360 = 4,650,360; 165,360 ÷ 4,650,360 = 3.55 percent).  The fact that 96 percent of Ra Medical's shares outstanding in February 2019 were issued pursuant to the IPO Registration Statement is insufficient to satisfy Plaintiffs' tracing burden.  *See In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. at 117–18 (plaintiffs are "not entitled to a presumption of traceability" even when the market is "overwhelmingly composed of registered shares").  For instance, in *Lilley v. Charren*, the court dismissed a Section 11 claim because the lead plaintiffs purchased their shares in a mixed market comprised of 6 million IPO shares and 80,000 non-IPO shares.  936 F. Supp. 708, 716 (N.D. Cal. 1996) (non-IPO shares less than *1.4 percent* of tradeable shares).  And in *Quarterdeck*, Judge Williams held that plaintiffs failed to trace their shares to the issued registration statement despite non-IPO shares comprising only *3 percent* of all outstanding shares when plaintiffs purchased, finding plaintiffs' "statistical argument" a "speculative basis for standing" that had been rejected by "numerous courts" before.  *In re Quarterdeck Office Sys., Inc. Sec. Litig.*, No. CV 92-3970-DWW (GHKx), 1993 WL 623310, at *3 (C.D. Cal. Sept. 30, 1993); *see also Abbey*

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

*v. Comput. Memories, Inc.*, 634 F. Supp. 870, 874–75 (N.D. Cal. 1986) (rejecting claim that it was "highly probable" shares were issued pursuant to relevant offering).

The fact that tracing is difficult in mixed-market circumstances such as this one does not relieve Plaintiffs' burden. As explained in *Century Aluminum*, "[t]hough difficult to meet in some circumstances, this tracing requirement is the condition Congress has imposed for granting access to the 'relaxed liability requirements' §11 affords." 729 F.3d at 1107 (citation omitted); *Doherty v. Pivotal Software, Inc.*, No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *9 (N.D. Cal. Nov. 8, 2019) ("Relaxing the tracing requirement such that a plaintiff may fulfill it by showing even a high probability that some of his shares were from the relevant offering would be inconsistent with the narrow scope of potential liability envisioned by section 11.") (citation omitted); *Initial Pub. Offering*, 227 F.R.D. at 119 n.402 ("The advent of fungible bulk storage has made plaintiffs' tracing requirement a stringent one indeed; however, it is not the domain of this Court to abrogate such a requirement. That is a job for Congress."). As the Fifth Circuit has stated, "Congress conferred standing on those who *actually* purchased the tainted stock[.]" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 498–500 (5th Cir. 2005) (modern day market conditions making tracing difficult "is an issue properly addressed by Congress" and "not within [the Court's] purview[.]").[5]

**B.      Statements Outside the Registration Statement Cannot Form the Basis of a Section 11 Claim**

Plaintiffs again purport to base their Section 11 claim, in part, on statements in Ra Medical's pre-IPO roadshow materials, which were not even part of the Registration Statement. *See* ¶ 332 (expressly incorporating ¶¶ 17–109, 187–210 into Section 11 claim).[6]

---

[5] By implication, Plaintiffs' Section 15 claim fails again as well. *See* ECF No. 50 at 18 ("without an adequately alleged Section 11 claim, [Plaintiffs] can't state a claim under Section 15, either"); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012) (same).

[6] *See* ¶¶ 191–92 (statement in Roadshow Presentation "was materially false and/or misleading"); 193–94 (same); 209–10 (same).

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

Statements outside the Registration Statement cannot form the basis for a Section 11 claim. *See* 15 U.S.C. § 77k(a) (Section 11 liability imposed for untrue material facts or material omissions in "any part of the registration statement"); *In re Stac Elecs. Sec. Litig*., 89 F.3d at 1403–04 ("[i]n contrast to Section 11, Section 10(b) . . . covers statements made not only in the registration statement or prospectus but also in other documents and in oral communications"); *Stein v. U.S. Xpress Enters., Inc*., No. 1:19-CV-98, 2020 WL 3584800, at \*21 (E.D. Tenn. June 30, 2020) (similar).  Any Section 11 claim regarding the roadshow materials must be dismissed.  *O'Sullivan v. Trident Microsystems, Inc*., No. C 93-20621 RMW (EAI), 1994 WL 124453, at \*3 (N.D. Cal. Jan. 31, 1994) ("Section 11 concerns only registration statements.  Therefore, the roadshow presentations . . . cannot support a Section 11 claim.").

## II.    WITH THE EXCEPTION OF THE MISSTATEMENTS THIS COURT HELD STATED A CLAIM IN ITS PRIOR ORDER, ALL ALLEGED MISSTATEMENTS IN THE SAC SHOULD BE DISMISSED

### A.    Except for One Category of Statements this Court Held Actionable Under Section 10(b), Plaintiffs Fail to Plead Any False or Misleading Statements

This Court's March 24 Order held that Plaintiffs' FAC did not allege "***any*** statement that was actually false" and "plausibly alleg[ed] that ***only one*** category of statements was rendered misleading by the missing information."  ECF No. 50 at 10 (emphasis added). This category consists of Ra Medical's Registration Statement risk disclosures and statements the Company made in March 2019 regarding its manufacturing problems and the alleged omissions of non-calibration issues and a product recall.  *Id*. at 11–12.  The Court held that ***"[t]he remaining theories" Plaintiffs raised failed to "identify any misleading statements."***  *Id*. at 12 (emphasis added).  Plaintiffs seek to resurrect these remaining, dismissed theories, but the few additional facts pleaded do not justify altering this Court's holding in its March Order.

**B.    Categories of Statements this Court Already Ruled Were Not Actionable Under Section 10(b)**

**1.    Plaintiffs Allege No False or Misleading Statements Regarding Off-Label Promotion**

Plaintiffs renew their challenges to statements in Ra Medical's Registration Statement,[7] the 2018 10-K, two quarterly SEC filings, and those made by Mr. Irwin during two earnings calls related to off-label promotion and reimbursement of DABRA, ¶¶ 99, 197-200, 223, 225, 253, 255, 256, 273, 275, but these largely recycled allegations again fall short.  None of the few additional details Plaintiffs present in the SAC to support these claims come close to disturbing this Court's holding that the Company's "omission that it was marketing DABRA systems for the non-indicated use of atherectomy didn't render any statement misleading."  ECF No. 50 at 13 (emphasis added).

As this Court held in its prior Order, the Company's SEC filings disclosed to investors in a specific, substantive, and tailored manner that it was engaging in what it thought was "'truthful, non-misleading and non-promotional speech concerning the off-label use'" of the DABRA system for atherectomy, that the FDA or other regulatory agencies "'could conclude'" that this speech constituted "'off-label promotion,'" and that a competitor had claimed the Company's conduct constituted off-label promotion.  *Id.* (citing the Company's 3Q18 10-Q and 2018 10-K filings).  The Court concluded that the Company's statements were not false or misleading on this topic because "[a] reasonable investor would have understood" that Ra Medical "was encouraging physicians to use DABRA for atherectomy and risking regulatory scrutiny as a result."  *Id.*; *see also In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1091 (C.D. Cal. 2003) (dismissing securities claims when challenged statements were coupled with cautionary language

---

[7] Except for the one category of statements deemed actionable in the Court's March 24 Order, Plaintiffs fail to plead a false or misleading statement in the Registration Statement for purposes of Section 11 for the same reasons described here under Section 10(b).

disclosing risks in certain business practices); Ex. 3 at 22.

Plaintiffs try to resuscitate this claim primarily by elaborating on an alleged pre-IPO oral warning, claiming that a former employee "attended a training session on September 17, 2018 during which Defendant Burstein 'alerted the team that Ra Medical had just received a 'gentle reminder' from the FDA not to market DABRA as an 'atherectomy system' because that was not the approved indication for the product.'" ¶ 77. While the SAC devotes much attention to these "new" facts, they get Plaintiffs nowhere. *First*, Plaintiffs already raised the FDA's alleged oral warning in the FAC, noting that "CW 3 was [] aware of a verbal warning from the FDA to remove any mention of atherectomy from marketing literature prior to the IPO," FAC ¶¶ 77, 105, 167, and this Court already found this allegation insufficient to state a claim. The few additional details offered regarding this alleged warning change nothing about the Company's complete and accurate disclosures to investors regarding the use of DABRA for atherectomy. *Second*, the SAC provides **no** details about this "gentle reminder" or how it was presented to the Company. ¶ 77. The FDA has a hierarchy of warnings, which consist of Forms 483, Untitled Letters, and Warning Letters,[8] but Plaintiffs provide no context to evaluate where this "gentle reminder" falls under this framework. *Third*, mere communications with the FDA or interim feedback from the agency regarding off-label marketing are generally ***not material enough to require disclosure to investors***. Indeed, even non-disclosure of much more substantive interactions with regulators regarding off-label marketing have been found to be inactionable. *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 244–45 (1st Cir. 2015) ("off-label marketing issues had the potential to be resolved with no adverse action from the FDA" and therefore the Company did not mislead investors by

---

[8] For more information on each of these types of FDA regulatory notices, *see* "FDA Form 483 Frequently Asked Questions" (https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/inspection-references/fda-form-483-frequently-asked-questions) and "Advisory Action Letters" (https://www.fda.gov/animal-veterinary/compliance-enforcement/advisory-action-letters).

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

not disclosing the full extent of its communications with the FDA). Certainly, Ra Medical's thorough disclosure to investors of its specific marketing practices and the risks of regulatory scrutiny was more than sufficient to foreclose liability, as this Court already found. *See Lovallo v. Pacira Pharms., Inc.*, No. Cv. 14-06172 (WHW), 2015 WL 7300492, at *8–11 (D.N.J. Nov. 18, 2015) (no liability where the company "made the public aware of their aggressive marketing," the associated risks, and the terms of the FDA's product approval). *Finally*, the SAC again acknowledges that CW3, who was allegedly "aware of [the] verbal warning from the FDA," admits that the Company complied with the FDA warning and removed references to atherectomy from Ra Medical's promotional materials once the Company was alerted to the fact that they could be problematic. ¶ 105.

Additionally, Plaintiffs raise the Company's recent settlement agreement with the U.S. Department of Justice ("DOJ") as purported evidence of off-label marketing practices, but this new allegation faces another dead end. *First*, Plaintiffs already alleged SEC and DOJ scrutiny into the Company's marketing practices in the FAC, including the Civil Investigative Demand the DOJ issued to the Company in October 2019 concerning the promotion of DABRA and other matters. *See* FAC ¶¶ 21, 24, 145. That the DOJ subsequently settled claims with Ra Medical has no bearing on this Court's holding that the Company fully informed investors of the risk of regulatory scrutiny relating to Ra Medical's promotion of DABRA. ECF No. 50 at 13. *Second*, the SAC and the settlement agreement itself provide very few details regarding **when** and **what** the alleged off-label promotion practices were. ¶ 79. Merely stating these limited facts does not satisfy Plaintiffs' burden to show exactly **how** the statements in Ra Medical's filings were false and misleading, especially given the Company's significant disclosures to investors. *Third*, Ra Medical did not admit any wrongdoing in connection with the settlement,[9] preventing

---

[9] The fact that Ra Medical did not admit liability makes this case distinguishable from *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) where the Court found

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

Plaintiffs from using the agreement as evidence of the known falsity of the Company's DABRA marketing statements. *See* SAC Ex. 4 at 4.

Plaintiffs also fail to bolster their Confidential Witness ("CW") allegations in the SAC to support Plaintiffs' claims here. While the SAC re-asserts that, according to CW2, Ra Medical participated in a tradeshow in San Diego on September 21-25, 2018 "and used marketing materials that mentioned atherectomy," ¶¶ 105, 166, CW2 still gives *no* details as to what specifically the materials mentioned regarding atherectomy. CW2 claims that once the FDA contacted the Company, CW2 was instructed to destroy the marketing materials and told the Company would not mention atherectomy in them going forward, *id.*, indicating compliance with the FDA's guidance, not fraud. CW3's allegations are similarly unhelpful. Plaintiffs fail to explain how CW3, a low-level regional sales representative hired, at the earliest, *on the day of the IPO*, ¶ 45, would have had personal knowledge of the alleged "verbal warning from the FDA . . . *prior to the IPO*," ¶ 105 (emphasis added). While CW3 alleges that "sales representatives were instructed to market DABRA for atherectomy," ¶ 170, CW3 still does not mention when those instructions were given, by whom, or whether they were provided before the IPO. While CW3 claims "significant time was spent discussing atherectomy during sales training," *id.*, he or she provides no details as to what specifically was said about atherectomy. *Id.* And still no factual support is adduced by CW3 to suggest how, or when, the Company "continued to direct sales representatives to market DABRA for atherectomy," or CW3's basis for this statement. ¶ 167.[10]

that the plaintiff had adequately pleaded the falsity of InVision Technologies' statements relating to compliance with laws after it entered into a settlement agreement with the SEC, "accept[ing] responsibility for misconduct" in the form of FCPA violations, and the SEC issued a related cease-and-desist order to InVision. *Id.* at 748. Moreover, unlike in *Glazer*, Ra Medical fully disclosed its DABRA marketing practices and related regulatory risks to investors, as this Court already found. ECF No. 50 at 13.

[10] Plaintiffs again claim that the Company admitted to engaging in off-label marketing at the time of the IPO based on the Company's statement in the October 31, 2019 press

14

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

Just like the FAC, the SAC also challenges two statements by Mr. Irwin regarding atherectomy and reimbursements on the November 13, 2018 call regarding 3Q18 financial results and two statements he made on the March 14, 2019 earnings call regarding 4Q18/FY2018 financial results.  ¶¶ 219–20, 249–52.  However, Plaintiffs still have not alleged any facts to suggest these statements were false when made—no facts to suggest that Mr. Irwin misstated how DABRA worked, that the various reimbursement options were not actually available to physicians, or that, as of November 13, 2018 (or even by the end of the Class Period), Mr. Irwin or the Company had received any reports of a physician not getting reimbursed for a DABRA procedure.

## 2.    The SOX Certifications Are Not False or Misleading

Despite this Court's holding that Mr. Irwin's and Mr. Jackson's "SOX Certifications" attached to the 3Q18 10-Q, 2018 10-K, and the 1Q19 10-Q "***can't form a basis for Section 10(b) liability***," ECF No. 50 at 14 (emphasis added), the SAC tries to resurrect Plaintiffs' theory that the certifications attached to the last two SEC filings are actionable.  ¶¶ 263–66, 283–84.  Plaintiffs' renewed attempt fails.

The SAC alleges that these certifications were false or misleading because they did not disclose the Company's material weaknesses in its internal controls.  ¶ 264.  This Court, however, already ruled that these certifications are not actionable because they lack "an unqualified certification that the controls and procedures are effective."  ECF No. 50 at 14.  The Ra Medical Defendants disclosed in the Registration Statement, Ex. 3 at 26–28, the 2018 10-K, Ex. 5 at 38–39, and the 1Q19 10-Q, Ex. 6 at 37–39, that the Company had experienced multiple material weaknesses in internal controls in prior periods and described its efforts to remediate these weaknesses.  The Registration Statement also

release (the "Release") that "while the indication for use in the 510(k) clearance the Company obtained for the DABRA system is not for atherectomy, the Company's salespeople were instructed to characterize DABRA as performing atherectomy and to encourage doctors to seek reimbursement using atherectomy codes," ¶¶ 104, 141, but the Release never states that this guidance was issued prior to the IPO. Ex. 4 at 5 (November 1, 2019 Form 8-K with October 31, 2019 press release).

15

disclosed a yet-unremediated material weakness in internal control over financial reporting. Ex. 3 at 27; Ex. 5 at 38 (stating remediation efforts completed as of December 31, 2018). This transparency belies an inference that Irwin and Jackson would knowingly sign false certifications. *See, e.g.*, *In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 446 (2d Cir. 2015) (disclosure of material weaknesses belied inference defendants acted with scienter in not disclosing other control weaknesses). And Plaintiffs plead no facts to indicate that Irwin or Jackson were aware of new, unremediated and undisclosed material weaknesses at the time of their SOX certifications. ECF No. 50 at 14.

The SAC alleges that Irwin was aware of Ra Medical's alleged "off-labeling marketing" of DABRA for atherectomy, ¶ 264, rendering his certifications misleading. But Plaintiffs fail to make any particularized allegations as to how and when Irwin was aware of actual off-labeling marketing. Regardless, as explained above in Section II.B.1, this Court already ruled that Ra Medical's alleged omissions regarding marketing DABRA for atherectomy "didn't render any statement misleading," ECF No. 50 at 13, as the Company fully disclosed to investors its practices regarding marketing DABRA for atherectomy and the associated regulatory risks. This forecloses any claim that Mr. Irwin intentionally concealed Ra Medical's off-label promotion practices when he signed his SOX certifications.

The SAC alleges that Irwin and Jackson were aware of the non-calibration issues affecting the DABRA system, rendering their certifications misleading. ¶¶ 266, 284. But Plaintiffs fail to make particularized allegations showing that either Irwin or Jackson knew of the non-calibration issues at the time of their certifications or that those non-calibration issues somehow resulted in a misstatement due to the omission of such information.

Vague certification claims with no particularized allegations of known falsity are insufficient to state a claim. *See, e.g.*, *Rok v. Identiv, Inc.*, No. 15-cv-5775-CRB, 2017 WL 35496, at *9–10 (N.D. Cal. Jan. 4, 2017) (dismissing vague certification claims), *aff'd sub nom, Cunningham v. Identiv, Inc.*, 716 F. App'x 663 (9th Cir. 2018); *Wanca v. Super Micro Comput., Inc.*, No. 5:15-cv-04049-EJD, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018)

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

("a later-discovered inaccuracy in certified reports is not enough" to state a fraud claim; more particularized allegations of known falsity are required because "declarants only certified the financial reporting to the extent of his or her knowledge on the date of execution"), *appeal denied*, No. 18-16391, 2018 WL 7107616 (9th Cir. Oct. 30, 2018); *In re Tibco Software Inc.*, No. C 05-2146 SBA, 2006 WL 1469654, at *24 (N.D. Cal. May 25, 2006) (SOX certifications not actionable without particularized allegations of falsity).

**C.      Categories of Statements this Court's March 24 Order Did Not Address Should Be Dismissed Now**

**1.      Plaintiffs Fail to Plead Misstatements or Omissions Regarding Absence of a Reported Serious Adverse Event**

Plaintiffs again assert that Ra Medical's Registration Statement and corresponding RoadShow Presentation (and later related statements Irwin made regarding Ra Medical's 3Q18 financial results and at a January 8, 2019 Biotech Showcase[11]) were false and misleading for claiming that "[n]o serious adverse events were reported in [the Company's] 2017 pivotal study," ¶ 207, and "0% reported serious adverse events (SAE), observed in our 2017 pivotal study and post-market surveillance of DABRA[,]" ¶ 209, when in fact "a patient had been injured during the pivotal study for DABRA," which was not reported to the FDA, ¶¶ 208, 210, 222, 238.  But even accepting Plaintiffs' allegations, Ra Medical *accurately* stated that **no serious adverse events, as opposed to other non-reportable injuries**, were reported in the 2017 pivotal study.  Failure to report an injury in connection with the DABRA pivotal study, when Plaintiffs do not allege the injury was serious, does not state a claim.  Ra Medical is not required to report all injuries to the FDA during a clinical study, only "serious adverse events," which occur when a device "[m]ay have

_____

[11] The SAC challenges Irwin's SAE-related statements during the 3Q18 conference call that the 2017 study "demonstrated 94% effectiveness at the time of the procedure with no reported serious adverse events[,]" ¶ 221, and during the January 8, 2019 Biotech Showcase Presentation that the study had "not a single complication, not a single adverse event reported[,]" ¶ 237.

17

3:19-cv-1079-LAB-AHG

caused or contributed to a death or serious injury or…[h]as malfunctioned and…would be likely to cause or contribute to a death or serious injury, if the malfunction were to recur." 21 C.F.R. § 803.50(a). And even if the alleged injury had been serious, by Plaintiffs' own admission, the Company had not reported any SAEs to the FDA *by the time of the IPO*, acknowledging that the Company's statement of no reported serious adverse events was fully accurate. ¶¶ 207–08; *see In re Tesla Motors, Inc. Sec. Litig.*, 75 F. Supp. 3d 1034, 1042 (N.D. Cal. 2014) (dismissing case when plaintiff challenged a "true statement"), *aff'd*, 671 F. App'x 670 (9th Cir. 2016).

Moreover, the SAC identifies three medical device reports ("MDRs") of "suspected device-associated deaths, serious injuries, and malfunctions," ¶ 181, involving DABRA procedures that the Company allegedly failed to timely file with the FDA, but all of these MDRs involved procedures performed *two years after the pivotal trial and nearly a year after the IPO*. ¶¶ 181–82. These facts therefore do not support Plaintiffs' theory that the Registration Statement's touting of "[n]o serious adverse events" reported in the 2017 pivotal study was false. *See, e.g.*, *In re Ashworth Secs. Litig.*, No. 99-CV-0121-L (JAH), 2000 WL 33176041, at *5 (S.D. Cal. July 18, 2000) (dismissing securities class action when plaintiffs failed to prove that challenged statements were "false when made").

The CW allegations only underscore the weakness of the SAC on this point. The allegation attributed to CW1—that Irwin "was informed of an injury caused to a patient in the pivotal study for DABRA that was not reported to the FDA," ¶ 179—does not state a claim because CW1 fails to allege that this injury was serious or that the Company was required to report it to the FDA, much less offer facts about the type of injury, when it occurred, whether it was known before the IPO, or whether it was related to DABRA. *Id.* Furthermore, by identifying CW1 as a "senior Ra Medical employee…from before the IPO," ¶ 43, the SAC, just like the FAC, provides no facts to ascertain whether this position would have made CW1 privy to serious adverse events, whether CW1's background or responsibilities qualified him or her to understand the FDA's SAE reporting requirements, or whether CW1 was even employed by Ra Medical at the time of the 2017 pivotal study.

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

*See Alaska Elec. Pension Fund v. Adecco S.A.*, 371 F. Supp. 2d 1203, 1211 (S.D. Cal. 2005) (dismissing complaint where CW was only referred to as a "former executive" and not described with sufficient specificity to infer reliability), *aff'd*, 256 F. App'x 74 (9th Cir. 2007); *Kipling v. Flex Ltd.*, No. 18-CV-02706-LHK, 2020 WL 2793463, at *15 (N.D. Cal. May 29, 2020) (CW described as "an employee" on a certain project lacked credibility).

Likewise, CW3's vague allegation—that "some sales representatives were told not to report injuries or issues with" DABRA—does not support Plaintiffs' SAE-related claims. ¶ 160. The SAC identifies CW3 as a "sales representative…in the Midwest region" employed by Ra Medical "from the IPO until the second quarter 2019," ¶ 45, meaning any issues or injuries CW3 reported to the Company would have been ***after the IPO*** and CW3 would not have had any personal knowledge about adverse events in the 2017 pivotal study or the qualifications to understand the FDA's reporting requirements at that time, ¶ 160.

The SAC therefore fails to allege sufficient facts to assess the reliability of CW1, CW3, or any of the statements attributed to them. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, No. 14cv2129-MMA (KSC), 2016 WL 2993481, at *11 n.11 (S.D. Cal. Mar. 31, 2016) (statements in offering materials were not plausibly false or misleading where, among others, "Plaintiffs do not allege that any of the confidential witnesses had any contact with the Individual Defendants, or otherwise had access to [key internal documents]"); *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1038 (S.D. Cal. 2014) (CW's reliance on hearsay "undermines [the] Court's ability to draw significance from her report").

### 2.    Plaintiffs Fail to Plead Misstatements or Omissions Regarding Documentation of Expenses and Payments to Physicians

The SAC renews its challenges to several of the Company's statements regarding its relationship with physicians, but these allegations again fall short. *First*, Plaintiffs claim that the Company's warning in its Registration Statement that "failure to comply with requirements governing the industry's relationships with physicians, including the reporting of certain payments to physicians…could have a material adverse effect on our business, financial condition, and results of operations" was misleading because Ra

19

Medical lacked a system to ensure proper documentation of expenses and payments to physicians. ¶ 100. However, Ra Medical fully disclosed to investors in the Registration Statement that the Company had in prior periods "identified a material weakness in [its] internal control over financial reporting" related to revenue recognition and lack of staffing in the accounting and finance organization. Ex. 3 at 26–28.

*Second*, Plaintiffs claim that the warning above in Ra Medical's Registration Statement, 3Q18 10-Q, 2018 10-K, and 1Q19 10-Q, and statements in these filings disclosing that Ra Medical is "subject to numerous laws and regulations related to health care fraud and abuse, false claims, anti-bribery and anti-corruption laws" and that violations of "anti-kickback, fraud and abuse and other healthcare laws and regulations" could expose the Company to "penalties," were false and/or misleading because they failed to disclose improper payments to physicians and that these practices were "likely to draw scrutiny" from regulators. ¶¶ 201–06, 231–36, 259–62, 279–82. But Plaintiffs do not meet their pleading burden here. While Plaintiffs tout the Company's October 31, 2019 press release relaying issues with Ra Medical's documentation system, this release was issued well after these statements were made and over a year after the IPO. ¶ 106. The Release contains no admissions that these insufficiently documented physician payments occurred before the IPO or before these SEC filings were made. ¶ 141; Ex. 4 at 5.

*Third*, Plaintiffs' reliance on CW2 is misplaced. CW2: (1) alleges no particular payments to physicians that were fraudulent, (2) only claims in vague terms that certain expenses "could be 'excessive,'" (3) was Melissa Burstein's Executive Assistant and therefore only submitted expense reports for her, (4) makes no allegations about the expense reporting or oversight for any other employees, and (5) does not contend that he or she operated within or interacted with the Company's finance or compliance teams, handled or approved reimbursements, saw others expenses, or had any reference point or benchmark for what was or was not "excessive." ¶¶ 175–78. CW2's only surviving allegation that "until May or June 2019…there was little oversight for expenses" which were "tracked on spreadsheets," ¶ 107; *see also* ¶¶ 175–78, and that the Company "lacked

20

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

a system for adequately documenting expenses," ¶ 107, is woefully insufficient.

*Fourth*, Ra Medical's recent settlement agreement with the DOJ cannot cure Plaintiffs' inadequately-pleaded claims because: (1) the agreement itself and related allegations in the SAC do not say when the alleged improper payments were made (only "from May 1, 2017 through October 31, 2019," which encompasses time both before and after the IPO and the challenged SEC filings) or when the Company learned about this alleged conduct, (2) there are no details provided as to who at the Company was responsible for the alleged payments, and (3) Ra Medical did not admit any wrongdoing in connection with the settlement, preventing Plaintiffs from using the agreement as an end-run around their burden of pleading known falsity.[12]

*Finally*, Plaintiffs allege these "[i]mproper or excessive payments" rendered the Company's Code of Ethics and description of its process for recordkeeping false and misleading, ¶¶ 211–18, but such statements in a company policy are immaterial, "aspirational," and would not mislead a reasonable investor. *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275–76 (9th Cir. 2017) (statements in a code of conduct cannot mislead a reasonable investor because they are "inherently aspirational" and not "objectively verifiable") (citation omitted); *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1138–41 (N.D. Cal. 2013) (statements in HP's Standards of Business Conduct Brochure constituted "at most" "puffery" and were "not material").

### 3. Plaintiffs Fail to Plead Misstatements or Omissions in Ra Medical's September 27, 2019 Form 8-K Regarding the Voluntary Recall of DABRA Catheters

Plaintiffs re-allege that the Company's disclosure in its Form 8-K filed with the SEC on September 27, 2019 that Ra Medical had "initiated a voluntary recall of its DABRA laser system single-use catheters due to a change in product labeling" was false or

---

[12] *See supra* at note 9.

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

misleading for failing to disclose that the Company had "implemented a covert product recall, or engaged in efforts leading to a product recall, as early as February 2018." ¶¶ 285–86.  However, Plaintiffs conflate the September 2019 recall, which was an effort to relabel existing product due to catheter shelf life considerations, ¶ 138, with the entirely distinct February 2018 "recall," which involved technicians servicing affected lasers and had no connection to the 2019 catheter relabeling issue, ¶¶ 5, 103.  Therefore, this Form 8-K disclosure was not false or misleading.[13]

## CONCLUSION

For the reasons described above, except for the one category of challenged statements this Court found actionable under Section 10(b) in its March 24, 2021 Order, Plaintiffs' re-pleaded Securities Act claims and Exchange Act claims should be dismissed.

Dated: June 10, 2021

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

/s/ Gregory L. Watts
Gregory L. Watts, State Bar No. 197126
Stephanie L. Jensen, WSBA No. 42042 (*pro hac vice*)
Jennifer E.K. Kendrex, WSBA No. 55596 (*pro hac vice*)

---

[13] For the reasons described above in Section II, Plaintiffs have also failed to plead that Ra Medical violated Item 303(b)(2)(ii) of Regulation S-K, requiring corporations to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations," 17 C.F.R. § 229.303(b)(2)(ii), by not disclosing in the Registration Statement the 2018 product recall, off-label marketing, and that the Company "lacked a system to ensure adequate documentation of expenses." ¶¶ 94-100.  Plaintiffs fail to plead that any of these issues existed at the time of the IPO, much less that they constituted unresolved "known trends" at the time of the IPO. *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1127 (S.D. Cal. 2012) (Item 303 claim dismissed for failure to show material facts known to defendants when prospectus was filed that were not disclosed in the filing), *aff'd sub nom, Fresno Cty. Emps.' Ret. Ass'n v. Alphatec Holdings*, *Inc.*, 607 F. App'x 694 (9th Cir. 2015).  Moreover, as to off-label promotion, the fact that Ra Medical "disclosed the very trend that [p]laintiffs claim [defendants] hid from the market" and "adequately warn[ed] investors about the potential [risk]," precludes liability. *Mosco v. Motricity, Inc.*, 649 F. App'x 526, 528–29 (9th Cir. 2016).

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF

701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:   (206) 883-2500
Facsimile:   (206) 883-2699
Email:  gwatts@wsgr.com
Email:  sjensen@wsgr.com
Email:  jkendrex@wsgr.com

*Counsel for Defendants Ra Medical Systems, Inc.
Andrew Jackson, Richard Heymann, Maurice
Buchbinder, Martin Colombatto, Richard Mejia, Jr.,
Mark E. Saad, and William Enquist, Jr.*

3:19-cv-1079-LAB-AHG

NOTICE OF AND MOTION TO DISMISS AND MEMO IN SUPPORT THEREOF