Gregory L. Watts, State Bar No. 197126
Stephanie L. Jensen, WSBA No. 42042 (*pro hac vice*)
Jennifer E.K. Kendrex, WSBA No. 55596 (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:  (206) 883-2500
Facsimile:  (206) 883-2699
gwatts@wsgr.com
sjensen@wsgr.com
jkendrex@wsgr.com

*Counsel for Defendants Ra Medical Systems, Inc., Andrew Jackson, Richard Heymann, Maurice Buchbinder, Martin Colombatto, Richard Mejia, Jr., Mark E. Saad, and William Enquist, Jr.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERVIN DERR, and PETER SHOEMAKER, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RA MEDICAL SYSTEMS, INC., DEAN IRWIN, ANDREW JACKSON, MELISSA BURSTEIN, MARTIN BURSTEIN, RICHARD HEYMANN, MAURICE BUCHBINDER, MARTIN COLOMBATTO, RICHARD MEJIA, JR., MARK E. SAAD, and WILLIAM ENQUIST, JR.,<br><br>Defendants. | Case No.:  3:19-cv-1079-LAB-AHG<br><br>**THE RA MEDICAL DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>CLASS ACTION<br><br>ORAL ARGUMENT REQUESTED<br><br>DATE:     October 12, 2021<br>TIME:     11:30 AM<br>CTRM:    14A, 14th Floor<br>JUDGE:   Hon. Larry Alan Burns |

3:19-cv-1079-LAB-AHG

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

    I.      PLAINTIFFS LACK SECTION 11 STANDING ......................................... 1

          A.     Plaintiffs Still Fail to Plead the Traceability of Their Shares .............. 1

          B.     Plaintiffs Inappropriately Attempt to Shift Their Pleading Burden ...................................................................................................... 3

          C.     A Lift of the Discovery Stay is Not Warranted ................................... 3

    II.     THE CHALLENGED SECTION 10(B) CLAIMS ARE INSUFFICIENT ........................................................................................ 5

          A.     Plaintiffs Still Fail to Allege False or Misleading Statements Regarding Off-Label Promotion or SOX Certifications ...................... 5

          B.     Previously Unaddressed Statements Are Not False or Misleading ............................................................................................. 8

CONCLUSION .................................................................................................. 10

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ardente, Inc. v. Shanley*,
2010 WL 546485 (N.D. Cal. Feb. 10, 2010)................................................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................9

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
686 F. Supp. 2d 404 (D. Del. 2009) .........................................................7, 8

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
778 F.3d 228 (1st Cir. 2015).......................................................................6

*Gordon v. Vanda Pharm.*,
2021 WL 911755 (E.D.N.Y. Mar. 20, 2021) .............................................6

*In re Atossa Genetics Inc. Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017)......................................................................6

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) .................................................................2, 3

*In re Juniper Networks, Inc. Sec. Litig.*,
2004 WL 540910 (N.D. Cal. Mar. 11, 2004),
*aff'd*, 158 F. App'x 899 (9th Cir. 2005) ..................................................2

*In re Sinclair Broad. Grp., Inc. Sec. Litig.*,
2020 WL 571724 (D. Md. Feb. 4, 2020).....................................................6

*In re Tibco Software Inc.*,
2006 WL 1469654 (N.D. Cal. May 25, 2006)..............................................7

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
33 F. Supp. 3d 1107 (N.D. Cal. 2014),
*rev'd in part on other grounds*, 669 F. App'x 878 (9th Cir. 2016)..........2

*In re Violin Memory Sec. Litig.*,
2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) .............................................8

*Limantour v. Cray Inc.*,
432 F. Supp. 2d 1129 (W.D. Wash. 2006) ..................................................8

*Mauss v. NuVasive, Inc.*,
2016 WL 3681831 (S.D. Cal. July 12, 2016)..............................................9

*Medhekar v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
99 F.3d 325 (9th Cir. 1996) ........................................................................4

*Mosco v. Motricity, Inc.*,
649 F. App'x 526 (9th Cir. 2016)................................................................8

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

*Mulderrig v. Amyris, Inc.*,
    492 F. Supp. 3d 999 (N.D. Cal. 2020)..............................................................7

*Napoto v. DHL Exp. (USA), Inc.*,
    2009 WL 1974412 (N.D. Cal. July 2, 2009) .............................................3, 4

*Osher v. JNI Corp.*,
    2003 WL 25797624 (S.D. Cal. May 21, 2003) ...............................................4

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) .....................................................................10

*Rok v. Identiv, Inc.*,
    2017 WL 35496 (N.D. Cal. Jan. 4, 2017)........................................................7

*Rosi v. Aclaris Therapeutics*,
    2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021)..............................................5, 6

*SG Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
    189 F.3d 909 (9th Cir. 1999) .........................................................................4

*Simon v. Abiomed*,
    37 F. Supp. 3d 499 (D. Mass. 2014),
    *aff'd sub nom Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
    778 F.3d 228 (1st Cir. 2015)........................................................................6, 8

*Siracusano v. Matrixx Initiatives*,
    585 F.3d 1167 (9th Cir. 2009),
    *aff'd*, 563 U.S. 27 (2011)...............................................................................9

*Wanco v. Super Micro Computer, Inc.*,
    2018 WL 3145649 (N.D. Cal. June 27, 2018)................................................8

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017),
    *aff'd*, 765 F. App'x 239 (9th Cir. 2019) .........................................................2

*Zhengyu He v. China Zenix Auto Int'l Ltd.*,
    2020 WL 3169506 (D.N.J. June 12, 2020)......................................................7

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ..................4, 10

**STATUTES AND REGULATIONS**

21 C.F.R. § 803.50(a)...........................................................................................8

Private Securities Litigation Reform Act of 1995,
    Pub. L. 104-67, 109 Stat. 737 ("PSLRA").................................................1, 3, 4, 5

Section 11 of the Securities Act,
    15 U.S.C. § 77k (2018) ...............................................................1, 2, 3, 4, 10

Section 15 of the Securities Act,
    15 U.S.C. § 77o (2018) ...........................................................................4, 10

iii

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

15 U.S.C. § 77z-1(b)(1) ....................................................................................... 3, 4

Section 10(b) of the Exchange Act,
    15 U.S.C. § 78j(b) (2018) ........................................................................ *passim*

Section 20(a) of the Exchange Act,
    15 U.S.C. § 78t (2018) ................................................................................... 10

iv

## INTRODUCTION

Plaintiffs lack statutory standing to pursue their Section 11 claim because—at a minimum—the SAC does not account for 165,360 non-IPO shares that became eligible for sale before Plaintiffs purchased their shares, and thus does not plausibly plead that their shares are traceable to the IPO. Plaintiffs again seek to shift their pleading burden to Defendants, and now even go so far as trying to sidestep the statutorily mandated discovery stay to help them plead traceability. But as this Court has noted, "whether Defendants offer something persuasive in place of missing allegations is beside the point. Plaintiffs bear the burden of pleading facts supporting the inference of standing, and they haven't carried that burden." Order at 17. That statement is as applicable to the SAC as it was to the FAC. Plaintiffs' Section 11 claim should be dismissed again, this time with prejudice.

Plaintiffs' Section 10(b) allegations regarding off-label promotions and SOX certifications must also be dismissed again because the SAC fails to cure the deficiencies outlined in this Court's prior Order. And Plaintiffs' Section 10(b) allegations regarding serious adverse events, physician payments, and the September 2019 recall must be dismissed because they lack the detail the PSLRA requires.

## I.    PLAINTIFFS LACK SECTION 11 STANDING

### A.    Plaintiffs Still Fail to Plead the Traceability of Their Shares

The Opposition asserts that "[t]he SAC adds ample additional detail" regarding traceability. Opp. at 5. While the SAC is more detailed, Plaintiffs ignore that these additional details show that Plaintiffs **have not pleaded** the traceability of their shares, purchased no earlier than February 2019, to the Company's September 2018 IPO Registration Statement. Plaintiffs do not account for 165,360 non-IPO shares. *See* ¶¶ 46–51. The only information pleaded as to these 165,360 shares is that they purportedly are not addressed in Form 4s or Form 144s, but the very Investor Publication **cited in the SAC** (¶ 49 n.1) clarifies that: "If you are not (and have not been for at least three months) an affiliate of the company issuing the securities and have held the restricted securities for at

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

least one year, **you can sell the securities without regard to the conditions in Rule 144** discussed above[,]" which includes filing a Form 144.[1] Because Form 4s and Form 144s need only be filed by company "insiders" or "affiliates," the absence of either being filed before February 2019 does not plead that such non-IPO shares were not eligible for sale at the time Plaintiffs purchased their shares. *See* Mot. at 7-8 (citing authority); ¶¶ 50–51. Plaintiffs do not respond to this argument in their Opposition and "therefore concede[] it through silence." *Ardente, Inc. v. Shanley*, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010).[2] Plaintiffs are not entitled to a presumption of traceability. *See* Mot. at 8-9.[3] And Plaintiffs' citation to *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019), does not change this because there, unlike here, the plaintiff purchased shares **before** any non-IPO restricted shares became eligible for sale, making tracing the shares to the IPO "'no obstacle.'" *Id.* at *24.

While this result may appear harsh, it is "the condition Congress has imposed for granting access to the 'relaxed liability requirements' § 11 affords." *In re Century*

---

[1] Plaintiffs' claim that Defendants "bring in facts outside of the complaint to defeat Plaintiffs' claims," Opp. at 9, is a red herring. The Court need look no further than the SAC (¶¶ 46-51) to see that Plaintiffs failed to plead that these 165,360 non-IPO shares were not eligible for sale prior to February 2019 when Plaintiffs' purchased. To the extent Plaintiffs rely on their catch-all allegations that they "are informed and believe that no non-IPO shares of Ra Medical entered the market prior to Plaintiffs' purchases" because they reviewed Forms 4 and 144 (¶¶ 51–52), these allegations are contradicted by the SAC's footnote 1, and such internally contradictory allegations need not be credited. *See In re Juniper Networks, Inc. Sec. Litig.*, 2004 WL 540910, at *3 (N.D. Cal. Mar. 11, 2004) (rejecting "internally contradictory allegations" in a securities fraud complaint), *aff'd*, 158 F. App'x 899 (9th Cir. 2005).

[2] Plaintiffs also do not dispute that roadshow materials outside the Registration Statement cannot form the basis for a Section 11 claim. Mot. at 9–10; Opp. at 20 n.13.

[3] Plaintiffs' citation to *In re Ubiquiti Networks, Inc. Sec. Litig.*, 33 F. Supp. 3d 1107 (N.D. Cal. 2014), *rev'd in part on other grounds*, 669 F. App'x 878 (9th Cir. 2016), Opp. at 8, is inapposite; there, the court accepted a statistical likelihood argument that shares were traceable to the registration statement, a clear deviation from Section 11's strict tracing requirement and the abundant authority cited by Defendants roundly rejecting the presumption of traceability argument. *See* Mot. at 8–9.

3:19-cv-1079-LAB-AHG

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

*Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (citation omitted). Plaintiffs may still proceed with their Section 10(b) claims that do not require tracing. And this is not the inevitable outcome in every Section 11 case. As this Court noted, "where the only shares in the market are those issued in connection with the registration statement," "clearing this bar is simple[.]" Order at 17. It is only where **non-IPO shares** are also eligible for sale on the market, that "plaintiffs must trace the chain of title for their shares to the challenged offering." *Id.*; Mot. at 5–9. And standing is only denied in the subset of cases where, as here, plaintiffs are unable to plausibly plead that chain of title to the IPO.

### B.     Plaintiffs Inappropriately Attempt to Shift Their Pleading Burden

Plaintiffs spill much ink decrying that the Company has not shown that non-IPO shares actually entered the market before Plaintiffs purchased their shares. Opp. at 2–3, 5–11. But the shares need not be actually sold into the market to preclude traceability; rather, the relevant point in time is when non-IPO shares become **eligible** for sale. *See* Mot. at 7. Here, the very Registration Statement on which the SAC's tracing allegations rely (¶¶ 47–49) details when the non-IPO shares became eligible for sale. The Court should not countenance the argument that the Registration Statement "**has no bearing**" on Plaintiffs' ability to plead standing to allege a Section 11 claim **challenging the Registration Statement**. *See* Opp. at 9 n.6 (emphasis added). Regardless, Plaintiffs may not shift their pleading burden onto Defendants. *See Century Aluminum*, 729 F.3d at 1106–07. This Court already rejected Plaintiffs' prior attempt to do exactly that, stating: "Plaintiffs protest that Defendants don't show that other shares were actually sold" and holding this is "beside the point" as "Plaintiffs bear the burden of pleading facts supporting the inference of standing, and they haven't carried that burden." Order at 17.

### C.     A Lift of the Discovery Stay is Not Warranted

Tacitly conceding that the SAC fails to plead Section 11 standing, Plaintiffs ask the Court to lift the PSLRA's statutorily imposed discovery stay to help them satisfy their pleading burden. Opp. at 8–11. Plaintiffs cite *Napoto v. DHL Exp. (USA), Inc.*, 2009 WL 1974412 (N.D. Cal. July 2, 2009) and Section 77z-1(b)(1) of the PSLRA, neither of which

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

support their position. Opp. at 9, 10. *Napoto* was an employment case, not subject to the PSLRA discovery stay. And Section 77z-1(b)(1) provides that discovery is stayed pending a motion to dismiss "unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 77z-1(b)(1). Yet Plaintiffs make no argument, much less a "motion," concerning the need to "preserve evidence" or prevent "undue prejudice." And "as a matter of law, failure to muster facts sufficient to meet the [PSLRA's] pleading requirements cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay…To so hold would contravene the purpose of the [PSLRA's] heightened pleading standards." *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 189 F.3d 909, 912–13 (9th Cir. 1999) (PSLRA "contemplates that 'discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint.'").

The PSLRA discovery stay shows that "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *Medhekar v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996) ("judges should determine merit of complaint before defendants are required to turn over company's records") (citation omitted); *Osher v. JNI Corp.*, 2003 WL 25797624, at *2 (S.D. Cal. May 21, 2003) (plaintiffs not entitled to discovery to "draft and file their amended complaint such that it meets the PSLRA's heightened pleading requirements and corrects the [earlier complaint's] deficiencies.").

Plaintiffs have now had three opportunities to plead Section 11 standing; they should not be given a fourth. Their Section 11 claim (and dependent Section 15 claim) should be dismissed with prejudice. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

3:19-cv-1079-LAB-AHG

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## II.    THE CHALLENGED SECTION 10(B) CLAIMS ARE INSUFFICIENT

Apart from the statements this Court already found actionable (Mot. at 2 n.1), none of Plaintiffs' Section 10(b) claims satisfy the PSLRA's heightened pleading standard.

### A.    Plaintiffs Still Fail to Allege False or Misleading Statements Regarding Off-Label Promotion or SOX Certifications

***Off-Label Promotion.*** The Opposition offers no reason to revise this Court's holding that the Company's "omission that it was marketing DABRA systems for the non-indicated use of atherectomy didn't render any statement misleading" because "[a] reasonable investor would have understood" that Ra Medical "was encouraging physicians to use DABRA for atherectomy and risking regulatory scrutiny as a result" based upon statements made in its November 2018 10-Q that "we believe that we can promote the device [for atherectomy]" and in its March 2019 10-K that a competitor claimed the Company was engaging in "off-label promotion." Order at 13. Moreover, Plaintiffs admit the FDA's alleged verbal warning to the Company was raised in the FAC, and the Court found it insufficient. Opp. at 11–12. The "new" fact Plaintiffs proffer—that Defendant Burstein was given a "'a gentle reminder' from the FDA not to market DABRA as an atherectomy system," ¶ 77 & Opp. at 11–12, merely repackages the substance of the FAC's allegations; it cannot revive Plaintiffs' claim.

Plaintiffs' noncontrolling cases, Opp. at 11–13, do not revive Plaintiffs' claim either. Indeed, none of them involve a company essentially telling the market what it was doing, as Ra Medical did here. The cases are distinguishable for other reasons, as well. The FDA's actions in *Rosi v. Aclaris Therapeutics* are far different than those alleged here. 2021 WL 1177505, at *6, *15–16 (S.D.N.Y. Mar. 29, 2021). In *Rosi*, the FDA first sent the company a letter stating that specific advertising statements misrepresented or omitted material risks and overstated the efficacy of the company's product. The FDA then sent the company a second letter explicitly telling the company it was in violation and instructing it to stop such violations. Here, the FDA's undated, verbal, unspecific, and anecdotal "gentle reminder" to Ra Medical is far different from the specific, written letters in *Rosi*, and is not

3:19-cv-1079-LAB-AHG

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

commensurable with the formal FDA warning letters at issue in both *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784 (9th Cir. 2017), and *Simon v. Abiomed*, 37 F. Supp. 3d 499, 518 (D. Mass. 2014), *aff'd sub nom Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228 (1st Cir. 2015). Indeed, *Rosi* cautioned that even FDA correspondence far more formal than the alleged "gentle reminder" here need not always be disclosed, stating "the securities laws cannot be used as a backdoor to require a company, as a matter of routine, to disclose every regulatory warning or letter it receives." 2021 WL 1177505, at *15. Moreover, Plaintiffs make no effort to challenge the holding in *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.* affirming that the company did not mislead investors by not disclosing the full scope of its FDA communications. 778 F.3d 228, 244–45 (1st Cir. 2015) (company may even "behave 'irresponsibly' if it issues an ominous warning about an uncertain risk that 'had not yet been adequately investigated'") (citation omitted); Mot. at 12–13. And Plaintiffs' citation to *Gordon v. Vanda Pharmaceuticals* (Opp. at 12) is meaningless as the court there did not even reach the issue of whether the company misled investors by failing to disclose an FDA pronouncement and subsequent FDA lawsuit. 2021 WL 911755, at *1 n.2 (E.D.N.Y. Mar. 20, 2021).

Plaintiffs' reliance on the Company's DOJ settlement is also misplaced. Opp. at 14. "[U]nproven allegations in the DOJ complaint do not establish illegality, nor does the fact that [defendant] reached a non-punitive settlement with the DOJ." *In re Sinclair Broad. Grp., Inc. Sec. Litig.*, 2020 WL 571724, at *20 (D. Md. Feb. 4, 2020); *see also* Mot. at 13. Plaintiffs otherwise fail to address most of Defendants' challenges to the SAC's reliance on the DOJ settlement, Mot. at 13–14.

Finally, Plaintiffs fail to actually refute Defendants' points regarding the gross insufficiency of the CW allegations with respect to off-label promotion allegations, choosing instead to anchor their claims to mostly recycled, failed allegations. *See* Mot. at 14; Opp. at 12, 15.

**SOX Certifications.** This Court has already held that the challenged SOX certifications make no "unqualified certification that the controls and procedures are

6

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

effective" and thus "can't form a basis for Section 10(b) liability." Order at 14. Nothing in the SAC or Opposition justifies altering this holding, nor can it: no amount of creative pleading or argument can alter the language of the certifications. Rather than address the Court's central finding that the "SOX certifications are not an unqualified certification of effective controls and procedures," precluding liability, Opp. at 24, Plaintiffs instead double-down on their arguments that the certifications were misleading because Defendants Irwin and Jackson were "aware of the calibration issues with catheters" and "off-label marketing of DABRA" and the certifications "failed to disclose the material weaknesses that Ra Medical later admitted existed." *Id.* at 23. But as the Opposition concedes, the Court already considered and squarely rejected these arguments. *Id*. at 24.

Plaintiffs further claim that Ra Medical's November 2019 disclosure of a material weakness following discovery of actions "inconsistent with [the Company's] Code of Ethics and Conduct and related policies involving certain former executive officers," ¶ 148 (emphasis added), "plausibly" relates to Defendant Irwin, Opp. at 24, but this "speculative" allegation falls flat. *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 423 (D. Del. 2009) (insufficient basis to infer plea agreement statements referred to specific executives). And even if Ra Medical's disclosure here related to Defendant Irwin, it still fails to show that Defendants were aware of such undisclosed material weaknesses at the time of the certifications. In an effort to conceal their own pleading deficiency, Plaintiffs cite cases, Opp. at 23–24, with actionable SOX certifications that are nowhere near analogous. *See, e.g.*, *Zhengyu He v. China Zenix Auto Int'l Ltd.*, 2020 WL 3169506, at *7–8 (D.N.J. June 12, 2020) (SOX signatories knew the company was "guilty of the conduct the NYSE was investigating" while the annual report only disclosed the investigation); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1024 (N.D. Cal. 2020) (specific allegations that defendants knew SOX certifications and filings failed to disclose pre-existing material weaknesses despite prior assurances of corrective actions).

Plaintiffs' attempts to factually distinguish *Rok v. Identiv, Inc.* and *In re Tibco Software Inc.* (Opp. at 24) are also unavailing because Plaintiffs ignore their primary

3:19-cv-1079-LAB-AHG

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

holdings that SOX certifications cannot form the basis of Section 10(b) liability without particularized allegations of known falsity. Indeed, this requirement is even emphasized in Plaintiffs' own authority. *See Horizon Lines, Inc.*, 686 F. Supp. 2d at 420–27 (rejecting SOX certification allegations for failure to show known falsity). And in *Limantour v. Cray Inc.*, the Court actually found the SOX certifications <u>not</u> actionable because plaintiffs failed to allege "Defendants had actual knowledge of their false or misleading nature." 432 F. Supp. 2d 1129, 1160 (W.D. Wash. 2006). Plaintiffs also do not challenge the primary holding in *Wanco v. Super Micro Computer, Inc.*, applicable here, that a "later-discovered inaccuracy" alone is insufficient. 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018).

Finally, Plaintiffs fail to respond to Ra Medical's argument (or authority) that the Company's transparency in disclosing multiple material weaknesses in internal controls in prior periods belies an inference of fraud. Mot. at 15–16. [4]

### B.      Previously Unaddressed Statements Are Not False or Misleading

*No Serious Adverse Events.* The Opposition makes a single passing reference to the Registration Statement's failure to disclose "unreported injuries" associated with DABRA, Opp. at 11, and reiterates in a cursory footnote that CW1 alleged that Defendant Irwin "was informed of an injury caused to a patient during the pivotal study that was not reported to the FDA," *id.* at 18 n.11. However, Plaintiffs never allege this injury was a "serious adverse event*"*—the **only** type of injury required to be reported to the FDA during a clinical study. 21 C.F.R. § 803.50(a). Nor do Plaintiffs explain why Ra Medical was required to report

---

[4] The Opposition also fails to revive actionable Item 303 violations as to off-label promotion and physician payments. The allegations fail to show these issues existed at the time of the IPO, much less that they were "known trends" at that time. Plaintiffs' cases offer no support for their position—*Simon*, 37 F. Supp. 3d 499, does not even concern Item 303 violations and, unlike here, *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *15 (N.D. Cal. Oct. 31, 2014), involved a "negative trend related to federal government sales" that was widely known (although not disclosed) at the time of the IPO. Plaintiffs also do not address Ra Medical's controlling authority, including that the disclosure of its marketing practices and related risks precludes liability under Item 303 as to the off-label promotion claims. *See Mosco v. Motricity, Inc.*, 649 F. App'x 526, 528–29 (9th Cir. 2016).

this supposed injury. Mot. at 17–18. Plaintiffs merely try to cast suspicion over Ra Medical's truthful statements by arguing that "**if** the injury should have been reported to the FDA but was not, Ra Medical **could** be found to have fraudulently obtained marketing clearance." Opp. at 18 n.11 (emphasis added). But the SAC is devoid of any allegation that a reportable injury **actually** occurred, and a hypothetical violation cannot sustain a securities fraud claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007) (pleading requires more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

*Physician Payments and Expense Documentation.* Ra Medical has already shown that the DOJ settlement—in which the Company never admitted any wrongdoing—cannot cure Plaintiffs' inadequate physician payment allegations. Mot. at 21. Plaintiffs concede they do not allege when improper payments were made, when the Company learned about them, or who directed them. Opp. at 16. The timeframe in the settlement encompasses the period both before and after the IPO—"during the period from May 1, 2017 through October 31, 2019," SAC Ex. 4 at 2—but Plaintiffs do not clarify further. Opp. at 16. The failure to plead these facts distinguishes this case from Plaintiffs' authority. *See Mauss v. NuVasive, Inc.*, 2016 WL 3681831, at *3–4 (S.D. Cal. July 12, 2016) (claims of illegal kickbacks leading to DOJ settlement bolstered with extensive CW statements detailing exact time periods, amounts of improper expenses, and which individual defendants were involved); *Siracusano v. Matrixx Initiatives*, 585 F.3d 1167, 1181 (9th Cir. 2009) (at the time of the first misleading statement, the company was already aware of at least 14 complaints about its product's safety and a pending lawsuit), *aff'd*, 563 U.S. 27 (2011).

Plaintiffs' allegations regarding documentation of expenses are also insufficiently pleaded. Ra Medical fully disclosed to investors in its Registration Statement that the Company had in prior periods "identified a material weakness in [its] internal control over financial reporting," Ex. 3 at 26–28, a fact the Opposition glosses over. Plaintiffs claim that the disclosed weakness did not notify investors of the improper payments to physicians, Opp. at 17, but again, Plaintiffs fail to show exactly when these alleged payments occurred.

9

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Similarly, while the Opposition focuses on the Corporate Integrity Agreement entered into as part of the DOJ settlement and the termination of senior executives in October 2019 (Opp. at 16–17), the SAC alleges nothing about the state of Ra Medical's expense documentation **at the time of the IPO in September 2018**. Plaintiffs' string of inapposite cases stating that terminations of executives can establish scienter are an obvious red herring. Opp. at 17. And Plaintiffs entirely disregard Ra Medical's arguments that CW2's allegations are inadequate, thereby conceding the issue. *See supra* at 2. Finally, Plaintiffs have no basis to insist that Ra Medical's Code of Ethics is actionable under Section 10(b) despite clear authority to the contrary. Mot. at 21. Plaintiffs' attempt to distinguish *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, Opp. at 22, overlooks the case's primary holding that "a code of conduct is 'inherently aspirational'" and that such statements cannot be "measured for compliance," 845 F.3d 1268, 1276 (9th Cir. 2017), foreclosing liability.

*Voluntary Recall.* Contrary to Plaintiffs' interpretation, the Court never held that the voluntary recall of DABRA catheters reflected in the September 2019 Form 8-K was related to the February 2018 "recall." Order at 11–12. In fact, the Order suggests the opposite, holding "Plaintiffs plausibly allege that Ra was aware of the calibration issue in February 2018 and understood the issue to be the same one that caused problems <u>through March 2019</u>," not September 2019. *Id.* at 12 (emphasis added). As the SAC and Opposition make clear, the 2019 recall reflected in the Form 8-K related to the Company "relabel[ing] catheters with a two-month shelf life expiration," Opp. at 25, ¶ 138, whereas the February 2018 "recall" concerned "technicians servic[ing] affected lasers and replac[ing] catheters for physicians" due to a "manufacturing problem." ¶¶ 5, 103. Plaintiffs' claim that the Form 8-K was misleading for failing to disclose the earlier, unrelated "recall," is unpersuasive.

## CONCLUSION

For these reasons, Plaintiffs' Sections 11 and 15 claims, and renewed Sections 10(b) and 20(a) claims should be dismissed with prejudice. *Zucco*, 552 F.3d at 1007.

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Dated: August 25, 2021         **WILSON SONSINI GOODRICH & ROSATI, P.C.**

/s/ Gregory L. Watts
Gregory L. Watts, State Bar No. 197126
Stephanie L. Jensen, WSBA No. 42042 (*pro hac vice*)
Jennifer E.K. Kendrex, WSBA No. 55596 (*pro hac vice*)
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:  (206) 883-2500
Facsimile:   (206) 883-2699
Email:  gwatts@wsgr.com
Email:  sjensen@wsgr.com
Email:  jkendrex@wsgr.com

*Counsel for Defendants Ra Medical Systems, Inc. Andrew Jackson, Richard Heymann, Maurice Buchbinder, Martin Colombatto, Richard Mejia, Jr., Mark E. Saad, and William Enquist, Jr.*

11

3:19-cv-1079-LAB-AHG

THE RA MEDICAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS