1  Robert V. Prongay (SBN 270796)
       *rprongay@glancylaw.com*
2  Pavithra Rajesh (SBN 323055)
       *prajesh@glancylaw.com*
3  GLANCY PRONGAY & MURRAY LLP
   1925 Century Park East, Suite 2100
4  Los Angeles, California 90067
   Telephone: (310) 201-9150
5  Facsimile: (310) 201-9160
6
7  *Attorneys for Lead Plaintiffs Ervin Derr*
   *and Peter Shoemaker*

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  ERVIN DERR, and PETER                Case No. 3:19-cv-01079-LAB-AHG
    SHOEMAKER, Individually and on
12  Behalf of All Others Similarly Situated,   **PLAINTIFFS' NOTICE OF**
                                               **UNOPPOSED MOTION AND**
13              Plaintiff,                     **MOTION FOR PRELIMINARY**
                                               **APPROVAL OF CLASS ACTION**
14         v.                                  **SETTLEMENT; MEMORANDUM**
                                               **OF POINTS AND AUTHORITIES**
15  RA MEDICAL SYSTEMS, INC.,                  **IN SUPPORT THEREOF**
    DEAN IRWIN, ANDREW JACKSON,
16  MELISSA BURSTEIN, MARTIN
    BURSTEIN, RICHARD HEYMANN,                 Date:       January 10, 2022
17  MAURICE BUCHBINDER, MARTIN                 Time:       11:30 a.m.
    COLOMBATTO, RICHARD MEJIA,                 Courtroom:  14A, 14th Floor
18  JR., MARK E. SAAD, and WILLIAM             Judge:      Hon. Larry Alan Burns
    ENQUIST, JR.,
19
20              Defendant.
21
22
23
24
25
26
27
28

# **<u>TABLE OF CONTENTS</u>**

I.    PRELIMINARY STATEMENT ....................................................................1

I.    SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ................2

    A.    Nature of the Action....................................................................2

    B.    Initial Complaint and Lead Appointment Process.................................3

    C.    Lead Counsel's Investigation and the FAC ...........................................3

    D.    Defendants' Motions to Dismiss the FAC .............................................3

    E.    Lead Counsel's Continued Investigation and the SAC ..........................4

    F.    Motion to Dismiss the Compliant, Mediation Efforts and Settlement Negotiations ..................................................................................4

II.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)....5

III.  ARGUMENT .............................................................................................7

    A.    The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors...............................7

        1.    Plaintiffs and Lead Counsel Adequately Represented the Settlement Class............................................................................7

        2.    The Settlement is the Result of Arms'-Length Negotiations .......8

        3.    The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation ....................................................................9

            (a)    The Strength of Plaintiffs' Case and Risk of Continued Litigation .........................................................................9

            (b)    Risks of Maintaining Class Action Status........................11

        4.    Rule 23(e)(2)(C)(iii)-(iv) ............................................................11

        5.    The Settlement Treats All Class Members Equitably Relative To Each Other ..............................................................................13

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      6.     The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ...........................................................13

  B.    Class Certification is Appropriate for Settlement Purposes .................16

      1.     The Settlement Class is Sufficiently Numerous .........................17

      2.     Common Questions of Law or Fact Exist ..................................18

      3.     Plaintiffs' Claims Are Typical of Those of the Settlement Class...............................................................................................18

      4.     Plaintiffs and Lead Counsel Adequately Represent the Settlement Class.........................................................................19

      5.     The Predominance and Superiority Requirements Are Satisfied ...................................................................................20

      6.     The Court Should Appoint Lead Counsel as Counsel for the Class....................................................................................21

  C.    The Court Should Approve the Proposed Form and Method of Notice ....................................................................................................21

IV.    PROPOSED SCHEDULE OF EVENTS .......................................................22

V.    CONCLUSION ................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................17, 20

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013)...............................................................................19

*Barnes v. AT&T Pension Benefit Plan*,
   270 F.R.D. 488 (N.D. Cal. 2010) ............................................................18

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...................................................................17

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .........................................20

*Christine Asia Co. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)..........................................13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir.2004) ......................................................................6

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...........................................21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................*passim*

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ..............................................................17, 18

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ........................................10

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018),..........................................14

*In re Adobe Sys., Inc. Sec. Litig.*,
   139 F.R.D. 150 (N.D. Cal. 1991) .......................................................................17

*In re Am. Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................................8

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ..................................................21

*In re BankAtlantic Bancorp, Inc.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)......................................................11

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
   2015 WL 224631 (S.D. Cal. Jan. 15, 2015) .......................................................19

*In re China Med. Corp. Sec. Litig.*,
   2013 WL 12126754 (C.D. Cal. May 16, 2013).....................................................8

*In re Cooper Cos. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009).......................................................................17

*In re Diamond Foods, Inc.*,
   295 F.R.D. 240 (N.D. Cal. 2013) .....................................................................19

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1035 (N.D. Cal. 2008)..............................................................11

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...............................................................................12

*In re Verisign, Inc. Sec. Litig.*,
   2005 WL 7877645 (N.D. Cal. Jan. 13, 2005).....................................................17

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................9

*Jaffe v. Morgan Stanley & Co., Inc.*,
   2008 WL 346417 (N.D. Cal. Feb. 7, 2008).......................................................16

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017)..................................................................9

iv

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ................................................. 7, 8, 19

*Officers for Justice v. Civ. Serv. Comm.*,
  688 F.2d 615 (N.D. Cal. 1982) ........................................................................... 14

*Persky v. Turley*,
  1991 WL 329564 (D. Ariz. Dec. 20, 1991) ......................................................... 20

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .......................................................................... 11

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................... 8

*Siemer v. Assocs. First Capital Corp.*,
  2001 WL 35948712 (D. Ariz. March 30, 2001) ................................................. 18

*Stewart v. Applied Materials, Inc.*,
  2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .................................................... 15

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..................................................... 15

*Vinh Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................................................... 13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................................................ 16

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ................................................. 6, 8, 9

STATUTES

15 U.S.C. §§ 78j(b) and 78t(a) ................................................................................ 2

RULES

Fed. R. Civ. P. 23 ............................................................................................ *passim*

v

1

REGULATIONS

2

17 C.F.R. § 240.10b-5 .............................................................................................. 2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF UNOPPOSED MOTION
## <u>FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 10, 2022 at 11:30 a.m., in Courtroom 14A, or as soon thereafter as the matter may be heard, Lead Plaintiffs Ervin Derr and Peter Shoemaker (collectively "Plaintiffs") will and hereby move the Honorable Larry Alan Burns, United States District Judge, at the United States District Court for the Southern District of California, 333 W. Broadway, San Diego California, 92101, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing Notice[1] submitted herewith.

As set forth in the memorandum of points and authorities, in accordance with Federal Rule of Civil Procedure 23(e), the proposed Settlement is within the range of what could be found to be fair, reasonable, and adequate, such that notice of the Settlement's terms is appropriate and may be disseminated to members of the proposed Settlement Class. Accordingly, Plaintiffs request that the Court: (i) grant preliminary approval of the proposed Settlement of this Action on the terms set forth in the Stipulation of Settlement and exhibits thereto; (ii) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iii) preliminarily certify the Settlement Class, and appoint Lead Counsel as class counsel for the Settlement Class; and (iv) set a hearing date to finally determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses should be approved.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated November 12, 2021 (the "Stipulation"). A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration of Robert V. Prongay in Support of Motion for Preliminary Approval of Class Action Settlement (the "Prongay Declaration").

The motion is based on the following memorandum, the Prongay Declaration, and exhibits thereto, including the Stipulation and further exhibits thereto, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement of this Action that resolves all claims against Defendants in exchange for a non-reversionary cash payment of $10 million.  Plaintiffs submit this Settlement represents an excellent result for the Settlement Class and ultimately should be approved by this Court, especially given the risks, costs, and delays of continued litigation.

The Settlement was reached after hotly contested litigation, which included: (i) Lead Counsel's comprehensive investigation into the alleged claims asserted against Defendants, which was assisted by an investigator who conducted numerous interviews with former Ra Medical employees; (ii) drafting the extensive First Amended Complaint ("FAC"); (iii) fully briefing Defendants' motions to dismiss the FAC; (iv) successfully defeating Defendants' motions to dismiss in part; (v) continuing the investigation into Defendants and preparing the Second Amended Complaint ("Complaint") based thereon; (vi) fully briefing Defendants' motion to dismiss the Complaint; and (vii) arms'-length negotiations between the Parties, including the drafting of substantial mediation statements and an all-day mediation session with Jed D. Melnick, Esq. of JAMS on September 28, 2021, an experienced and highly respected mediator of complex class actions, which resulted in the acceptance of a mediator's recommendation to settle; and (vi) the negotiation and execution of the Stipulation and its exhibits.

Thus, the $10 million Settlement is the result of arm's-length negotiations conducted by experienced counsel, with the assistance of an experienced mediator, and with sufficient information to evaluate the Settlement in light of the risks and uncertainties of continued litigation.  As set forth herein, the Settlement warrants preliminary approval by this Court so that notice can be distributed to members of the Settlement Class and a Settlement Hearing can be scheduled to consider final approval of the Settlement.

# I.    SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

## A.    Nature of the Action

Plaintiffs assert claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 and, against Ra Medical Systems, Inc. ("Ra Medical" or the "Company"), and defendants Dean Irwin ("Irwin") and Andrew Jackson ("Jackson"). Plaintiffs also assert claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), against the Company, and defendants Irwin, Jackson. Melissa Burstein, Martin Burstein, Richard Heymann ("Heymann"), Maurice Buchbinder ("Buchbinder"), Martin Colombatto ("Colombatto"), Richard Mejia, Jr. ("Mejia"), Mark E. Saad ("Saad"), and William Enquist Jr. ("Enquist") (collectively, "Individual Defendants," and, together with Ra Medical, "Defendants").[2]

Plaintiffs allege Defendants misled investors between September 27, 2018 and November 27, 2019, inclusive (the "Settlement Class Period"), by failing to disclose: (i) the Company's manufacturing problems that caused DABRA catheters to fail to calibrate, the DABRA product recall, and resulting financial impact, (ii) that Ra Medical engaged in off-label marketing by characterizing DABRA as an atherectomy device, and (iii) that Ra Medical made improper payments to physicians.

---

[2] The initially-filed complaint and the FAC asserted Securities Act claims against the following underwriters of Ra Medical's IPO: Piper Jaffray & Co. n/k/a Piper Sandler & Co., Cantor Fitzgerald & Co., Sun Trust Robinson Humphrey, Inc., Nomura Securities International, Inc., and Maxim Group LLC (the "Underwriters"). ECF Nos. 1 & 21.  On March 11, 2020, Plaintiffs voluntarily dismissed Underwriters without prejudice.  ECF No. 28.

### B.    Initial Complaint and Lead Appointment Process

On June 7, 2019, Lead Plaintiff Ervin Derr filed a class action complaint in the United States District Court for the Southern District of California, styled *Derr v. Ra Medical Systems, Inc., et al.*, Case No.: 3:19-CV-01079-LAB-AHG.  ECF No. 1. By Order dated September 5, 2019, the Court appointed Ervin Derr and Peter Shoemaker as Lead Plaintiffs for the Action; and approved Lead Plaintiffs' selection of Glancy Prongay & Murray LLP as Lead Counsel for the putative class.  ECF No. 9.

### C.    Lead Counsel's Investigation and the FAC

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Ra Medical's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning Ra Medical, (c) Ra Medical's investor call transcripts, and (d) court filings and other publicly available material related to Ra Medical; and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information.  Lead Counsel also consulted with damages and loss causation experts. On January 13, 2020, Plaintiffs filed and served the FAC based on the foregoing investigation.  ECF No. 21.

### D.    Defendants' Motions to Dismiss the FAC

On March 13, 2020, Defendants filed two motions to dismiss the FAC and requests for judicial notice therewith.   ECF Nos. 29-31.   Plaintiffs filed their omnibus opposition to the motions to dismiss and their omnibus objection to the requests for judicial notice on April 27, 2020.  ECF Nos. 35-36.  Defendants filed their replies in support of their motions to dismiss the FAC on May 27, 2020.  ECF Nos. 37-39.  On June 23, 2020, Plaintiffs filed and served an ex parte application for

leave to file a sur-reply to Defendants' reply papers in support of their motions to dismiss and requests for judicial notice. ECF No. 40. On June 25, 2020, defendants Ra Medical, Jackson, Heymann, Buchbinder, Colombatto, Mejia, Saad, and Enquist filed their response in opposition to Plaintiffs' ex parte motion for leave to file a sur-reply. ECF No. 41. On March 24, 2021, the Court granted in part, and denied in part, Defendants' motions to dismiss and requests for judicial notice and granted Plaintiffs' motion for leave to file a sur-reply. ECF No. 50 (the "FAC MTD Order").

### E.    Lead Counsel's Continued Investigation and the SAC

Following the Court's FAC MTD Order, Lead Counsel continued their investigation into Defendants and their improper conduct, and Plaintiffs' ability to trace their purchases to the Company's IPO. This continued investigation included additional interviews with many former employees. On April 19, 2021, Plaintiffs filed and served the Complaint. ECF No. 53. The Complaint alleged claims substantially similar to those alleged in the FAC, but omitted allegations regarding Ra Medical's sales personnel and training, and added allegations regarding Plaintiffs' standing to pursue their claim under Section 11 of the Securities Act, the Company's alleged off-label marketing of DABRA, and the Company's settlement with the U.S. Department of Justice.

### F.    Motion to Dismiss the Compliant, Mediation Efforts and Settlement Negotiations

On June 10, 2021, defendants Ra Medical, Jackson, Heymann, Buchbinder, Colombatto, Mejia, Saad, and Enquist filed and served a motion to dismiss the Complaint (ECF No. 60) and a request for judicial notice (ECF No. 61), which defendants Irwin, Melissa Burstein, and Martin Burstein joined (ECF No. 62). On July 26, 2021, Plaintiffs filed and served their opposition to the motion to dismiss and request for judicial notice. ECF Nos. 66-67. On August 25, 2021, defendants Ra Medical, Jackson, Heymann, Buchbinder, Colombatto, Mejia, Saad, and Enquist

filed and served their reply papers (ECF Nos. 68-69), which defendants Irwin, Melissa Burstein, and Martin Burstein joined (ECF Nos. 70-71).

On September 28, 2021, the Parties engaged in private mediation with Jed D. Melnick, Esq. of JAMS. In advance of that session, the Parties provided Mr. Melnick with the all of the relevant pleadings in the action as well as substantial mediation statements that addresses liability, damages and issues relating to standing. The session culminated in the mediator's recommendation to settle the Action for a cash payment of $10,000,000. The Parties accepted the mediator's recommendation.

Over the course of the next several days, the Parties negotiated, and on October 1, 2021 executed, a confidential term sheet (the "Term Sheet") which memorialized, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a non-reversionary cash payment by or on behalf of Defendants of $10,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers. The Stipulation (together with the exhibits hereto) submitted herewith, reflects the final and binding agreement between the Parties.

## II.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented for Court approval, and be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitably relative to each other.

These new factors are not exclusive, nor intended to displace any factor previously adopted by the courts. The Ninth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

(1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[3]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004); *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain Hanlon factors.").[4]  As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

---

[3] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class. There is no government participant.

[4] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

## III.  ARGUMENT

### A.  The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors

#### 1.  Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement.  Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members.  *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").  Additionally, Plaintiffs were involved throughout the litigation and worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for themselves and the Settlement Class.

Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases.  Lead Counsel have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country.  *See* ECF No. 4-6 (GPM firm resume).  Moreover, Lead Counsel vigorously prosecuted the

1  Settlement Class's claims throughout the litigation, by conducting an extensive

2  investigation of the claims through a detailed review of all publicly available

3  documents about the Company as well as numerous interviews with former Ra

4  Medical employees, drafting two detailed complaints, fully briefing two rounds of

5  motions to dismiss, and obtaining a $10.0 million Settlement for the benefit of the

6  Settlement Class following a partial dismissal order. *PPG*, 2019 WL 3345714, at *3

7  (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in

8  securities litigation and have vigorously prosecuted the Settlement Class's

9  claims[.]").

10  **2.    The Settlement is the Result of Arms'-Length Negotiations**

11  Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was

12  negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).[5]  The Ninth Circuit, as well

13  as courts in this District, "put a good deal of stock in the product of an arms-length,

14  non-collusive, negotiated resolution" in approving a class action settlement.

15  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, as detailed

16  above, the Parties agreed to mediate with Mr. Melnick in September 2021.  The

17  mediation negotiations were extensive and culminated in the mediator's

18  recommendation that the Action be settled for $10.0 million, which the Parties

19  accepted.  The arm's-length nature of the extensive settlement negotiations and the

20  involvement of a mediator with substantial experience litigating securities class

21  actions support the conclusion that the Settlement is fair and was achieved free of

22  collusion.  *See In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754, at *7 (C.D.

23  Cal. May 16, 2013) (finding the settlement, which was reached through mediation

24  with mediator Mr. Melnick, weighed in favor of preliminary approval); *In re Am.*

25  ―――――――――――――

26  [5] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such
as the non-collusive nature of negotiations, the extent of discovery completed, and

27  the stage of proceedings."  *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d

28  at 1026).

*Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (approving settlement reached with the assistance of mediator, Mr. Melnick).

> **3.    The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation**

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  FED. R. CIV. P. 23(e)(2)(C).[6] As discussed below, each of these factors supports the Settlement's approval.

> **(a)    The Strength of Plaintiffs' Case and Risk of Continued Litigation**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance against the continuing risk of litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

As the Court recognized in its FAC MTD Order, while Plaintiffs sufficiently pled certain of their fraud claims, the Court had found that Plaintiffs failed to satisfy the high pleading burden for the other fraud claims and that Plaintiffs had not adequately alleged that they could trace their shares to the IPO, resulting in the dismissal of the Securities Act claims and much of the Exchange Act claims in the FAC.  While Plaintiffs filed the Complaint drafted to cure the pleading deficiencies found by the Court in the FAC, the Court has not yet ruled on Defendants' motion to dismiss the Complaint and there is no better indication of the future risks Plaintiffs

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor).  *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

faced in continuing litigation than that of the Court's partial dismissal of the FAC. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder…litigation to assess the risks involved."). Thus, Plaintiffs and Lead Counsel recognize that the risks of continued litigation were considerable, perhaps insurmountable.

Assuming, *arguendo*, that this Action were to proceed through summary judgment and trial, in order to defeat a summary judgment motion and to prevail at trial, Plaintiffs and Lead Counsel would have to prove that Ra Medical's statements and omissions were false and misleading, Defendants knew or were reckless in not knowing their statements and omissions were false and misleading at the time made, that those statements and omissions were corrected and caused recoverable damages for the Settlement Class, and/or that Plaintiffs purchased their shares pursuant or traceable to the Company's IPO. Plaintiffs anticipated Defendants would present strong arguments challenging Plaintiffs' pleading and proof on all of those elements in their expected motion for summary judgment and/or at trial.

Defendants argued in their motion to dismiss, and would undoubtedly argue in a motion for summary judgment or at trial, that Plaintiffs failed to allege actionable misrepresentations under the federal securities laws. Defendants also would have almost certainly moved for summary judgment on the element of scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. *See, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016).

Finally, even if Plaintiffs prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award. The appeals process would have likely spanned several years including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of

certiorari from the Supreme Court, or both.  During this time on potential appeals, the Settlement Class would receive no distribution of any damage award.  In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery even after having prevailed on their remaining claim at trial.[7]

### (b)     Risks of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, Sec. IV, *infra*, the Class has not yet been certified, and Plaintiffs are aware that there is a risk the Court could disagree.  Even if the Court were to certify the Class, there is always a risk that the Class could be decertified at a later stage in the proceedings.  *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").  Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification if the case reached that stage.

### 4.     Rule 23(e)(2)(C)(iii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate.  FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv).  These factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):**  The method for processing Settlement Class Members'

---

[7] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict for plaintiffs' on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

claims and distributing relief to eligible claimants is well-established and effective. Here, Epiq Class Action & Claims Solutions, Inc., ("Epiq"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice and Summary Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Ra Medical may terminate the

---

[8] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

Settlement if Settlement Class Members totaling a certain number of shares request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

### 5. The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

### 6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[9] These factors, viewed in light of the Rule 23(e)(2) factors

---

[9] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are (footnote continued)

identified above, support preliminary approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018). The $10 million Settlement Amount is within the range of reasonableness under the circumstances so as to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class. Pursuant to the proposed Plan of Allocation, the estimated average recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, will be approximately $0.78 per damaged share. *See* Stipulation Ex. A-1 (the "Notice"), at ¶3.

The $10 million recovery represents approximately 15.9% of estimated maximum damages of $63 million under the proposed Plan of Allocation in this Action—Plaintiffs' best-case scenario—assuming that: (i) Plaintiffs were able to demonstrate that they could trace their shares to the IPO and thus revive the Securities Act claims; (ii) the Court certified the same class period as the Settlement Class Period; (iii) Plaintiffs survived summary judgment on all elements and also convinced a jury that liability was proven; and (iv) the Court and jury accepted Plaintiffs' damages theory. Of course, less than a complete victory on any aspect of these assumptions would decrease recoverable damages or eliminate them altogether, and each element at issue was strongly contested by Defendants.

Especially in the light of these risks, the percentage of recovery is reasonable. Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615, 628 (N.D. Cal. 1982).

_____
briefed below for thoroughness.

14

**The Stage of the Proceedings and Extent of Discovery Completed:** The fact that formal discovery had not yet begun does not weigh against preliminary approval. *E.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement"). Here, Plaintiffs conducted an extensive investigation of Ra Medical, including interviewing former employees and analyzing numerous publicly available documents. Moreover, Plaintiffs engaged in substantial briefing during the two rounds of motions to dismiss, and the Parties exchanged detailed mediation briefs and participated in a mediation process in conjunction with an experienced mediator. *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."). Indeed, informal information sharing is especially appropriate where an action is stayed pursuant to the PSLRA's discovery stay.

**The Experience and Views of Counsel:** Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See, e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017). Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's belief in the fairness and reasonableness of this Settlement supports preliminary approval. Defendants have been vigorously represented by Wilson Sonsini Goodrich & Rosati and TencerSherman, LLP throughout the Action and settlement negotiations. Counsel for Defendants is equally well-informed regarding

15

the case, and their representation of Defendants was just as rigorous as Lead Counsel's representation of the Settlement Class.  Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, preliminary approval is warranted.

### B.  Class Certification is Appropriate for Settlement Purposes

At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement on behalf of the Settlement Class.  Thus, it is appropriate for the Court to consider, at the preliminary approval stage and solely for purpose of the Settlement, whether the certification of the Settlement Class appears to be appropriate.  *Hanlon*, 150 F.3d at 1019.  Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  In addition, the court must find that at least one of the three conditions of Rule 23(b) is satisfied.  *Id.*  Under subsection (b)(3), the Court must find the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).

The proposed Settlement Class consists of "all persons and entities that purchased or otherwise acquired Ra Medical common stock: (a) pursuant and/or traceable to Ra Medical's IPO; and/or (b) between September 27, 2018 and November 27, 2019, inclusive." Stipulation, ¶1(ss).[10]  Plaintiffs believe this Action

---

[10] Excluded from the Settlement Class are: (a) persons and entities who or which suffered no compensable losses; and (b)(i) Defendants and Underwriters; (ii) any person who served as a partner, control person, executive officer and/or director of Ra Medical or Underwriters during the Settlement Class Period, and their Immediate Family Members; (iii) present and former parents, subsidiaries, assigns, successors, (footnote continued)

satisfies all the factors for certification of a class[11] and, if the Action were to proceed toward trial, class certification would be appropriate.  The Ninth Circuit and numerous courts within the Ninth Circuit have held that class actions are generally favored in securities fraud actions.  *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).[12]

### 1.    The Settlement Class is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is difficult or inconvenient to join all members of the class.  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964).  Impracticable does not mean

---

affiliates, and predecessors of Ra Medical and Underwriters; (iv) any entity in which Defendants or Underwriters have or had a controlling interest; (v) any trust of which any Individual Defendant is the settler or which is for the benefit of any Individual Defendant and/or their Immediate Family Members; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof.  Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.  For the avoidance of doubt, (a) any Investment Vehicle shall not be excluded from the Settlement Class; and (b) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with one of the Defendants.  *Id.*

[11] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement−only certification is requested, for the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

[12] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation."  *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("'Rule 23 is . . . liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.'"); *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

impossible, only that it would be difficult or inconvenient to join all members of the class. *Id.* Lead Counsel estimates that there were hundreds if not thousands of purchasers of Ra Medical common stock during the Settlement Class Period. The threshold presumption of impracticability of joinder is thus easily exceeded. *See, e.g. Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) ("'As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.'").

### 2. Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to the class members. *Hanlon*, 150 F.3d at 1019. Generally, courts have liberally construed the commonality prerequisite, requiring only that "the named plaintiffs share at least one question of fact or law with the grievances of the proposed class." *Siemer v. Assocs. First Capital Corp.*, 2001 WL 35948712, at *14 (D. Ariz. March 30, 2001). Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019. This factor is "construed permissively, and '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'" *Id*. at 1019. Rule 23(a)(2) is satisfied here. Plaintiffs' claims that Defendants violated the federal securities laws by omitting and/or misrepresenting material facts about Ra Medical's business, operations, and prospects in publicly disseminated statements during the Settlement Class Period unquestionably raises issues of common interest to the Settlement Class.

### 3. Plaintiffs' Claims Are Typical of Those of the Settlement Class

Like other Settlement Class Members, Plaintiffs allege that they purchased Ra Medical common stock during the Settlement Class Period and was subsequently damaged due to Defendants' conduct. The other members of the Settlement Class

were allegedly affected in the same way.

Similarly, the interest of Plaintiffs in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members. Under the proposed Plan of Allocation, Plaintiffs will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class. Accordingly, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### 4. Plaintiffs and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. The adequacy inquiry also 'factors in competency and conflicts of class counsel.'" *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

As explained in Sec. III.A.1., *supra*, Plaintiffs and Lead Counsel are adequate representatives. First, Plaintiffs and Settlement Class Members purchased Ra Medical common stock during the Settlement Class Period, and were all injured by Defendants' allegedly materially false statements. If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations). Thus, the interests of Plaintiffs and other members of the Settlement Class are aligned, as they share the common objective of maximizing their recovery from Defendants. *PPG*, 2019 WL 3345714, at *3 ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement

Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Second, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel. Lead Counsel has extensive experience and expertise litigating securities class actions. *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding "Lead Counsel has also adequately represented the class. [GPM] has significant experience in securities class action lawsuits.").

### 5.    The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or fact common to the members of the Settlement Class predominate over any questions affecting individual members. Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws. *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]"). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In securities claims, it is common for factual variations among shareholders related to stock transaction dates and sizes, "sophistication of investors and degree of reliance" to exist, but common questions of fact related to misrepresentation

claims "will predominate over the individual issues."  *Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).

### 6.      The Court Should Appoint Lead Counsel as Counsel for the Class

A court that certifies a class must also appoint class counsel.  *See* FED. R. CIV. P. 23(g).  The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class."  FED. R. CIV. P. 23(g)(1)(A).

GPM was appointed Lead Counsel in September 2019 (ECF No. 9), and since that time the firm has devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter.  Moreover, as explained in Sec. III.A.1., *supra*, GPM has substantial experienced prosecuting securities class actions.  For these reasons, among others, Plaintiffs respectfully request that the Court appoint GPM to serve as Class Counsel.

### C.      The Court Should Approve the Proposed Form and Method of Notice

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, including through the records maintained by Defendants of Ra Medical common stock holders during the Settlement Class Period.[13]  The Claims Administrator will also utilize a proprietary

---

[13] Plaintiffs request that the Court approve retention of Epiq, as the claims administrator for this case.  Epiq has successfully administered numerous complex securities class action settlements, including *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *6 (N.D. Cal. Feb. 11, 2016) ($23 million settlement); and *In re Amgen* (footnote continued)

list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

The proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.

## IV.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement. The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order ("Prelim. Appr. Order"):

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |

*Inc. Sec. Litig.*, 2016 WL 10571773, at *11 (C.D. Cal. Oct. 25, 2016) ($95 million settlement).

| Event | Proposed Timing |
|---|---|
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶13) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

Plaintiffs request that the Court schedule the Settlement Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. As this motion is unopposed, Plaintiffs request that the Court consider this motion for preliminary approval on the papers at this time.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.

DATED:  November 15, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:   */s/ Robert V. Prongay*
Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Counsel for Lead Plaintiffs Ervin Derr and Peter Shoemaker*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.   On November 15, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 15, 2021, at Los Angeles, California.


_s/ Robert V. Prongay_
Robert V. Prongay