Robert V. Prongay (SBN 270796)
Joseph D. Cohen (SBN 155601)
Casey E. Sadler (SBN 274241)
Pavithra Rajesh (SBN 323055)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: jcohen@glancylaw.com
Email: csadler@glancylaw.com
Email: prajesh@glancylaw.com

*Counsel for Lead Plaintiffs Ervin Derr and Peter Shoemaker and for the Settlement Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERVIN DERR, and PETER SHOEMAKER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RA MEDICAL SYSTEMS, INC., DEAN IRWIN, ANDREW JACKSON, MELISSA BURSTEIN, MARTIN BURSTEIN, RICHARD HEYMANN, MAURICE BUCHBINDER, MARTIN COLOMBATTO, RICHARD MEJIA, JR., MARK E. SAAD, and WILLIAM ENQUIST, JR.,<br><br>Defendants. | Case No. 3:19-cv-01079-LAB-AHG<br><br>**LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 13, 2022<br>Time: 11:30 a.m.<br>Courtroom: 14A<br>Judge: Hon. Larry Alan Burns |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS................................................................................ 3

III.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ......... 5

    A.  Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class...................................................................................... 5

    B.  The Settlement Was Reached After Substantial Litigation and Arm's-Length Negotiations Between Experienced Counsel Conducted Under the Auspices of a Well-Respected Mediator .......... 6

    C.  The Settlement Relief Provided to the Settlement Class is Adequate in Light of the Costs and Risks of Further Litigation and Other Relevant Factors ......................................................................... 8

        1.  The Strength of Lead Plaintiffs' Case and the Significant Risks of Continued Litigation ...................................................... 8

        2.  The Risk of Maintaining Class Action Status Throughout Trial ............................................................................. 12

        3.  The Amount Obtained in the Settlement Supports Approval ............................................................................................. 13

        4.  The Complexity, Expense, and Likely Duration of Litigation ................................................................................. 14

        5.  Other Factors Established by Rule 23(e)(2)(C) Support Final Approval.......................................................................... 15

    D.  The Settlement Treats Class Members Equitably Relative to Each Other ...................................................................................................... 17

    E.  The Positive Reaction of the Settlement Class Supports Settlement Approval ................................................................................................ 17

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED ........................................................................ 18

V.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED........ 20

VI.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ............................ 20

VII.  CONCLUSION.......................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Aarons v. BMW of N. Am., LLC*,
  2014 WL 4090564 (C.D. Cal. Apr. 29, 2014).....................................................15

*Amchem Prods., Inc., v. Windsor*,
  521 U.S. 591 (1997) ..............................................................................................20

*Chambers v. Whirlpool Corp.*,
  2016 WL 5922456 (C.D. Cal. 2016) ....................................................................12

*Churchill Village L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004)..................................................................................5

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016)........................................................14

*Eiesen v. Porsche Cars N. Am., Inc.*,
  2014 WL 439006 (C.D. Cal. Jan. 30, 2014)...........................................................7

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ..............................................................................................20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  2018 WL 1942227 (N.D. Tex. Apr. 25, 2018).....................................................17

*Feyko v. aAD Partners LP*,
  2014 WL 12572678 (C.D. Cal. Mar. 7, 2014) .......................................................7

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010).........................................................11

*Franklin v. Kaypro*,
  884 F.2d 1222 (9th Cir. 1989)................................................................................3

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................................................3

*Gross v. GFI Grp., Inc.*,
  784 F. App'x. 27 (2d Cir. Sept. 13, 2019)..................................................9

*Gudimetla v. Ambow Educ. Holding*,
  2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ...................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)................................................*passim*

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016).....................................10

*Hefler v. Wells Fargo & Company*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................................4

*IBEW v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012)..........................................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014)........................................................15

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) ......................................7

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....................................11

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..........................................14

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012).................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)........................................................6, 8

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016).....................................16

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005).....................................7, 18

*In re Hi-Crush Partners L.P. Sec. Litig.*,
　2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .......................................................... 10

*In re LinkedIn User Privacy Litig.*,
　309 F.R.D. 573 (N.D. Cal. 2015) .......................................................................... 14

*In re LJ Int'l, Inc. Sec. Litig.*,
　2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ...................................................... 13

*In re Omnivision Techs. Inc.*,
　559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................... 17, 18

*In re Polaroid ERISA Litig.*,
　240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................................. 5

*In re Syncor ERISA Litig.*,
　516 F.3d 1095 (9th Cir. 2008) ................................................................................ 3

*In re Vivendi Universal, S.A., Sec. Litig.*,
　2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ........................................................... 14

*Knapp v. Art.com, Inc.*,
　283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................................... 9

*Mauss v. NuVasive, Inc.*,
　2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ........................................................ 14

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
　221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 8

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
　315 F.R.D. 233 (E.D. Mich. 2016) ....................................................................... 16

*Nobles v. MBNA Corp.*,
　2009 WL 1854965 (N.D. Cal. June 29, 2009) ...................................................... 15

*Robbins v. Koger Props., Inc.*,
　116 F.3d 1441 (11th Cir. 1997) ............................................................................ 12

*Rodriquez v. W. Publ'g Corp.*,
　563 F.3d 948 (9th Cir. 2009) ............................................................................. 3, 7

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ............................................................... 9

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................ 14

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................. 3

**STATUTES**

15 U.S.C. § 77z-1(a)(7) ........................................................................... 20

15 U.S.C. § 78u-4(a)(7) .......................................................................... 20

**RULES**

Fed. R. Civ. P. 23 ........................................................................... *passim*

**OTHER AUTHORITIES**

*Advisory Committee's Notes to 2018 Amendment*,
    324 F.R.D. 904 .................................................................................... 4

<u>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Amended Order (1) Granting Motion for Preliminarily Approval of Class Action Settlement; (2) Denying Motion to Dismiss Without Prejudice; and (3) Denying Motion for Consideration of Documents Without Prejudice (ECF No. 81, the "Preliminary Approval Order"), on June 13, 2022, at 11:30 a.m., or as soon thereafter as the matter can be before the Honorable Larry Alan Burns, in Courtroom 14A, 333 West Broadway, San Diego, CA 92101, Lead Plaintiffs Ervin Derr and Peter Shoemaker (together, "Lead Plaintiffs") will and hereby do move this Court for: (1) entry of the [Proposed] Judgment Approving Class Action Settlement; and (2) entry of the [Proposed] Order Approving Plan of Allocation of the Net Settlement Fund.[1]

This Motion is based on this Notice of Motion; the memorandum of law in support thereof; the Sadler Declaration and the exhibits filed therewith; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.[2]

---

[1] Lead Plaintiffs will submit a [Proposed] Judgment and a [Proposed] Order Approving the Plan of Allocation in conjunction with their Reply Brief once Settlement Class Members have had the opportunity to request exclusion and object.

[2] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation of Settlement dated November 12, 2021 (ECF No. 73-2) (the "Stipulation") or the concurrently filed Declaration of Casey E. Sadler in support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Sadler Declaration" or "Sadler Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Sadler Declaration.

## MEMORANDUM OF LAW

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs respectfully submit this memorandum in support of their motion for final approval of the Settlement of the Action for $10,000,000 in cash (plus interest earned) and for approval of the Plan of Allocation. The terms of the Settlement are set forth in the Stipulation (ECF No. 73-2), which was preliminarily approved by the Court on February 11, 2022, ECF No. 81.[3]

## I.    PRELIMINARY STATEMENT

After more than two years of litigation, Lead Plaintiffs, through their counsel, have obtained a $10,000,000 all cash, non-reversionary settlement for the benefit of the Settlement Class. As described below and in the Sadler Declaration, the Settlement is a fair, reasonable, and adequate resolution for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks. The Settlement represents 15.9% of the Settlement Class's maximum recoverable class-wide aggregate damages if the Lead Plaintiffs were able to successfully replead the previously dismissed Securities Act of 1933 (the "Securities Act") claims. If, however, Lead Plaintiffs failed to overcome Defendants' renewed challenges as to standing with respect to those claims, the Settlement represents 58% of the Settlement Class's maximum recoverable class-wide aggregate damages. Under either scenario, the Settlement is an outstanding result when compared to the 1.8% median recovery in securities class actions. It is, therefore, substantively fair.

---

[3] The Sadler Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action and the nature of the claims asserted (¶¶13-38); the risks of continued litigation (¶¶45-57); the negotiations leading to the Settlement (¶¶39-44); and the Plan of Allocation (¶¶70-76).

The Settlement is also procedurally fair. The Settlement was only reached after (i) Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the Action; and (ii) the Parties engaged in extensive, arm's-length negotiations at an all-day mediation session conducted by Jed D. Melnick, Esq. of JAMS, a well-respected mediator of complex cases such as this one. Lead Plaintiffs' efforts, which are detailed in the Sadler Declaration, included, among other things: (i) conducting a comprehensive investigation into the alleged claims, assisted by an investigator who interviewed numerous former Ra Medical employees; (ii) drafting the highly detailed 121-page Amended Complaint ("FAC") based on the investigation; (iii) fully briefing Defendants' motions to dismiss the FAC; (iv) successfully defeating Defendants' motions to dismiss in part; (v) drafting the 108-page Second Amended Complaint ("Complaint"), plus exhibits, based on additional investigation; (vi) fully briefing Defendants' motion to dismiss the Complaint; (vii) engaging in a mediation process that involved, *inter alia*, the exchange of detailed mediation statements that addressed both liability and damages issues, and participating at an all-day mediation session with Mr. Melnick on September 28, 2021; and (viii) negotiating the Stipulation and its exhibits. ¶¶13-38. In view of the foregoing, and as discussed in greater detail below, it simply cannot be disputed that the Settlement was negotiated by well-informed Parties at arm's length, and that the Settlement an excellent outcome for the Settlement Class. This is especially true when the recovery is juxtaposed against the many risks of continued litigation, including the very real risk of a substantially smaller recovery, or no recovery at all. ¶¶45-57. Accordingly, Lead Plaintiffs' respectfully request that the Court grant final approval of the Settlement, and enter the agreed upon Judgment.

Lead Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiffs' damages expert and is designed to fairly and equitably distribute the proceeds of the Net Settlement Fund to Settlement Class Members. ¶¶70-76. Lead

Plaintiffs believe that the Plan of Allocation is fair and reasonable and, as such, that it too should be approved.

For these reasons, and those set forth below and in the Sadler Declaration, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

## II.     STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Moreover, courts should defer to "the private consensual decision of the parties to settle" and advance the "overriding public interest in settling and quieting litigation." *Franklin v. Kaypro*, 884 F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), and *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation; the settlement of such complex cases greatly contributes to the conservation of scarce judicial resources. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court.").[4]

---

[4] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

According to Rule 23(e)(2), which governs final approval, the four specific factors to consider when determining whether a proposed settlement is fair, reasonable, and adequate are:

(A)　the class representatives and class counsel have adequately represented the class;

(B)　the proposal was negotiated at arm's length;

(C)　the relief provided for the class is adequate, taking into account:

(i)　the costs, risks, and delay of trial and appeal;

(ii)　the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)　the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)　any agreement required to be identified under Rule 23(e)(3); and

(D)　the proposal treats class members equitable relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e) advisory committee's notes to 2018 amendment, 324 F.R.D. 904, 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Company*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

Prior to the Rule 23(e)(2) amendment, courts in the Ninth Circuit considered the following "*Hanlon* factors:"

(1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

As explained below and in the Sadler Declaration, application of each of the four factors specified in Rule 23(e)(2), and the relevant, non-duplicative *Hanlon* factors, demonstrates that the Settlement merits final approval.

## III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

The Court should consider whether the "class representative[] and class counsel have adequately represented the class" when determining whether to approve a class action settlement. Fed. R. Civ. P. 23(e)(2)(A). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class both during the litigation of this Action and during its settlement. Lead Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Lead Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Additionally, Lead Plaintiffs were involved throughout the litigation and worked with Lead Counsel throughout the pendency of this Action to achieve the best possible result for themselves and the Settlement Class. *See* Ex. 7 ("Derr Decl."), ¶¶3-8; Ex. 8 ("Shoemaker Decl."), ¶¶4-7.

Lead Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases.  Lead Counsel has successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country.  *See* Ex. 6 (GPM firm résumé).  Moreover, in this case, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation, including by conducting an extensive investigation of the claims through a detailed review of all publicly-available documents, interviewing potential witnesses, engaging with experts, and drafting and defending two detailed amended complaints.  ¶¶22-38.

Finally, the Court has previously found that Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class.  *See* Preliminary Approval Order at 4.  Consequently, Lead Plaintiffs and Lead Counsel adequately represented the Settlement Class, which supports final approval.

### B. The Settlement Was Reached After Substantial Litigation and Arm's-Length Negotiations Between Experienced Counsel Conducted Under the Auspices of a Well-Respected Mediator

The Court must also consider whether the settlement was "negotiated at arm's length" in weighing approval of a class-action settlement.  Fed. R. Civ. P. 23(e)(2)(B).  Circumstances related to this "procedural" fairness determination of a settlement traditionally include (i) understanding of the strength [and weakness] of the plaintiff's case[5] based on factors like "the extent of discovery completed and the stage of the proceedings";[6] (ii) the "experience and views of counsel";[7] and (iii) the absence of any indicia of collusion.[8]  Each of these factors supports approval of the Settlement.

---

[5] *Hanlon*, 150 F.3d at 1026 (first factor).

[6] *See id.* (fifth factor).

[7] *See id.* (sixth factor).

[8] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also Eiesen v. Porsche Cars N. Am., Inc.,* 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement when record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"). Courts also recognize that "[s]ettlements reached with the help of a mediator are likely non-collusive." *Feyko v. aAD Partners LP*, 2014 WL 12572678, at *7 (C.D. Cal. Mar. 7, 2014).

Here, the Settlement merits a presumption of fairness because it is the product of extensive arm's-length negotiations between experienced counsel who had thoroughly evaluated the merits of the claims and were well-aware of the strengths and weaknesses of the case. ¶¶22-24 (detailing the investigation and work performed by Lead Counsel). And, the mediation process was led by Mr. Melnick, a well-respected mediator who has significant experience mediating securities class actions and other complex litigation. *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (approving settlement reached with the assistance of mediator, Mr. Melnick).

Furthermore, courts accord "significant weight" to the recommendations of counsel, who are "most closely acquainted with the facts of the underlying litigation." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005). Such is the case here, where Lead Counsel, who have a thorough understanding of the strengths and weakness of the claims and extensive prior experience litigating securities class action cases, strongly believe that the $10 million Settlement is in the best interests of the Settlement Class in light of the significant risks of continue litigation. ¶¶45-58.

It is also important to note that Lead Plaintiffs, who were involved in all aspects of the litigation, support the Settlement. *See* Derr Decl. at ¶¶5-8; Shoemaker Decl. at

¶¶4-7.  Lead Plaintiffs' support for the Settlement should be afforded "special weight" because a plaintiff "ha[s] a better understanding of the case than most members of the class."  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Finally, the Settlement has none of the indicia of collusion identified by the Ninth Circuit.  *See Bluetooth Headset*, 654 F.3d at 947 ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund").[9]

## C. The Settlement Relief Provided to the Settlement Class is Adequate in Light of the Costs and Risks of Further Litigation and Other Relevant Factors

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  This factor essentially incorporates four of the tradition *Hanlon* factors: (1) the strength of Lead Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; and (4) the amount offered in the settlement.  *See Hanlon*, 150 F.3d at 1026.  As demonstrated below, each of these factors supports approval of the Settlement.

### 1. The Strength of Lead Plaintiffs' Case and the Significant Risks of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance against the continuing risk of litigation, including the

_____

[9] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶13.

strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

Lead Plaintiffs and Lead Counsel believe the asserted claims have considerable merit, but also recognize that the risks of continued litigation were substantial. The Court has already dismissed the Securities Act claims for lack of standing and could have concluded that the operative Complaint did not cure the perceived deficiencies. Such a finding would have eliminated approximately 70% of the alleged damages. ¶¶45-46, 58. Furthermore, while the Court did allow portions of Lead Plaintiffs' Securities Exchange Act of 1934 ("Exchange Act") claims to proceed, Lead Plaintiffs would still have to ***prove*** those claims. ¶¶47-49. Lead Counsel know from painful experience that surviving a motion to dismiss—even under the heightened pleading standard of the PSLRA—does not guarantee a recovery. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable); *see also* ¶89; *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

**Maintaining the Securities Act Claims:** Defendants contested whether Lead Plaintiffs adequately alleged standing for the strict liability claims under the Securities Act. Though the Court found that statements subject to the Securities Act were misleading, it dismissed those claims for lack of standing and could do so again. Even if the Court found that Lead Plaintiffs adequately pled standing, there was a significant risk that discovery would reveal unregistered shares entered the market prior to Lead Plaintiffs' purchases of Ra Medical stock. Lead Plaintiffs would then face the nearly impossible task of tracing the chain of title for their shares back to the IPO to establish standing for the Securities Act claims. If Lead Plaintiffs did not have

a class representative with standing for the Securities Act claims, then the Settlement Class's class-wide damages would have been greatly reduced.

**Establishing Liability:** Lead Plaintiffs faced numerous hurdles to establishing liability. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *8 (S.D.N.Y. Dec. 19, 2014) ("Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet."). Specifically, Lead Plaintiffs confronted substantial risks and uncertainties in adequately alleging and proving, *inter alia*, that Defendants acted with scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. *See*, *e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016).

Defendants forcefully argued in their motions to dismiss, and undoubtedly would continue to argue at summary judgment and trial, that the alleged misstatements and omissions were not actionable because the recall notice related to servicing lasers was resolved prior to the IPO, whereas the catheter-related manufacturing defect was a different, evolving issue that arose after the IPO and was accurately and timely disclosed. Defendants continued to argue that Ra Medical believed it could legally encourage physicians to use DABRA for atherectomy, even though that was not an indication approved by the FDA. Though Lead Plaintiffs alleged that the Company had already been warned its practices were improper, the Court dismissed these allegations in the FAC, so there was a risk that it would do so again, despite the Company's settlement with the DOJ for allegations of off-label marketing. ¶48.

Moreover, Defendants insisted that their Settlement Class Period statements concerning the product defect were made in good faith, in particular because they reflected an evolving understanding of the issue. Although Lead Plaintiffs believe that they had strong counter-arguments to Defendants' assertions, there is no

guarantee that the trier of fact would have found these arguments more persuasive than Defendants' explanation of events.  ¶49.[10]

**Loss Causation and Damages:**  In order to prove their claims, Lead Plaintiffs would have had to proffer expert testimony demonstrating, among other thing: (1) what the "true value" of Ra Medical common stock would have been had there been no alleged material misstatements or omissions; (2) the amount by which shares of Ra Medical common stock were inflated by the alleged material misstatements and omissions; and (3) the amount of artificial inflation removed by the alleged disclosures.  Defendants would have presented their own damages expert(s) to present conflicting conclusions and theories as to the reason(s) for Ra Medical's share price decline, requiring a jury to decide the "battle of the experts"—an intrinsically expensive and unpredictable process.  ¶¶51-52.  Courts have recognized that such a "battle of experts" is a significant litigation risk, and weights in favor of approving a settlement.  *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Even if the Court denied Defendants' pending motion to dismiss, many obstacles still remained.  First, Lead Plaintiffs would seek class certification under Rule 23.  Then, to defeat summary judgment motion and ultimately prevail at trial, Lead Plaintiffs and Lead Counsel would have to prove that Ra Medical's statements and omissions were materially false and misleading, that Defendants knew or were deliberately reckless in not knowing that their statements and omissions were false and misleading at the time made, and that those statements and omissions were

---

[10] *See Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) (scienter is often considered "the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011).

corrected and caused recoverable damages for the Settlement Class. Lead Plaintiffs anticipates that Defendants would present arguments challenging Lead Plaintiffs' proof on all of those elements.

Finally, even if the Court certified the class as proposed by Lead Plaintiffs and they prevailed on liability and the Settlement Class was awarded damages significant hurdles still remained. Defendants likely would appeal the verdict and award. The appeals process could span several years. During this time on potential appeals, the Settlement Class would receive no distribution of any damage award. ¶57. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery despite prevailing at trial. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs against an accounting firm on loss causation grounds and entering judgment for defendant).

### 2. The Risk of Maintaining Class Action Status Throughout Trial

At the time the Settlement was reached, Lead Plaintiffs had not yet moved for class certification. Although Lead Plaintiffs believe such a motion would have been meritorious, there is no guarantee that the Court would have agreed or, even if it did, that the Ninth Circuit would not have granted a Rule 23(f) motion for interlocutory review and overturned the decision. Furthermore, Rule 23 provides that a class certification order may be altered or amended any time before a decision on the merits. Thus, as in any class action suit, there was a risk that even if the class was certified, it would be modified or decertified prior to a decision on the merits. *See Chambers v. Whirlpool Corp.*, 2016 WL 5922456, *6 (C.D. Cal. 2016) ("Because plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified."). Consequently, this factor favors approving the Settlement.

### 3. The Amount Obtained in the Settlement Supports Approval

The $10,000,000 cash Settlement Amount is within the range of reasonableness under the circumstances so as to warrant final approval of the Settlement. Here, under Lead Plaintiffs' best case scenario, the total maximum damages would be approximately $63 million. ¶¶58-59. However, the Court has already dismissed the Securities Act claims for lack of standing and could do so again; if only the Exchange Act claims were successful, the damages are approximately $17.3 million. *Id.* Thus, the $10 million Settlement Amount represents about 58% of the $17.3 million in damages (if only the Exchange Act claims were proven) and approximately 15.9% of $63 million (if the Securities Act and the Exchange Act claims were proven). In comparison, the median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages. *See* Ex. 2 (Janeen McIntosh and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review (NERA Jan. 25, 2022) at 24, Fig. 22). When viewed in this context, the percentage recovery achieved here is fair and reasonable, even putting aside the substantial risks of establishing liability and damages and the risk of an adverse ruling on the fully briefed motion to dismiss that could have greatly limited, or even eliminated, any potential recovery.[11] ¶58.

---

[11] *See also Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015) (approving securities fraud class action settlement where recovery of $1.5 million was 5.6% of $26.7 million in estimated damages); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving securities fraud class action settlement where $2 million recovery was 4.5% of $44 million maximum possible recovery); *IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities fraud class action settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years").

**4.    The Complexity, Expense, and Likely Duration of Litigation**

The expense, complexity, and likely duration of continued litigation are also key considerations in evaluating the reasonableness of a settlement.  *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (finding "the cost, complexity and time of fully litigating the case" a factor in concluding settlement was fair).   "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).  Securities-fraud cases are inherently complex and frequently take an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals. *See, e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).   Given the "notorious complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *5 (S.D. Cal. Dec. 6, 2018) (similar).

Here, continuing litigation through the pleading stage, motion practice, fact and expert discovery, class certification, summary judgment, trial, and appeals would been extremely expensive, involved many complex issues of law and fact, and would have delayed the Settlement Class Members' recovery, if any, for upwards of several years.[12]  *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11,

---

[12] Though only a few securities class actions have gone to trial, the time between verdict and final judgment has been up to seven years.  *See e.g.*, *Vivendi Universal, S.A. Sec. Litig.*, Case No. 02-cv-5571 (RJH/HBP), Verdict Form, ECF No. 998 (S.D.N.Y. Feb. 2, 2010) (jury verdict issued on Jan. 29, 2010) & Final Judgment (footnote continued)

2016) (noting same); *Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014) (similar). Additionally, further litigation would not have necessarily achieved a better outcome. *See, e.g.*, *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation").

In sum, the Settlement eliminates the expense, complexity and delay of continued litigation, and the present value of a substantial and certain recovery now far outweighs the mere ***chance*** of a greater one years later. Consequently, this factor supports approval of the Settlement. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 176 (S.D.N.Y. 2014) ("[t]he present value of a certain recovery at this time, compared to the slim chance for a greater one down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the significant risk that the Class could receive no recovery").

### 5. Other Factors Established by Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims submitted by potential Settlement Class Members and

Approving Class Action Settlement of All Remaining Claims, ECF No. 1317 (S.D.N.Y. May 9, 2017).

efficiently distributing the Net Settlement Fund. Here, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund. *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

Second, as discussed in the accompanying Fee and Expense Application, Lead Counsel is applying for a percentage of the common fund fee award to compensate them for the services they have rendered on behalf of the Settlement Class. The proposed attorneys' fees of 27.5% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

Third, in accordance with Rule 23(e)(2)(C)(iv), and as Lead Plaintiffs noted in their preliminary approval papers, the Parties entered into a confidential agreement which establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of Ra Medical common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *In*

*re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at \*5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at \*5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

### D. The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitable relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. ¶73. Lead Plaintiffs will each receive the same level of *pro rata* recovery, based on their Recognized Claims as calculated by the Plan of Allocation, as all other similarly situated Settlement Class Members.

### E. The Positive Reaction of the Settlement Class Supports Settlement Approval

Though not included in Rule 23(e)(2), the reaction of the Settlement Class is also a significant factor in assessing its fairness and adequacy. *Hanlon*, 150 F.3d at 1026. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to class members." *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Here, in accordance with the Court's Preliminary Approval Order, as of April 28, 2022, Epiq, caused 4,376 copies of the Notice Packet to be sent to potential Settlement Class Members and nominees by First-Class Mail, and the Summary Notice to be published both in the national edition of *Investor's Business Daily* and

transmitted over the *PR Newswire* on March 21, 2022. *See* Ex. 1 ("Mailing Decl."), ¶¶8-9. Epiq also established a dedicated settlement website, www.RaMedicalSecuritiesLitigation.com, to provide potential Settlement Class Members with information concerning the Settlement and access downloadable copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, and the Second Amended Complaint. *Id.* at ¶14. The website was operational beginning on March 11, 2022. *Id.* The website also lists the exclusion, objection, and claim filing deadlines, as well as the date and time of the Court's Settlement Hearing. *Id.* To date, there have been no requests for exclusion received, and no objections have been filed on this Court's docket. Sadler Decl. at ¶69.

As provided in the Preliminary Approval Order, Lead Plaintiffs will file reply papers in support of the Settlement on June 6, 2022, after the deadline for requesting exclusions or objecting has passed. Lead Plaintiffs' reply papers will address any requests for exclusion and objections received and/or filed with the Court.

As discussed in detail above, each of the Rule 23(e)(2) factors support a finding that the Settlement is fair, reasonable, and adequate. Final approval is, therefore, appropriate.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

In the Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation. Lead Plaintiffs now request final approval of the Plan of Allocation. A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Id.* An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *See Heritage Bond*, 2005 WL 1594403, at *11.

Here, the proposed Plan of Allocation, which was developed by Lead Plaintiffs' damages experts in consultation with Lead Counsel, is set forth in the Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. Mailing Decl., Ex. 1-A (Notice, ¶¶50-67). Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss amount for each Settlement Class Member's purchases of Ra Medical common stock during the Settlement Class Period for which adequate documentation is provided. *Id.* For those Settlement Class Members that purchased Ra Medical common stock pursuant or traceable to the IPO, the Recognized Loss will be the maximum of the Settlement Class Member's Recognized Loss under Section 10(b) of the Exchange Act or the statutory damages provided under Section 11(e) of the Securities Act. *See id. at* Ex. 1-A (Notice, ¶54).

An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Ra Medical common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants. If a Claimant purchased shares during the Settlement Class Period, but did not hold any of those shares through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged fraud.

Lead Plaintiffs and Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members similar to the result if Lead Plaintiffs prevailed at trial. ¶¶70-76. To date, no objections to the Plan of Allocation have been filed on this Court's docket. ¶69. For these reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.

## V. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Supreme Court recognizes the utility and necessity of certifying settlement classes so long as absent class members' rights are protected. *See Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997). The Ninth Circuit has also long recognized that class actions may be certified for the purpose of settlement. *See Hanlon*, 150 F.3d at 1019.

The Court's Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 81 at 3-4. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF No. 63 at 14-17), Lead Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order and finally certify the Settlement Class.

## VI. NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). The Notice provides all the necessary information required by Rule 23(c)(2)(B) and satisfies the requirements of the PSLRA, 15 U.S.C. §§ 77z-1(a)(7); 78u-4(a)(7). This Court has already found that the proposed notice program is adequate and sufficient (*see* ECF No. 81 at 5-8). Lead Counsel and Epiq carried out the notice program as proposed. In sum, the notice program detailed in ¶¶62-69 of the Sadler Declaration and the Mailing Declaration ¶¶2-9 fairly apprises Settlement Class Members of their rights with respect to the Settlement, and is the best notice practicable under the circumstances.

# VII. CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate; and finally certify the Settlement Class for the purposes of settlement.

DATED:  May 2, 2022                     Respectfully submitted,

                                        **GLANCY PRONGAY & MURRAY LLP**

                                        By:  _/s/ Casey E. Sadler_
                                        Casey E. Sadler
                                        Robert V. Prongay
                                        Joseph D. Cohen
                                        Pavithra Rajesh
                                        1925 Century Park East, Suite 2100
                                        Los Angeles, California 90067
                                        Telephone: (310) 201-9150
                                        Email: csadler@glancylaw.com
                                        Email: rprongay@glancylaw.com
                                        Email: jcohen@glancylaw.com
                                        Email: prajesh@glancylaw.com

                                        *Counsel for Lead Plaintiffs Ervin Derr and Peter Shoemaker and for the Settlement Class*

                                        LAW OFFICES OF HOWARD G. SMITH
                                        Howard G. Smith
                                        3070 Bristol Pike, Suite 112
                                        Bensalem, PA 19020
                                        Telephone: (215) 638-4847

                                        *Additional Counsel*

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On May 2, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 2, 2022, at Los Angeles, California.

*/s/ Casey E. Sadler*
Casey E. Sadler