Robert V. Prongay (SBN 270796)
Joseph D. Cohen (SBN 155601)
Casey E. Sadler (SBN 274241)
Pavithra Rajesh (SBN 323055)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: jcohen@glancylaw.com
Email: csadler@glancylaw.com
Email: prajesh@glancylaw.com

*Counsel for Lead Plaintiffs Ervin Derr*
*and Peter Shoemaker and for the*
*Settlement Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERVIN DERR, and PETER SHOEMAKER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RA MEDICAL SYSTEMS, INC., DEAN IRWIN, ANDREW JACKSON, MELISSA BURSTEIN, MARTIN BURSTEIN, RICHARD HEYMANN, MAURICE BUCHBINDER, MARTIN COLOMBATTO, RICHARD MEJIA, JR., MARK E. SAAD, and WILLIAM ENQUIST, JR., <br><br> Defendants. | Case No. 3:19-cv-01079-LAB-AHG <br><br> **LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> Date: June 13, 2022 <br> Time: 11:30 a.m. <br> Courtroom: 14A <br> Judge: Hon. Larry Alan Burns |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST.................................................................................................... 4

     A.    Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common Fund ........................................................................ 4

     B.    The Requested Fee Is Supported By The Factors Considered By Courts In The Ninth Circuit ........................................................... 5

         1.    The Quality Of The Result Supports The Fee Request .............. 5

         2.    The Substantial Risks Of The Litigation Support The Fee Request ....................................................................... 7

         3.    The Skill Required And The Quality Of The Work ................. 11

         4.    The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request......................... 12

         5.    A 27.5% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation................................ 15

         6.    The Reaction Of The Settlement Class Supports The Requested Fee ...................................................................... 18

     C.    A Lodestar Cross-Check Supports The Requested Fee ...................... 18

III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED .................................................................................. 22

IV.   LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES PURSUANT TO THE PSLRA ......................... 23

V.    CONCLUSION................................................................................. 25

---

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ..................................................................6

*Avila v. LifeLock Inc.*,
  2020 WL 4362394 (D. Ariz. July 27, 2020) ................................17

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
  2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ...........................3

*Bickley v. Schneider National Carriers, Inc.*,
  2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) ........................17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................4

*Buccellato v. AT&T Operations, Inc.*,
  2011 WL 3348055 (N.D. Cal. June 30, 2011) ......................21

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .....................10

*Craft v. Cty. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..............................21

*Derr v. Ra Medical Systems, Inc.*,
  2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) ..............2, 6, 10

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .............7, 12, 21

*Ellison v. Steven Madden, Ltd.*,
  2013 WL 12124432 (C.D. Cal. May 7, 2013) .........................4

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................8

*Fernandez v. Victoria Secret Stores, LLC*,
  2008 WL 8150856 (C.D. Cal. 2008) ..............................18, 19

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002)................................................................................20

*Glass v. UBS Fin. Servs.*,
  331 F. App'x. 452 (9th Cir. 2009)........................................................................19

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015)................................................................................14

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)......................................................................................8

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013)..............................................................................19

*Great Neck Capital Appreciation Inv. P'ship, L.P. v.
PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002)............................................................................2

*Gross v. GFI Grp., Inc.*,
  310 F. Supp. 3d 384 (S.D.N.Y. 2018)...................................................................13

*Gross v. GFI Grp., Inc.*,
  784 F. App'x. 27 (2d Cir. Sept. 13, 2019)............................................................10

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)....................................................................................22

*Hefler v. Wells Fargo & Company*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................................................8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................5

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................................................24

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .....................................................................15

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) .................................................... 12

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
272 F. App'x 9 (2d Cir. 2008) .................................................... 12

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010) .................................................... 14

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) .................................................... 24

*In re Am. Apparel Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) .................................................... 19

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .................................................... 18

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) .................................................... 17, 19

*In re Apple Computer Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .................................................... 14

*In re Banc of California Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) .................................................... 16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .................................................... 14

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) .................................................... 11

*In re Bluetooth Headsets Prods. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) .................................................... 5

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................... 21

*In re Cendant Corp. Litig*,
264 F.3d 201 (3d Cir. 2001) .................................................... 11

*In re CV Therapeutics, Inc., Sec. Litig.*,
2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ........................................................17

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ........................................................7

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977)........................................................12

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ........................................................13, 21

*In re Genworth Fin. Sec. Litig.*,
2016 WL 5400360 (E.D. Va. Sep. 26, 2016) ........................................................18

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)........................................................*passim*

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................*passim*

*In re K12 Inc. Sec. Litig.*,
2019 WL 3766420 (N.D. Cal. July 10, 2019) ........................................................12, 24

*In re Marsh & McLennan Cos. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)........................................................24

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ........................................................22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)........................................................16

*In re NASDAQ Market-Makers Antitrust. Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998)........................................................8, 15

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................*passim*

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009) ........................................................2, 14

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)................................................................................11, 16

*In re Rite Aid Corp. Sec. Litig.*,
   362 F. Supp. 2d 587 (E.D. Pa. 2005) ................................................................21

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005).............................................................................20

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
   2013 WL 5505744 (D.N.J. Oct. 1, 2013)..........................................................9

*In re Scientific Atl., Inc. Sec. Litig.*,
   754 F. Supp. 2d 1339 (N.D. Ga. 2010) ..............................................................7

*In re Se. Milk Antitrust Litig.*,
   2013 WL 2155387 (E.D. Tenn. May 17, 2013) ................................................20

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................21

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ..................................................................19

*In re Veritas Software Corp. Sec. Litig.*,
   2005 WL 3096079 (N.D. Cal. Nov. 15, 2005)..................................................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)..................................................20

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................................19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994).......................................................................12, 15

*In re Waste Mgmt., Inc. Sec Litig.*,
   2002 WL 35644013 (S.D. Tex. May 10, 2002) ..................................................8

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ................................................9, 10, 14, 24

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. Feb. 2, 2009)...................................................................18

*Lea v. TAL Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .............................................................20

*Leach v. NBC Universal Media, LLC*,
2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ...........................................................21

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998)........................................................................................20

*Maley v. Del Global Technologies Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................................................21

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020)............................................................15

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)......................................................................................1

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ....................................................................................................20

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003)..................................................................................16

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) ....................................................................................................14

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
2009 WL 9100391 (C.D. Cal. June 24, 2009).......................................................15, 16

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989).................................................................................15, 19

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997)...................................................................................14

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012).........................................................................................5

*Schulein v. Petro. Dev. Corp.*,
2015 WL 12698312 (C.D. Cal. Mar. 16, 2015) ....................................................17

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .........................................................9

*Shah v. Zimmer Biomet Holdings, Inc.*,
2020 WL 5627171 (N.D. Ind. Sept. 12, 2020) ......................................................9

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ...............................................................................9

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) ..............................................................................17

*Steiner v. Am. Broad Co.*,
248 F. App'x 780 (9th Cir. 2007) .......................................................................20

*Tawfilis v. Allergan, Inc.*,
2018 WL 4849716 (C.D. Cal. Aug. 27, 2018) .....................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...........................................................................................17

*Todd v. STAAR Surgical Co.*,
2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ......................................................24

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)................................................................................15

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
564 U.S. 135 (2011) ...........................................................................................14

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ...............................................................................4

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .....................................................................21

*Vincent v. Hughes Air West, Inc.*,
557 F.2d 759 (9th Cir. 1977) ................................................................................4

*Vinh Nguyen v. Radient Pharm. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014)......................................................................5

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)...........................................................................*passim*

*Yaron v. Intersect ENT, Inc.*,
   2021 WL 5150051 (N.D. Cal. Nov. 5, 2021)......................................................................20

## STATUTES

15 U.S.C. § 77z-1 ................................................................................1, 4, 9, 24

15 U.S.C. § 78u-4 ................................................................................1, 4, 24

## RULES

Fed. R. Civ. P. 12 ................................................................................1

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to the Court's Amended Order: (1) Granting Motion for Preliminarily Approval of Class Action Settlement; (2) Denying Motion to Dismiss Without Prejudice; and (3) Denying Motion for Consideration of Documents Without Prejudice (ECF No. 81), on June 13, 2022, at 11:30 a.m., or as soon thereafter as the matter can be heard before the Honorable Larry Alan Burns in Courtroom 14A of the United States District Court for the Southern District of California, 333 W. Broadway, San Diego California, 92101, Lead Counsel Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel") will and hereby does move the Court for an Order[1] awarding attorneys' fees and reimbursement of Litigation Expenses in the above-captioned securities class action (the "Action").[2]

This Motion is based on this Notice of Motion; the memorandum of law in support thereof; the Sadler Declaration and the exhibits filed therewith; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.

---

[1] Lead Counsel will submit a [Proposed] Order Awarding Attorney's Fees and Approving Reimbursement of Litigation Expenses in conjunction with their reply brief after Settlement Class Members have had the opportunity to object.

[2] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation of Settlement dated November 12, 2021 (ECF No. 73-2) (the "Stipulation") or the concurrently filed Declaration of Casey E. Sadler in support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Sadler Declaration" or "Sadler Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Sadler Declaration.

## MEMORANDUM OF LAW

Court-appointed Lead Counsel, Glancy Prongay & Murray LLP ("GPM"), respectfully requests the Court grant its motion for an award of attorneys' fees in the amount of 27.5% of the Settlement Fund, or $2,750,000, plus interest earned at the same rate as the Settlement Fund. Lead Counsel also seeks reimbursement of: (i) $43,131.77 of out-of-pocket expenses advanced by counsel, as well as $5,000 for each Lead Plaintiff, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* 15 U.S.C. §§ 77z-1(a)(4), 78u-4(a)(4).[3]

## I.     PRELIMINARY STATEMENT

The proposed Settlement, which provides for a non-reversionary payment of $10 million in cash in exchange for the resolution of the Action, represents an excellent result for the Settlement Class, particularly when juxtaposed against the significant hurdles that Lead Plaintiffs would have needed to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation and damages. The risk of losing was very real, and it was greatly enhanced by the fact that they would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA. *See* 15 U.S.C. §§ 77z-1(b)(1); 78u-4(b)(1) and (3)(B); *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1054–55 (9th Cir. 2008) ("Due in large part to the enactment of the . . . PSLRA . . . plaintiffs in private securities fraud class actions face formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P.

---

[3] The Sadler Declaration is an integral part of this submission. For the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action and the nature of the claims asserted (¶¶13-38); the risks of continued litigation (¶¶45-57); the negotiations leading to the Settlement (¶¶39-44); and the Plan of Allocation (¶¶70-76).

12(b)(6).").[4] Indeed, by the time the Settlement was reached, the Court had granted Defendants' motion to dismiss Lead Plaintiffs' Securities Act of 1933 ("Securities Act") claims, and there is no guarantee this portion of the case—which accounted for the majority of damages—would have ever progressed past the pleading stage. *See Derr v. Ra Medical Systems, Inc.*, 2021 WL 1117309, at *8-9 (S.D. Cal. Mar. 24, 2021).

While Lead Plaintiffs filed a Second Amended Complaint that they believed cured the pleading deficiencies identified in the Court's order, Defendants had again moved to dismiss the Securities Act claims, as well as certain claims under the Securities Exchange Act of 1934 ("Exchange Act") that the Court had previously dismissed. *See* ECF Nos. 60-62, 68. Success was far from a forgone conclusion and, even if Lead Plaintiffs fully prevailed at the pleading stage, they would still have to **prove** their case. There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million); *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, *L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."). Despite these risks, Lead Counsel worked over 1,041 hours on behalf of the Settlement Class, and advanced $43,131.77 in costs and expenses, all on a fully contingent basis.

As compensation for Lead Counsel's significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully requests a fee award in the

---

[4] Unless otherwise noted, all internal citations and quotation marks are omitted and all emphasis is added.

amount of 27.5% of the Settlement Fund. Lead Counsel believe that an award of 27.5%, which is slightly above the 25% "benchmark," properly reflects the many significant risks taken by Lead Counsel, as well as the excellent result achieved in a hard fought and difficult litigation. When examined under either the percentage-of-the-fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.

Lead Counsel also seek reimbursement of $43,131.77 in out-of-pocket litigation expenses incurred in prosecuting this Action. *See* ¶¶96-105. This amount is below the $85,000 limit on Litigation Expenses disclosed in the Notice—which, by definition, included PSLRA awards to Lead Plaintiffs—and it equates to less than 0.43% of the Settlement Fund. The expenses are reasonable in amount, and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, each of the Lead Plaintiffs respectfully requests a PSLRA award in the amount of $5,000 to compensate them for the time and effort they expended on behalf of the Settlement Class. Exs. 7 & 8. Lead Plaintiffs, *inter alia*, familiarized themselves with the facts of the case, reviewed filings and Court orders, produced documents to Lead Counsel, conferred with Lead Counsel regarding the litigation and settlement strategies, authorized their attorneys to settle the case and, in the case of Lead Plaintiff Derr, filed the initial complaint in the Action. But for Lead Plaintiffs' "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Sadler Declaration, Lead Counsel respectfully request that the Court award attorneys' fees equal to 27.5% of the Settlement Fund, approve reimbursement of $43,131.77 in litigation expenses

incurred by Lead Counsel, and grant payment pursuant to the PSLRA of $5,000 to each of the Lead Plaintiffs.

## II. THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A. Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common Fund

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" when awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method. *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"). Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-

universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."). For these reasons, among others, Lead Counsel respectfully requests that the Court award attorneys' fees in this case on a percentage-of-the-fund basis.[5]

**B.** **The Requested Fee Is Supported By The Factors Considered By Courts In The Ninth Circuit**

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-51. The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Id.* As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

**1.** **The Quality Of The Result Supports The Fee Request**

Courts have consistently acknowledged that the quality of the result achieved is the most important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Bluetooth Headsets Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations, however, is the benefit obtained for the class."). Lead Counsel submits that the $10 million proposed

---

[5] *See Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires.").

Settlement is an outstanding result for the Settlement Class given the many risks of continued litigation and the procedural posture of the case at the time of settlement.

Lead Plaintiffs' damages expert estimates that *if* Lead Plaintiffs were able to demonstrate that they could trace their shares to the IPO and thus revive the Securities Act claims, *if* they had fully prevailed in each of their claims at both summary judgment and after a jury trial, *if* the Court certified the same class period as the Settlement Class Period, ***and if*** the Court and jury accepted Lead Plaintiffs' damages theory, including proof of loss causation as to each of the stock price drop dates alleged in this case—*i.e.*, Lead Plaintiffs' best-case scenario—estimated total maximum class wide damages would be approximately $63 million. ¶58.

This case was not, however, risk free and there were meaningful barriers to recovery. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. *See* ¶¶45-57; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J. (Ret.)) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."). For example, the Court has already dismissed the Securities Act claims for lack of standing and could do so again. *See Derr*, 2021 WL 1117309, at *8-9; ECF Nos. 60-62, 68. If only the Exchange Act claims were successful, maximum recoverable damages would be approximately $17.3 million. *See* ¶58.

Under these scenarios, the $10 million recovery equates to 58% of the $17.3 million in damages (if only the Exchange Act claims were proven), and approximately 15.9% of the aforementioned $63 million in maximum damages (if the Securities Act and the Exchange Act claims were proven). ¶59. A recovery in the range of 15.9% to 58% falls well above the median recovery of 1.8% of estimated damages in securities class actions in 2021. *See* Ex. 2 (Janeen McIntosh and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review (NERA Jan. 25, 2022) ("NERA Report") at 24, Fig. 22).

Moreover, the estimated damages for each of these scenarios assumes that Lead Plaintiffs are given full credit for each of the respective stock drops and does not take into account any disaggregation arguments that Defendants may have raised. *See* ¶60. While loss causation was not challenged at the pleading stage, if the litigation were to continue, Lead Plaintiffs would have been required to show what portion of their loss is attributable to actionable issues versus non-actionable factors. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (other forces contributing to an investment's decline "will not bar recovery under the loss causation requirement but will play a role in determining recoverable damages."). This would not be an easy task, would rely heavily on expert testimony, and if Defendants' arguments were accepted by the Court or a jury, the Settlement Class's maximum potential damages would have been substantially reduced, if not completely eliminated. *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("[L]oss causation might have been particularly difficult for Lead Plaintiff to prove, as Defendants would have argued that Lead Plaintiff's expert could not apportion losses to Defendants' misstatements as opposed to other events and information available on the market …."); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).

Given the range of possible results in this litigation, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee.

### 2. The Substantial Risks Of The Litigation Support The Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008); *see also Vizcaino*, 290 F.3d at

1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees). While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); *Securities Class Action Filings: 2020 Year in Review* (Cornerstone Research 2021 at p. 18 (Fig. 17)) ("Recent annual dismissal rates have been closer to 50%.") (Ex. 9).[6] This Action was no exception.

While Lead Counsel believe that the claims of Lead Plaintiffs and the Settlement Class are meritorious, Lead Counsel also recognized from the outset that there were a number of substantial risks in the litigation and that Lead Plaintiffs' ability to succeed at trial and obtain a large judgment was far from certain. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("It is well-established that litigation risk must be measured as of when the case is filed."); *In re NASDAQ Market-Makers Antitrust. Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise)."); *In re Waste Mgmt., Inc. Sec Litig.,* 2002 WL 35644013, at *28 (S.D. Tex. May 10, 2002) ("These risks must be assessed as they existed at the inception of the litigation, and not in light of the settlement achieved in the end."). Nevertheless, Lead Counsel accepted the challenge.

One proxy for assessing risk is whether there were other lead plaintiff movants.

---

[6] *See also Hefler v. Wells Fargo & Company*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA.").

This is because the PSLRA requires the plaintiff or plaintiffs who file the first class action complaint to "publish[], in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 77z-1(a)(3)(A). Here, Lead Plaintiff Ervin Derr filed the initial complaint in the case, and published the requisite notice. ECF Nos. 1, 4-3. No other cases were filed. Derr and Peter Shoemaker moved for lead plaintiff together. ECF No. 4. Yet, there were no other movants for lead plaintiff. *See* ECF Nos. 7, 9. This "[l]ack of competition not only implies a higher fee, but also suggests that most members of the securities bar saw this litigation as too risky for their practices." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013); *see also Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *12 (N.D. Ind. Sept. 12, 2020) (failure of other plaintiffs' lawyers to filed lawsuits indicated that "this was going to be a difficult case and one in which the chances of success were low.").

Another indicia of risk is the fact that this was not a restatement case. *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (noting that one of the many hurdles plaintiffs faced was the fact that the case did not involve a restatement of financials). When companies restate their financials, they are admitting a material misstatement of their financial reporting. A case predicated on a restatement is, therefore, less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744 at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005) ("From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, which did not

involve restatement of TXU's previously issued financial statements or any other acknowledgments of wrongdoing.").

While the focus of the inquiry is on assessing risk at the beginning of the case, it is also important to note that the litigation risks did not end with the filing of the complaint. Indeed, the risks inherent in this case are highlighted by the Court's previous dismissal of Lead Plaintiffs' Securities Act claims, as well as significant portions of their Exchange Act claims. *See In re Xcel*, 364 F. Supp. 2d at 1003 ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved."); *Derr*, 2021 WL 1117309, at \*8-9.

Even though Lead Plaintiffs had partially prevailed at the pleading stage, there still existed major obstacles to ***proving*** liability and damages. For example, Defendants forcefully argued, and would continue to maintain at summary judgment motion and trial, that: (i) the catheter-related manufacturing defect evolved over time, arose after the IPO, and was timely disclosed; (ii) the recall notice related to servicing lasers was resolved prior to the IPO; and (iii) marketing DABRA for atherectomy was not improper, even though that was not an approved indication. ¶¶ 48-49. Thus, according to Defendants, Lead Plaintiffs would not be able to demonstrate either falsity or scienter. Each of these assertions are subjective and/or fact based inquiries, and the trier of fact could easily have determined that the evidence supported Defendants' version of the events. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*12 (S.D.N.Y. Oct. 16, 2019) ("As with falsity, although Plaintiffs uncovered significant evidence that they believe supported a finding of Defendants' scienter, Defendants would have marshalled substantial evidence in opposition.").

Additionally, Defendants would have asserted that Lead Plaintiffs could not establish loss causation for any of the purported disclosures dates, and even if they could, the damages were minimal. Although Lead Plaintiffs believed that they had meritorious arguments in response to Defendants' assertions, it simply cannot be disputed that the Parties held extremely disparate views on loss causation and damages, and had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery. *See In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

In sum, the risks posed by litigation were substantial, and they were present every step of the way. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks").

### 3.    The Skill Required And The Quality Of The Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed. To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

Here, the attorneys at GPM are among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long record of successfully prosecuting securities cases throughout the country, including within this Circuit. *See* ¶85; *see also* Ex. 6 (GPM firm resume); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *2 (N.D. Cal. July 10, 2019) ("Lead Counsel [GPM] has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy."). Lead Counsel respectfully submit that the quality of their efforts in the litigation, together with their substantial experience in securities class actions and commitment to this litigation, provided Lead Counsel with the leverage necessary to negotiate a favorable settlement.

In evaluating the quality of Plaintiff's Counsel's work, it is also important to consider the quality and vigor of opposing counsel. *See, e.g.*, *Heritage Bond*, 2005 WL 1594403, at *20; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).[7] Defendants in this Action were represented primarily by Wilson Wilson Sonsini Goodrich & Rosati, P.C., which is a capable and well-respected law firm, whose briefs filed in support of Defendants' motions to dismiss reflected a vigorous defense. ¶86. Lead Counsel's ability to obtain a favorable Settlement in the face of this formidable legal opposition confirms the superior quality of their work and supports the award of the requested fee.

### 4. The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The fourth factor is the contingent nature of the fee. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*"); *see also Zynga*, 2016 WL 537946, at *18 ("[W]hen counsel takes on a contingency fee case

---

[7] *See also In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).

and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."). Here, Lead Counsel has received no compensation to date, invested 1,041.90 hours of work equating to a total lodestar of $734,062.50, and advanced expenses of $43,131.77 in prosecuting and resolving this Action. Additional work in implementing the Settlement and claims administration will also be required.[8] Since the inception of this case, Lead Counsel has borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real. Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *See, e.g.*, *In re: Korean Ramen Antitrust Litig.*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles).[9]

And Lead Counsel is not alone. There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced,

[8] *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

[9] *See also Gross v. GFI Grp., Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (GPM served as Co-Lead Counsel in case where the Court granted summary judgment for defendants following four years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of attorney time and hard costs), *aff'd on other grounds* 784 F. App'x 27 (2d Cir. Sept. 13, 2019).

changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel*, 364 F. Supp. 2d at 994 .[10] Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)).[11]

Here, because Lead Counsel's fee was entirely contingent, the only certainties were that there would be no fee or expense reimbursement without a successful result, and that such a result would only be realized after substantial amounts of time, effort, and expense had been expended. Nevertheless, Lead Counsel committed significant

---

[10] *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million).

[11] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

amounts of both time and money to vigorously and successfully prosecute this Action for the benefit of the Settlement Class. ¶¶80-85, 96-105. Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee." *NASDAQ Market-Makers*, 187 F.R.D. at 488; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("In complex cases, such as this, the risk of no recovery is substantial and must be balanced against an expectation of a sizeable award.").

### 5. A 27.5% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

The Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark). However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1295 n.2.[12] As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1373 (N.D. Cal. 1989) (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%[.]"); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases, and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City*

---

[12] *See also Graulty*, 886 F.2d at 271 ("[I]t is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The amount of such a reward is that which is deemed 'reasonable' under the circumstances.").

---

*of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third."). Indeed, for securities class action settlements settled between 2012 and 2021 with a gross settlement value of $10 million to $25 million, the median fee as a percentage of settlement value was 27.5%. *See* NERA Report at 27 (Fig. 25).[13] For settlements ranging between $5 million and $10 million over the same period, the median fee was 30%. *Id.* Thus, the 27.5% fee sought by Lead Counsel is consistent with, or below, the median fee awarded in comparable cases.

An award of 27.5% of the Settlement Fund would also be consistent with attorneys' fee awards in similar, complex, contingent litigation in the Ninth Circuit. *See Pac. Enters.*, 47 F.3d at 373 (affirming 33% award from $12 million common fund "because of the complexity of the issues and the risks"); *Vizcaino*, 290 F.3d at 1051 (affirming award of 28% of $97 million settlement fund); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash class action settlement); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class actions"); *In re Novatel Wireless Sec. Litig.*, No. 08-cv-01689-AJB-RBB, slip op. at 1 (ECF No. 520) (S.D. Cal. June 23, 2014) (awarding 27.5% of $16 million settlement) (Ex. 10).[14]

---

[13] Notably, for securities class actions settled during the 1996-2010 timeframe; the median of plaintiffs' attorneys' fees as a percentage of gross settlement value ranging from $5 million to $10 and $10 to $25 million was 30%. *Id.* Thus, for a case settling for $10 million—like this one—fee awards have remained remarkably consistent since the passage of the PSLRA in 1995.

[14] *See also In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third of a $19.75 million settlement fund in securities

In view of the outstanding result obtained, the contingent fee risk, the number of hours dedicated to this matter by Lead Counsel, the financial commitment of Lead Counsel, and the important public policy advanced by securities litigation such as this, it is respectfully submitted that an award of 27.5% of the recovery obtained for the Settlement Class is appropriate. *See, e.g., Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis. This incentive is especially important in securities cases.").[15]

class action); *NECA-IBEW Pension Trust Fund et al. v. Precision Castparts Corp., et al.*, No. 16-cv-01756-YY, slip op. (ECF No. 169) at 1-2 (D. Or. May 7, 2021) (awarding 33.3% of $21 million settlement) (Ex. 11); *Bickley v. Schneider National Carriers, Inc.*, 2016 WL 6910261, at *3-4 (N.D. Cal. Oct. 13, 2016) (awarding one-third of $28 million settlement fund); *Schulein v. Petro. Dev. Corp.*, 2015 WL 12698312, at *6 (C.D. Cal. Mar. 16, 2015) (awarding attorneys' fees in the amount of 30% of a $37.5 million cash settlement); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (awarding 33.33% of $145 million settlement fund); *In re CV Therapeutics, Inc., Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (30% of $13.35 million); *Omnivision*, 559 F. Supp. 2d at 1049 (28% of $13.75 million); *Tawfilis v. Allergan, Inc.*, 2018 WL 4849716, at *7 (C.D. Cal. Aug. 27, 2018) (awarding one-third of $13.45 million settlement fund); *Avila v. LifeLock Inc.*, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020) (30% of $20 million settlement fund); *Turocy v. El Pollo Loco Holdings, Inc.*, No. 8:15-cv-01343-DOC-KES, slip op. (ECF No. 219), ¶¶4, 6(a) (C.D. Cal. Aug. 27, 2019) (awarding 30% of $20 million settlement) (Ex. 12); *In re Allied Nevada Gold Corp. Sec. Litig.*, No. 3:14-cv-00175-LRH-WGC, slip op. (ECF No. 215), at 5, ¶O (D. Nev. Nov. 16, 2020) (awarding one-third of $14 million) (Ex. 13); *Stanley v. Safeskin Corp.*, No. 99CV454 BTM (LSP), slip op. (ECF No. 244) at 9 (S.D. Cal. Apr. 2, 2003) (awarding 26% of $55 million settlement) (Ex. 14).

[15] *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC].").

### 6. The Reaction Of The Settlement Class Supports The Requested Fee

"The existence or absence of objectors to the requested attorneys' fee is a factor is determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21; *see also OmniVision*, 559 F. Supp. 2d at 1048. While the time to object to the fee and expense application does not expire until May 23, 2022, to date, not a single objection has been received. ¶69. Should any objections be received, Lead Counsel will address them in their reply papers. "The lack of objection from any Class Member supports the attorneys' fees award." *Immune Response*, 497 F. Supp. 2d at 1177; *see also Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (lack of objections supports 30% fee award); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *13 (C.D. Cal. 2008) (3 members objected and 29 opted out, indicating favorable result and award of "generous fee").

### C. A Lodestar Cross-Check Supports The Requested Fee

Although Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also Vizcaino,* 290 F.3d at 1050 ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Genworth Fin. Sec. Litig.*, 2016 WL 5400360, at *7 (E.D. Va. Sep. 26, 2016). "Calculation of the lodestar, however, is simply the beginning of the

analysis." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also Graulty*, 886 F.2d at 272. In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013); *Vizcaino*, 290 F.3d at 1051-52 ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *Heritage Bond*, 2005 WL 1594403, at \*22 ("In securities class actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.").

When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *Glass v. UBS Fin. Servs.*, 331 F. App'x. 452, 456 (9th Cir. 2009).[16] In this case, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 1,041.90 hours to the prosecution of the Action. ¶80. As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Lead Counsel is submitting a

---

[16] *See also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at \*7 (D. Ariz. 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at \*23 (C.D. Cal. Jul. 28, 2014) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours."); *Fernandez*, 2008 WL 8150856, at \*9.

declaration that includes a schedule breaking down the firm's lodestar by individual, position, billing rate, and hours billed.[17] ¶80; Ex. 3. Based on current hourly rates,[18] Lead Counsel's lodestar is $734,062.50. ¶80.[19] Thus, the 27.5% fee request (equal to $2,750,000), yields a multiplier of 3.75.

A multiplier of 3.75 is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Steiner v. Am. Broad Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving a percentage fee award that corresponded to a

[17] *See In re Immune Response*, 497 F. Supp. 2d at 1176 ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005) ("[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 n.3 (E.D. Tenn. May 17, 2013).

[18] Courts use current rather historic rates, to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment."); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

[19] Lead Counsel's rates range from $750-$1,075 for partners, and $450-$625 for associates (¶82), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (approving GPM's 2021 rates of $600 to $995 for partners, and $500 to $750 for associates); *see also* Ex. 5 (chart of rates charged by peer plaintiff and defense counsel in complex litigation); *Yaron v. Intersect ENT, Inc.*, 2021 WL 5150051, at *2 (N.D. Cal. Nov. 5, 2021) (accepting GPM's rates as part of lodestar cross-check); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").

multiplier of 6.85); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving percentage fee award equal to multiplier of approximately 5.2, collecting cases and stating that "[w]hile this is a high end multiplier, there is ample authority for such awards resulting in multipliers in this range or higher."); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (finding "multiplier of 4.3 is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results obtained for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are customary."); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, which was "well within range awarded by courts in this Circuit and courts throughout the country").[20]

"The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017); *see also Facebook,* 2015 WL 6971424, at *10. Indeed, among other things, Lead Counsel will oversee the claims administration process, respond to shareholder

---

[20] *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (noting that "[i]n recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *In re Veritas Software Corp. Sec. Litig.*, 2005 WL 3096079, at *13 (N.D. Cal. Nov. 15, 2005) (applying 4.0 multiplier); *Zynga*, 2016 WL 537946, at *21 ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4."); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (awarding fee equal to multiplier of 3.6 and stating that "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (awarding fee equal to multiplier of 6 and stating "[m]ost courts agree that the typical lodestar multiplier in a large post-PSLRA securities class actions ranges from 1.3 to 4.5."); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding fee equal to multiplier of 6.96).

---

inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court. The multiplier will, therefore, diminish as the case moves forward because Lead Counsel will not seek any additional compensation for this work.

In sum, Lead Counsel's requested fee award is well within the range of reasonableness in complex class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## III. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *Omnivision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action. Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. ¶100.

In the aggregate, Lead Counsel have incurred expenses in the amount of $43,131.77 while prosecuting the Action, and these expenses are set forth in the Sadler Declaration, ¶¶97, 101-104; Ex. 4. The vast majority of expenses were for the retention of a experts ($16,850), a private investigation firm ($12,705.55) and the mediator ($8,750.58), as well as online research ($3,732.63). These expenses total $42,038.76, or approximately 97% of the total litigation expenses. Ex. 4. Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly. They should, therefore, be reimbursed out of the common fund. *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.").[21]

## IV. LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES PURSUANT TO THE PSLRA

In connection with Lead Counsel's request for reimbursement of Litigation Expenses, Lead Counsel also seek reimbursement of a total of $10,000 in costs and expenses incurred by Lead Plaintiffs Ervin Derr ($5,000) and Peter Shoemaker ($5,000). The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class"

---

[21] The Notice informed Settlement Class Members that Lead Counsel intended to apply for the reimbursement for Litigation Expenses "in an amount not to exceed $85,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class." Ex. 1 (Mailing Decl. Ex. A, ¶5 (Notice)). Lead Counsel's requested reimbursement of $43,131.77 (plus $10,000 for Lead Plaintiffs) is substantially less than the maximum amount of potential expenses disclosed in the Notice and, to date, there have been no objections to the request for reimbursement of Litigation Expenses. ¶69.

may be made to "any representative party serving on behalf of a class." 15 U.S.C. §§ 77z-1(a)(4), 78u-4(a)(4). Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012).

Here, Lead Plaintiffs took an active role in the litigation by, among other things: (i) moving to serve as Lead Plaintiffs in the Action; (ii) reviewing all significant pleadings and briefs in the Action; (iii) communicating regularly with Lead Counsel regarding the posture and progress of the case, as well as strategy; (iv) producing documents to Lead Counsel; (v) consulting with Lead Counsel regarding settlement negotiations; and (vi) evaluating and approving the proposed Settlement. *See* Shoemaker Decl. (Ex. 7 at ¶¶3-7); Derr Decl. (Ex. 8 at ¶¶3-8). Moreover, Mr. Derr ***initiated*** the Action following an investigation by Lead Counsel. *Id*. at ¶3; *see also* ECF No. 1. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). Consequently, Lead Counsel respectfully requests that the Court grant Lead Plaintiffs' request for reimbursement of "their reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21; *see also Immune Response*, 497 F. Supp. 2d at 1173-74 (awarding $40,000 to lead plaintiff pursuant to PSLRA); *In re K12*, 2019 WL 3766420, at *2 (awarding $5,500 to lead plaintiff pursuant to PSLRA); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award to lead plaintiff); *In re Xcel*, 364 F.Supp.2d at 1000 (awarding eight lead plaintiffs a total of $100,000 pursuant to the PSLRA and noting "the important

policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves").

## V. CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the fee and expense application.

DATED: May 2, 2022

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By: _/s/ Casey E. Sadler_
Casey E. Sadler
Robert V. Prongay
Joseph D. Cohen
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: csadler@glancylaw.com
Email: rprongay@glancylaw.com
Email: jcohen@glancylaw.com
Email: prajesh@glancylaw.com

_Counsel for Lead Plaintiffs Ervin Derr and Peter Shoemaker and for the Settlement Class_

LAW OFFICES OF HOWARD G. SMITH
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847

_Additional Counsel_

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case, and am over eighteen years old. On May 2, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 2, 2022, at Los Angeles, California.

*/s/ Casey E. Sadler*
Casey E. Sadler