# EXHIBIT 14

Case 3:99-cv-00454-JM-POR Document 244 Filed 04/03/2003 PageID.16811 Page 1 of 10
2 of 11

















TKL    4/3/03    15:08

3:99-CV-00454    STANLEY V. SAFESKIN CORPORATION

*244*

*O.*

FILED

03 APR -3 PM 12: 40

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                        DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON STANLEY, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>                                        Plaintiff,<br><br>vs.<br><br>SAFESKIN CORPORATION, et al.,<br><br>                                        Defendant. | CASE NO. 99CV454 BTM (LSP)<br><br>ORDER APPROVING SETTLEMENT AND AWARD OF ATTORNEYS' FEES |

On March 20, 2003, the Court held a hearing on Plaintiff's motion for approval of the settlement of this case and awarding attorneys' fees and expenses. For the reasons set forth below, the Court approves the Settlement and Plaintiffs' request for an award of attorneys' fees.

## I.    BACKGROUND

On and after March 12, 1999, eighteen actions were filed in this district as securities class actions on behalf of persons who purchased the publicly traded common stock or options of Safeskin Corporation ("Safeskin" or the "Company"). These actions were subsequently consolidated for all purposes as Stanley v. Safeskin, et al., Lead Case No. 99cv454 BTM (LSP).

The operative complaint in this Litigation is the Consolidated Amended Class Action

1

99cv454

Complaint ("Complaint"). The Complaint alleges violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The Litigation is brought on behalf of a class consisting of all persons who purchased the common stock or options of Safeskin between February 18, 1998 and March 11, 1999. On September 18, 2000, the Court denied in part Defendants' Motion to Dismiss the Complaint, and on December 20, 2000, Defendants answered the Complaint. The Class was certified on August 8, 2001, and notice to Class Members was duly provided. On June 7, 2002, Defendants filed two motions for partial summary judgment and Defendant Martin filed a motion for summary judgment.

On March 25, 1999, a derivative action purportedly on behalf of Safeskin, Steckel v. Jaffe, et al., was filed in the Superior Court of California, County of San Diego, Case No. 729294 (the "Derivative Action"). The Derivative Action alleged, among other things, that the Defendants (former officers and directors of Safeskin) had breached their fiduciary duties in connection with their management of the Company. The Litigation and the Derivative Action are hereinafter referred to collectively as the "Actions."

The parties in the Derivative Action briefed Defendants' demurrer to the Complaint in that action and Defendants' subsequent motion for summary judgment. The Honorable William C. Pate, Judge of the Superior Court, denied Defendants' demurrer on or about August 9, 1999 and their motion for summary judgment on or about December 15, 2000.

Under the auspices of United States Magistrate Judge Leo S. Papas, beginning in September 2002, the parties negotiated and thereafter memorialized an agreement in principle to settle the Litigation. Concurrently, the parties reached an agreement in principle to settle the Derivative Action as well. The parties then further negotiated and drafted the terms of an Agreement in Principle and a Memorandum of Understanding to memorialize their agreement to settle the Actions. On January 14, 2003, Magistrate Judge Papas issued an order preliminarily approving the settlement and approving the form and substance of the notice to the Class, including the proof of claim and release form. The case in now before this Court for final approval.

2

99cv454

## II.   THE SETTLEMENT

The proposed settlement creates a fund in the principal amount of $55,000,000 in cash and will include interest that accrues on the fund prior to distribution.  Based on Representative Plaintiffs' estimate of the number of shares entitled to participate in the settlement and the anticipated number of claims to be submitted by Class Members, the average distribution per share would be approximately $3.58 before deduction of Court-approved fees and expenses. Plaintiffs seek attorneys' fees of 26% of the gross settlement proceeds and reimbursement of expenses not to exceed $3,500,000 to be paid from the settlement proceeds.   In addition, several of the Representative Plaintiffs seek reimbursement for their costs and expenses, including lost wages, incurred in prosecuting the Litigation.  This compensation is to be paid from the Settlement Fund.  Class members are not personally liable for any such fees or expenses.  To date, Representative Plaintiffs' Counsel have not received any payment for their services in conducting the Actions on behalf of Representative Plaintiffs and the Members of the Class, nor have counsel been reimbursed for their out-of-pocket expenses.

Under Rule 23 a "class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e).  Courts interpret Rule 23 as requiring them to determine whether the proposed settlement is "fair, adequate, and reasonable." See, Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  This determination requires that a court balance a number of factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." Id.

The Court finds that all these factors favor the determination that the settlement is "fair, adequate, and reasonable."  First, while Plaintiffs' case was strong enough to survive

3

a motion to dismiss, there was still considerable risk and expense in proceeding to trial. As previously stated, the parties reached settlement while several motions for summary judgment were pending. There were still serious questions of law and fact in dispute, for example Defendants asserted various defenses such as lack of scienter and "truth on the market" claims. Due to the complexity of Plaintiffs' theories of liability and damages, the risk that they could fail to convince a jury as to either was substantial. Furthermore, there were serious questions as to whether Safeskin would have sufficient assets to satisfy a judgment and whether its parent company would be liable for any deficit. While the case was very close to trial, there was every indication that proceedings could continue for several more years. Not only were Defendants likely to appeal an adverse verdict, an initial victory by Plaintiffs could also spawn a host of other suits and legal actions in order to collect on any judgment.

Second, the settlement obtained for the class is a substantial amount, $55 million. Based on each party's assessment of potential judgments, Defendants' potential liability at the low end ranged from $1-16 million and at the high end from $55-100+ million. Therefore, a settlement of $55 million represents a reasonable compromise. The value of this settlement is increased by the fact that it is in cash and has already been fully funded. Both of these facts make the settlement much more valuable to the class than funds that are either in non-cash form such as stock or will be paid to the common fund over several years.

Third, the settlement was reached after extensive discovery had been completed and the case was almost ready to proceed to trial. Prior to settlement, the following discovery had been conducted: (1) document production by Defendants, by Plaintiffs, and pursuant to third-party subpoenas for a total of over 1 million pages of documents; (2) interrogatories and answers to interrogatories; and (3) over 75 fact depositions, including Federal Rule of Civil Procedure 30(b)(6) depositions of Safeskin, depositions of former Safeskin employees, depositions of each of the named Defendants, and depositions of third parties. Additionally, the parties conducted extensive expert discovery, including exchanges of reports and depositions. While there were motions for summary judgment pending, the case was set to

4

go to trial after they were decided. Therefore, the parties were fully aware of the strengths and weaknesses of their cases and were in a good position to reach an appropriate settlement based thereon.

Fourth, all counsel have a great deal of experience in class action litigation and are highly regarded in this area of the law. Plaintiffs' counsel also has a strong record of presenting legitimate settlements to the Court in the past. While both parties expressed belief that they had a strong case, each acknowledged the substantial risks they would face should the case be presented to a jury. Furthermore, there was substantial involvement by Magistrate Judge Papas in the entire settlement process. This also supports the Court's determination that the settlement was adversarial and at arms-length and that there was no collusion between the parties.

The Court also finds that the involvement of the Chicago Teachers' Fund to be of particular importance in determining the reasonableness of the settlement. The Fund was appointed Co-Lead Plaintiff in the Litigation and vigorously participated in all aspects of the case's prosecution including (1) reviewing expert opinions regarding substantive issues relating to Class Member status; (2) studying derivative shareholder claims and issues respecting corporate governance; (3) independently evaluating Plaintiffs' claims and Defendants' defenses; (4) providing significant input respecting litigation and settlement strategy; and (5) attending extended mediation sessions in Washington, D.C. and San Diego, California. Additionally, the Fund's board of trustees met to extensively review, analyze and evaluate the merits of this action and determine whether the proposed $55 million settlement should be approved as fair, reasonable and in the best interests of the Class. The Court finds the Fund's support of the settlement extremely persuasive as to its reasonableness.

Finally, out of the approximately 45,000 notices that were sent to class members there was not a single opposition to the terms of the settlement. There were also no objections presented to the Court at the hearing to approve the settlement.

99cv454

In conclusion, the Court finds that all these various factors weigh in favor of the determination that the settlement reached was fair, adequate, and reasonable.

## III. THE ATTORNEYS' FEE AWARD

As part of the settlement, Plaintiffs are requesting an award of 26% of the gross settlement fund. In determining the reasonableness of an award of attorneys' fees, the court "has discretion to use the lodestar method or the percentage of the fund method in common fund cases." See, In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997). The Ninth Circuit has established 25% of the recovery as a "benchmark" for attorneys' fees calculations under the percentage of recovery approach. See, Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989). A court may depart from the benchmark but, "[i]f such an adjustment [to the benchmark] is warranted, . . . it must be made clear by the district court how it arrives at the figure ultimately awarded." Id.

Plaintiffs argue that the attorneys' fees award should be calculated on a percentage of the gross recovery rather than a percentage of the recovery minus expenses. Under the Private Securities Litigation Reform Act of 1995, "[t]otal attorneys's fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). While the purpose of this legislation was to prevent fee awards under the lodestar method from taking up too great a percentage of the recovery, it did not eliminate the use of this method. See, e.g., H.R. Conf. Rep. No. 104-369 (1995). As the Court stated at the hearing, the rationale behind the common fund approach to awarding attorneys' fees is that the purpose of the litigation is to produce a recovery for the class members, in which the lawyers can share on a percentage basis, not simply to generate fees for the lawyers, such as where the lawyers take the lion's share of the fund.

It is clear that no matter what formula is used, lodestar v. percentage/gross v. net, the ultimate inquiry is whether the amount awarded in fees is "reasonable." See, e.g.,

*Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n.2 ("Because a reasonable fee award is the hallmark of common fund cases, and because arbitrary, and thus unreasonable, fee awards are to be avoided, neither [the lodestar nor the percentage] method should be applied in a formulaic or mechanical fashion."); *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) ("If twenty-five percent of gross is reasonable, perhaps thirty-five percent of net would be reasonable.").

In this case, the Court finds that an award of attorneys' fees in the amount of 26% of the gross recovery is reasonable. The increase of 1% above the benchmark is supported by some of the same reasons why the Court concluded that the settlement was fair: (1) the case was complex both factually and in regard to the theories of causality, liability, and damages; (2) Plaintiffs' attorneys expended considerable time, effort, and expense in vigorously litigating the case at all stages and almost reached trial; (3) counsel diligently pursued the Litigation for almost four years, without compensation or reimbursement of the expenses they advanced in this case, and therefore bore the risk that they might never be paid; (4) through these efforts Plaintiffs' attorneys procured an exceptional award for the class, namely a $55 million recovery; and (5) there were no objections to the appropriateness of this fee.

The Court also finds that the involvement of the Chicago Teachers' Fund was of particular importance in determining the reasonableness of this 1% increase. As an experienced and sophisticated institutional investor, the Fund had the wherewithal to evaluate the appropriateness of the fees in this case, a pecuniary interest in the result, and a fiduciary duty to its investors to ensure that it recovered the maximum amount from the common fund. After reviewing the request for attorneys' fees at two separate board meetings, the Fund voted to award Plaintiffs' attorneys a 1% increase over the benchmark as recognition of their superlative performance. The Court finds the Fund's support of the 1% increase over the benchmark extremely persuasive as to its reasonableness.

Therefore, the Court finds that an award of attorneys' fees in the amount of 26% of the gross recovery is reasonable under these circumstances.

99cv454

## IV. Expense Request

Plaintiffs also submitted a request for reimbursement of expenses in the amount of $3,080,486.64 together with the interest earned thereon. The Court is only prepared to rule on the reasonableness of two of the categories of items requested at this time. First, the Court determines that Plaintiffs are entitled to a maximum of ten cents per page for in-house photocopying. Second, Plaintiffs are not entitled to reimbursement for the costs of conducting general legal research via electronic means. Attorneys do not charge clients a pro rata fee for the costs of maintaining a firm's office library. In the present day and age, electronic research constitutes a substantial substitute for the law library. Law firms can have trunk rates with electronic research providers. This cost is part of an attorney's overhead just like a law library. Therefore, no compensation shall be allowed for electronic legal research. Plaintiffs are entitled, however, to reimbursement of expenses in electronically gathering facts, as fact-gathering, by whatever means, is not properly part of traditional overhead costs.

The Court holds that counsel are entitled only to reimbursement for actual expenses they advanced on behalf of the class. Counsel may not obtain payment for services that are considered overhead such as stenographic, word processing, and clerical services. Nor can counsel receive payment for items for which they did not actually expend money. For example, counsel cannot receive compensation for faxes or phone calls unless they specifically paid providers for these services. The Court has already considered that counsel have substantial overhead in calculating their fee of 26% of the gross recovery. Payment of items that are not actual expenses paid for by counsel and are part of an attorney's overhead costs would be inconsistent with the amount awarded in attorneys' fees.

As to the rest of Plaintiffs' request, the majority of these expenses stem from the use of various expert witnesses. Because Magistrate Judge Papas worked with the parties throughout the various stages of discovery in the Litigation, he is in a better position to evaluate the relevance, importance, and thus reasonableness of these various experts and the work product they produced. Accordingly, the Court refers Plaintiffs' request for

8

reimbursement of expenses to Judge Papas, that is, as to all expenses with the limitations the Court has already noted, for a report and recommendation as to the reasonableness of their request and the amount to be awarded.

## V.    CONCLUSION

For the above mentioned reasons, the Court approves the settlement and GRANTS in part Plaintiffs' motion for attorneys' fees and expenses **[doc. 223-1]**.  The Court awards Plaintiffs attorneys' fees in the amount of 26% of the gross recovery before the deduction of expenses.  The Court's decision as to the reasonableness of Plaintiffs' request for reimbursement of $3,080,486.64 in expenses will be made after the Court receives Judge Papas' Report and Recommendation on this issue.

**IT IS SO ORDERED.**

Dated: _April 2, 2003_

**HONORABLE BARRY TED MOSKOWITZ**
United States District Judge

Copies to:
All Parties and Counsel of Record

9

99cv454