**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERVIN DERR, and PETER SHOEMAKER, Individually and on Behalf of All Others Similarly Situated,<br><br>                                     Plaintiff,<br><br>v.<br><br>RA MEDICAL SYSTEMS, INC., DEAN IRWIN, ANDREW JACKSON, MELISSA BURSTEIN, MARTIN BURSTEIN, RICHARD HEYMANN, MAURICE BUCHBINDER, MARTIN COLOMBATTO, RICHARD MEJIA, JR., MARK E. SAAD, and WILLIAM ENQUIST, JR.,<br><br>                                     Defendants. | Case No.: 19-cv-1079-LAB-AHG<br><br>**ORDER:**<br><br>**1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT [Dkt. 87]; and**<br><br>**2) GRANTING IN PART MOTION FOR ATTORNEY FEES AND REIMBURSEMENT OF LITIGATION EXPENSES [Dkt. 88]** |

Plaintiffs Ervin Derr and Peter Shoemaker (collectively, "Plaintiffs") were investors in Ra Medical Systems, Inc. ("Ra Medical"). They filed this putative class action against Ra Medical, Dean Irwin, Andrew Jackson, Melissa Burstein, Martin Burstein, Richard Heymann, Maurice Buchbinder, Martin Colombatto, Richard Mejia, Jr., Mark E. Saad, and William Enquist, Jr. (collectively, the "Individual Defendants," and together with Ra Medical, "Defendants"), asserting claims under

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b-5 under that Act, and Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"). Plaintiffs now move for final approval of the class settlement with Defendants (the "Settlement") and of payments to the Settlement Class, the Plaintiffs, and Class Counsel. (Dkt. 87; Dkt. 88).

The Court has considered:

- Plaintiffs' Motion for Final Approval of Class Settlement and Plan of Allocation and Memorandum of Points and Authorities in Support Thereof ("Final Approval Motion"), (Dkt. 87);
- Plaintiffs' Motion for Attorney Fees and Reimbursement of Litigation Expenses and Memorandum of Law in Support Thereof ("Fee Motion"), (Dkt. 88);
- The declarations and exhibits submitted in support of each Motion and the Settlement;
- The Stipulation of Settlement ("Stipulation"), (Dkt. 73-2);
- This Court's experiences, observations, and file developed in presiding over the resolution of this matter;
- The relevant law; and
- The entire record in this proceeding, namely the briefing, declarations, and exhibits submitted in support of preliminary approval of the Settlement in its various iterations, including:
  - The Notice Plan for providing full and fair notice to the Settlement Class;
  - The lack of any Class Member objections to or requests for exclusion from the Settlement;
  - The absence of any objection or response by any official after the provisions of all notices required by the Class Action

Fairness Act of 2005 ("CAFA") § 3, 28 U.S.C. § 1715; and

- Counsel's oral presentations at the two hearings on the Settlement's fairness.

Based upon these considerations and the Court's findings of fact and conclusions of law as set forth in the Amended Preliminary Approval Order, (Dkt. 81), and as discussed below, **IT IS ORDERED** that:

1) The Motion for Final Approval of Class Settlement, the terms of which are set forth in the Stipulation, (Dkt. 73-2), is **GRANTED**;
2) The Settlement Class is **CERTIFIED**;
3) Plaintiffs Ervin Derr and Peter Shoemaker are appointed as Class Representatives and the incentive awards requested in the Fee Motion are **APPROVED**;
4) Glancy Prongay & Murray LLP is appointed as Class Counsel and, subject to this Order's modification (*infra* Section VI), the attorneys' fees and expenses requested in the Fee Motion are **APPROVED**; and
5) Plaintiffs' claims are **DISMISSED WITH PREJUDICE** in accordance with the terms of this Order.

## DISCUSSION

### I. Definitions

Except as otherwise specified herein, the Court adopts all defined terms set forth in the Stipulation for purposes of this Final Approval Order.

### II. Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331; Section 22 of the Securities Act, 15 U.S.C. § 77v; and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. The Court also has original jurisdiction over this civil action pursuant to CAFA §§ 3–5, 28 U.S.C. §§ 1332(d)(2), 1453, 1711–1715, as: (1) the action involves 100 or more potential class members; (2) any class members are citizens of a state different from any Defendant; and

(3) the aggregate amount-in-controversy exceeds $5,000,000, exclusive of costs and interest. 28 U.S.C. § 1332(d)(2), (d)(6), (d)(11)(B)(i).

The Court also has personal jurisdiction over the parties. As discussed in greater detail below and in the Court's Amended Preliminary Approval Order, (Dkt. 81), the Class Members received adequate notice, had the right to opt out, and were adequately represented by Plaintiffs. Accordingly, the Court can and does exercise jurisdiction over those Class Members' claims. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1986) (adequate notice and opportunity to be heard permits courts to exercise jurisdiction over claims of absent class members).

### III. Findings and Conclusions

#### A. Definition of Settlement Class and Class Members

The Court adopts the Amended Preliminary Approval Order's definitions of the Settlement Class, comprised of the Class Members. (Dkt. 81). The definitions of Settlement Class and Class Period are reproduced below:

- "Settlement Class" means all persons and entities that purchased or otherwise acquired Ra Medical common stock: (a) pursuant and/or traceable to Ra Medical's IPO; and/or (b) between September 27, 2018, and November 27, 2019, inclusive. Excluded from that Settlement Class would be: (a) persons and entities who or which suffered no compensable losses; and (b)(i) Defendants and the Underwriters; (ii) any person who served as a partner, control person, executive officer, and/or director of Ra Medical or the Underwriters during the Settlement Class Period, and their Immediate Family Members; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Ra Medical and the Underwriters; (iv) any entity in which the Defendants or Underwriters have or had a controlling interest; (v) any trust of which any Individual Defendant is the settler or which is for the

benefit of any Individual Defendant and/or their Immediate Family Members; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court. For the avoidance of doubt, (a) any Investment Vehicle shall not be excluded from the Settlement Class; and (b) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with one of the Defendants.

- "Class Period" means the period from September 27, 2018, to November 27, 2019, inclusive.

As noted, no Class Members requested exclusion from the Settlement Class. (Dkt. 92-1 ¶ 5).

### B. Class Certification

Before approving a settlement of Class Claims, the Court must confirm that the Class Form is appropriate to the case. Rule 23(a) requires a class to satisfy four prerequisites, generally referred to as numerosity, commonality, typicality, and adequacy of representation. If these are satisfied, the Court must confirm that the action meets one of the class action types enumerated in Rule 23(b)—as relevant here, subsection (3) of that Rule requires that the common questions predominate over individual ones, and that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy. Because the Court finds that each of these requirements is met, the Court grants final certification of the Settlement Class. All Class Members are subject to this Final Approval Order and the Final Judgment to be entered by the Clerk of Court in accordance herewith.

### 1. Numerosity

The Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), has received 822 claims, of which at least 347 appear to be valid. (Dkt. 95-1 ¶ 5). Epiq expects this number to increase after the claimants who submitted invalid claims have had the opportunity to correct deficiencies. (*Id.*) This is sufficiently numerous that joinder of all Class Members is impracticable, so Rule 23's numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

A properly certified class must also have questions of law or fact common to the class members. Fed. R. Civ. P. 23(a)(a). Each Class Member purchased stock at prices that Plaintiffs allege were artificially inflated by Defendants' failure to make required disclosures. Whether Defendants had a duty to make such disclosures, whether they failed make those disclosures, and what effect such failures had on Ra Medical's stock price are questions common to each Class Member.

### 3. Typicality

A class can be certified only if the class representative's claims are typical of the class's claims. Fed. R. Civ. P. 23(a)(3). A representative's claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Co.,* 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011). Like the other Class Members, each Plaintiff purchased shares of Ra Medical during the period before Ra Medical disclosed, on November 29, 2019, that it was facing a U.S. Department of Justice criminal investigation, a disclosure that caused a substantial decline in Ra Medical's share price. The Court finds that Plaintiffs' claims are reasonably co-extensive with those of the other Class Members.

### 4. Adequacy of Class Representatives

The next prerequisite to class certification, adequacy of representation, "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997); Fed. R. Civ. P. 23(a)(4). No party or objector contends that the Settlement Class lacks adequate representation, and Class Counsel has fully and completely prosecuted all claims available to the Settlement Class. Plaintiffs possess no apparent interests adverse to the Settlement Class. Class Counsel and the named Plaintiffs are adequate to represent the Settlement Class.

### 5. The Settlement Class Meets Rule 23(b)(3)'s Requirements

Having met Rule 23(a)'s prerequisites for class certification, Plaintiffs contend that the Settlement Class can be certified under Fed. R. Civ. P. 23(b)(3). (*See* Dkt. 53 ¶¶ 57–58). This requires the Court to find that questions of law or fact common to Class Members predominate over any questions affecting only individual members and that class treatment is the superior means to adjudicate Plaintiffs' claims. Fed. R. Civ. P. 23(b)(3). These requirements are satisfied.

Predominance can be established by the existence of a companywide policy or practice. *See, e.g., Duque v. Bank of America,* Case No. SA CV 18-1298 (MRWx), 2018 WL 10483813, at *3–4 (C.D. Cal. Dec. 10, 2018). Here, the Settlement Class's claims arise from Defendants' alleged failure to make disclosures required under federal securities laws. The common questions surrounding the lack of disclosures predominate over any individual questions, so the predominance requirement is met.

The Court must also confirm that the class form is superior to other methods of litigation before certifying a class under Rule 23(b). This inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. The "dominant[]" objective of the class form is "vindication of the rights of groups of

people who individually would be without effective strength to bring their opponents into court at all . . . . The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (internal quotation marks and citations omitted). If the final Settlement Class consists of 347 actual Class Members, the average claim would be around $28,818. Individual cases would likely consume a significant amount of time, effort, and resources, and would also likely deter individual Class Members from pursuing individual claims. The Court finds that class treatment here is superior to other methods of litigation.

With the requirements of Rules 23(a) and (b)(3) satisfied, the Court grants final certification of the Settlement Class for settlement purposes only.

### IV. The Settlement

"Federal Rule of Civil Procedure 23(e) requires district courts to review proposed class action settlements for fairness, reasonableness, and adequacy." *Roses, 1–2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1048 (9th Cir. 2019). Because named Plaintiffs, Class Counsel, and Defendants' Counsel may have incentives inconsistent with the interests of absent class members, the Court must take care to protect the due process rights of those absent class members. And because this incongruity is most pronounced where the settlement comes prior to class certification, "settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Id.* at 1048–49 (internal quotation marks and citation omitted). The Court must look particularly for evidence of collusion or other conflicts of interest to protect absent class members. *Id.*

Applying this standard, the Court finds that the Settlement is fair, reasonable, and adequate to the Settlement Class in light of the complexity, expense, and likely duration of the litigation (including appellate proceedings), as

well as the risks involved in establishing liability, damages, and the appropriateness of class treatment through trial and appeal. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009). The Settlement appears to be the result of arm's-length negotiation, and the record doesn't support a conclusion that the Settlement is the result of either: (1) collusion among Plaintiffs and Class Counsel, and Defendants; or (2) conflicts of interest between Plaintiffs and Class Counsel, on the one hand, and the Class Members, on the other.

### A. Generally

Plaintiffs and Class Counsel have fairly and adequately represented the Settlement Class, reaching the proposed Settlement after diligently pursuing the Settlement Class's claims. The Settlement was the result of arm's-length negotiations conducted by the parties in good faith and after consultation with competent legal counsel, and with the assistance of an experienced mediator, Jed D. Melnick, Esq. of JAMS. The action was filed in good faith, not frivolous, and in compliance with Rule 11 of the Federal Rules of Civil Procedure. Based on the negotiations between counsel for the parties, the parties fully understood the nature, strength, and weaknesses of each other's claims and defenses.

Plaintiffs and Defendants were fully informed of the legal bases for the claims and defenses herein and capable of balancing the risks of continued litigation and the benefits of the Settlement. Class Counsel and Defendants' Counsel are experienced civil litigation lawyers with specialized knowledge in complex class action litigation generally. Class Counsel and Defendants' Counsel are capable of properly assessing the risks, expenses, and duration of continued litigation.

### B. The Settlement Affords Meaningful Relief

Under the terms of the Stipulation, Defendants will pay a total of $10,000,000. (Dkt. 89 ¶ 8) The Settlement Fund represents 15.9% of the total maximum damages available. (*Id.*). After deducting all payments of Court-

approved attorney fees and expenses and class representative service awards from the Settlement Fund, the remaining amount will be divided by the number of Class Members on a *pro rata* basis according to the size of each Class Member's claim. This is a reasonable recovery for the Settlement Class's claims. *See, e.g., Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015) (approving securities fraud class action settlement where recovery of $1.5 million was 5.6% of estimated damages).

On the other side of the ledger and as described in further detail *infra*, Section VII, participating Class Members will release the claims actually brought and other claims that could have been brought under federal and state law arising out of the allegations of the operative complaint, but excluding all other claims, including derivative claims asserted by Ra Medical shareholders in a related shareholder derivative lawsuit not before the Court. (Dkt. 73-2 ¶ (1)(mm)).

The Court finds the release reasonable in scope and, in light of the risks, costs, and duration of continued litigation, the amount paid to Plaintiffs and the Settlement Class fair, reasonable, and adequate consideration for that release.

### C. No Collusion or Conflicts of Interest

The Court finds no evidence to support a conclusion that Plaintiffs and Defendants colluded. To the contrary, up to and through the Settlement, the parties vigorously litigated and negotiated this action, as evidenced by the docket.

There is one agreement falling within Federal Rule of Civil Procedure 23(e)(2)(C)(iv): Ra Medical has the unilateral right to terminate the Settlement if a certain number of Class Members, specified in a confidential supplemental agreement between Ra Medical and Plaintiffs, request exclusion from the Settlement Class. (Dkt. 73-2 ¶ 35). This agreement reflects Defendants' desire for finality and doesn't impact the fairness of the settlement.

Because the Settlement Class's benefit from the Settlement is fair, reasonable, and adequate, the Settlement withstands scrutiny, and the Court finds

no apparent collusion.

### D. Response of the Settlement Class

The Settlement Class's responses after full, fair, and effective notice, *see infra* Section V, favor final approval of the Settlement. At least 4,856 Class Members received notice. (*See* Dkt. 95-1 ¶ 5). None filed an objection to or requested exclusion from the Settlement.

## V. Notice

Pursuant to the Amended Preliminary Approval Order, Epiq sent the Notice Packet to 4,856 Class Members by mail. (*See* Dkt. 95-1 ¶ 5). Epiq also posted downloadable versions of the Notice Packet on the settlement website. (*See* Dkt. 89 ¶ 63). The Notice Packet informed Class Members of the terms of the Settlement, as well as their right to receive a Settlement Share, comment on or object to the Settlement and/or the attorneys' fees and costs, elect not to participate in the Settlement and pursue their own remedies, and appear in person or by counsel at the final approval hearing and be heard regarding approval of the Settlement. Adequate periods of time were provided by each of these procedures.

The notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the settlement based on the response of Class Members. The Notice Packet provided in this case was the best notice practicable, satisfying the requirements of law and due process.

## VI. Costs and Fees

The requested attorneys' costs and class representative service payments are fair and reasonable. The Court grants final approval to and orders that the payment of $5,000 to each of the two Plaintiffs for class representative service payments and $43,131.77 for reimbursement of costs be paid out of the Settlement Fund in accordance with the Stipulation.

The Fee Motion requests an award of attorneys' fees of 27.5% of the

Settlement Fund, an award greater than the Ninth Circuit's 25% benchmark. (*See* Dkt. 88 at 2–3). The Court has read, heard, and considered Class Counsel's arguments in favor of deviating from the 25% benchmark. The Court recognizes the strong result in this case but doesn't find a sufficient reason to deviate from the benchmark. Accordingly, the Court awards attorneys' fees of 25% of the Settlement Fund and orders $2,500,000 for attorneys' fees to Class Counsel be paid out of the Settlement Fund.

## VII.  Release

Upon entry of final judgment, Class Members, including Plaintiffs, will fully release and forever discharge Defendants and the Released Parties of all claims that were or reasonably could have been alleged based on the facts in the operative complaint and relate to the purchase or acquisition of Ra Medical common stock during the Class Period and expressly excluding claims related to enforcement of the Settlement, claims by any person who, or entity which, submits a request for exclusion that is accepted by the Court, and derivative claims asserted by Ra Medical shareholders in a related shareholder derivative lawsuit not before the Court. Nothing in this order shall preclude any action to enforce the parties' obligations under the Settlement or under this order, including the requirement that Defendant make payment in accordance with the Stipulation.

If, for any reason, the Effective Date (as defined in the Stipulation) does not occur, this Order will be vacated; the parties will return to their respective positions in this action, as those positions existed immediately before the parties executed the Stipulation; and nothing stated in the Stipulation or any other papers filed with this Court in connection with the Settlement will be deemed an admission of any kind by any of the parties or used as evidence against, or over the objection of, any of the parties for any purpose in this action or in any other action.

The parties represent that they entered into the Settlement solely for the purpose of compromising and settling disputed claims. Defendant expressly

denies any violation of law or any liability whatsoever to Plaintiffs and/or the Settlement Class, individually or collectively.

## CONCLUSION

The Settlement is ordered finally approved, and all terms and provisions of the Settlement are ordered to be consummated. Participating Class Members will be bound by the Settlement. The parties are hereby ordered to comply with the terms of the Stipulation.

The action is **DISMISSED WITH PREJUDICE**, and final judgment is entered. Each side will bear its own costs and attorneys' fees except as provided by the Settlement and this Order.

The parties have consented to the continued jurisdiction of United States Magistrate Judge Allison H. Goddard or any Magistrate Judge who may later be assigned over all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Order and the Settlement.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated:  September 23, 2022

*Larry A. Burns*
**Hon. Larry Alan Burns**
United States District Judge