Robert V. Prongay (SBN 270796)
Joseph D. Cohen (SBN 155601)
Casey E. Sadler (SBN 274241)
Pavithra Rajesh (SBN 323055)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:(310) 201-9150
Email:      rprongay@glancylaw.com
            jcohen@glancylaw.com
            csadler@glancylaw.com
            prajesh@glancylaw.com

*Attorneys for Lead Plaintiff Ervin Derr and Peter Shoemaker and for the Settlement Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERVIN DERR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RA MEDICAL SYSTEMS, INC., DEAN IRWIN, ANDREW JACKSON, MELISSA BURSTEIN, MARTIN BURSTEIN, RICHARD HEYMANN, MAURICE BUCHBINDER, MARTIN COLOMBATTO, RICHARD MEJIA, JR., PIPER JAFFRAY & CO., CANTOR FITZGERALD & CO., SUNTRUST ROBINSON HUMPHREY, INC., NOMURA SECURITIES INTERNATIONAL, INC., and MAXIM GROUP LLC,<br><br>Defendants. | Case No. 3:19-cv-01079-LAB-AHG<br><br>**CLASS ACTION**<br><br>**LEAD PLAINTIFFS': (1) NOTICE OF UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER; AND (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: December 11, 2023<br>Time: 11:30 a.m.<br>Location: Courtroom 14A<br>Judge: Hon. Larry Alan Burns |

**<u>NOTICE OF MOTION FOR CLASS DISTRIBUTION ORDER</u>**

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 11, 2023, at 11:30 a.m., or as soon thereafter as the matter can be before the Honorable Larry Alan Burns, in Courtroom 14A, 333 West Broadway, San Diego, CA 92101, Court-appointed lead plaintiffs Ervin Derr and Peter Shoemaker (collectively, "Lead Plaintiffs"), will and hereby do move this Court for entry of the [Proposed] Class Distribution Order (the "Class Distribution Order"), which, among other things, will: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the above-captioned action (the "Action"); (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and  (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities; the concurrently filed Declaration of F. Paul Bland, Jr. of the Public Justice Foundation; and the concurrently filed Declaration of Melissa Mejia in Support of Lead Plaintiffs' Unopposed Motion for Class Distribution Order ("Mejia Decl." or "Mejia Declaration"), submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator"), and the exhibits attached thereto.

Lead Counsel gave Defendants advance notice of this Motion, and counsel for Defendants authorized Lead Counsel to represent that Defendants do not oppose the proposed relief.

Because this Motion is unopposed, Lead Counsel respectfully submits that the Motion may be decided without a hearing.

UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER          Case No.: 3:19-cv-01079-LAB-AHG

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Court-appointed Lead Plaintiff Ervin Derr and Peter Shoemaker ("Lead Plaintiffs") on behalf of themselves and the Settlement Class, respectfully submit this memorandum in support of the Unopposed Motion for Class Distribution Order (the "Motion").[1]  The proposed plan for distribution of the Net Settlement Fund is set forth in the accompanying Mejia Declaration.  *See* Mejia Decl. ¶¶37(a)-(e).

## II.   BACKGROUND

On November 12, 2021, the Parties entered into the Stipulation, the terms of which established a $10,000,000 Settlement Fund on behalf of the Settlement Class, consisting of all persons and entities that purchased or otherwise acquired Ra Medical common stock: (a) pursuant and/or traceable to Ra Medical's IPO; and/or (b) between September 27, 2018 and November 27, 2019, inclusive.[2]

The Court issued its Amended Order (1) Granting Motion for Preliminary Approval of Class Action Settlement, (2) Denying Motion to Dismiss Without Prejudice, and (3) Denying Motion for Consideration of Documents Without

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated November 12, 2021 (ECF No. 73-2; the "Stipulation"), or the Mejia Declaration.

[2] Excluded from the Settlement Class are: (a) persons and entities who or which suffered no compensable losses; and (b)(i) Defendants and Underwriters; (ii) any person who served as a partner, control person, executive officer and/or director of Ra Medical or Underwriters during the Settlement Class Period, and their Immediate Family Members; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Ra Medical and Underwriters; (iv) any entity in which Defendants or Underwriters have or had a controlling interest; (v) any trust of which any Individual Defendant is the settler or which is for the benefit of any Individual Defendant and/or their Immediate Family Members; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof.

UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER          Case No.: 3:19-cv-01079-LAB-AHG

Prejudice on February 11, 2022, which, among other things, granted preliminary approval of the Settlement. ECF No. 81 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator mailed more than 4,862 copies of the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion For an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, (the "Notice") and the Proof of Claim and Release Form (the "Claim Form"; and together with the Notice, the "Notice Packet") to potential Settlement Class Members, brokers and other nominees; published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service); established a case-specific website dedicated to this Settlement (www.RaMedicalSecurities Litigation.com; the "Settlement Website"); and set up a toll-free helpline. *See* Mejia Decl., ¶¶2, 5. The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form. *See id.*, ¶2; *see also* Settlement Website.

On September 23, 2022, the Court entered the Order: (1) Granting Motion for Final Approval of Class Settlement; and (2) Granting in Part Motion for Attorney fees and Reimbursement of Litigation Expenses. Among other things, the Order granted final approval of the Settlement, and approved the Plan of Allocation. ECF No. 97.

Lead Counsel now requests that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator's expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

### III.   CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail or online, postmarked by, or received, no later than July 9, 2022.  *See* ECF No. 89-1, Ex. A (Notice) at p. 2.  The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency.  *See* Mejia Decl., ¶¶10-17, 21-25.

Of the 1,071 Claim Forms received by the Claims Administrator, 216 were paper Claim Forms or Claims submitted through the Settlement Website.  *Id.*, ¶10. The remaining 855 Claims were Electronic Claims.  Electronic Claims are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants ("E-Claim Filers").  *Id.*, ¶13.  Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry.  *Id.*  This process is designed to expedite the claims process.

If a paper or online Claim was deficient or defective, the Claims Administrator sent a letter to the Claimant, a sample of which is attached as Exhibit B to the Mejia Declaration.  *Id.*, ¶22, Ex. B.  The letter advised the Claimant that he, she, or it had twenty (20) days from the date of the letter to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection.  *Id.*  Of the 216 paper and online Claims, the Claims Administrator sent deficiency letters for 128 Claims (or approximately 59%).  *Id.*, ¶21.

If an Electronic Claim was deficient or defective, the Claims Administrator sent an email to the E-Claim Filer with an attached spreadsheet containing detailed information associated with the Claims and indicating which of those Claims within the filing were deficient and/or rejected. *Id.*, ¶24. Of the 855 Electronic Claims, 386 were incomplete or deficient (or approximately 45%). *Id.*

The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible. *Id.*, ¶¶23, 25. Ultimately, as detailed in the Mejia Declaration, after the deficiency process was complete, the Claims Administrator determined that 411 Claims are acceptable and should receive a distribution. This number includes 401 timely and valid claims, and 10 Late But Otherwise Eligible Claims (addressed in Section IV below). Mejia Decl., ¶¶27, 33, 35-36 & Exs. C-1, C-2. These Claims represent a total Recognized Loss amount of $50,777,328.91.[3] *Id.*, ¶¶35-36; Exs. C-1, C-2. The Claims Administrator also determined that 660 Claims are not eligible and should be rejected for the following reasons: (i) 292 Claims did not result in a Recognized Loss under the Plan of Allocation; (ii) 218 Claims were withdrawn by the filer or voided by request; (iii) 102 Claims had no purchases of Ra Medical common stock during the Settlement Class Period; (iv) 33 Claims had uncured conditions of ineligibility; and (v) 15 Claims were duplicates. *Id.*, ¶¶34-35, and Ex. C-3.

## IV.   LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the July 9, 2022, claims filing deadline. There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class

---

[3] The Recognized Loss amount is $50,333,245.51 for timely and valid Claims, and $444,083.40 for Late But Otherwise Eligible Claims. *Id.*, ¶36.

settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of May 13, 2023. Mejia Decl., ¶28.

Of the 1,071 Claims submitted, 32 were received or postmarked after the July 9, 2022 deadline, but before the Claim's Administrator's imposed cut-off date of May 13, 2023. Mejia Decl., ¶27. Of these 32 Claims, 10 are otherwise eligible ("Late But Otherwise Eligible Claims"). *Id.*, ¶¶27, 35 &Ex. C-2. These 10 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* at 27. Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Proofs of Claim, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF (AJWx), 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims"); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Mejia Decl., ¶¶27, 35, 36, and Ex. C-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims or responses to deficiency letters received after May 13, 2023 be included in the distribution, unless the Court later orders otherwise. *See* Mejia Decl., ¶¶28, 40(d). "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, No. 09-MD-2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## V. DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution"). *See* Mejia Decl., ¶40(a)(i)-(iii). Based on the substantial experience of the Claims Administrator and Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly. To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses relating to unpaid distributions, the Claims Administrator and Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." *Id.*, ¶40(a)(iv).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after six (6) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator,

determines that it is cost-effective to do so. *Id.*, ¶40(b). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id.* Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id.*, ¶40(c).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy. Mejia Decl., ¶40(c)(i); *see* Declaration of F. Paul Bland, Jr. of the Public Justice Foundation, ¶¶2-10; *see also id.*, ¶¶11-12 (cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary). The proposed Class Distribution Order filed concurrently herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

## VI.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Lead Plaintiffs respectfully request that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g., Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re Nuvelo, Inc. Sec. Litig.*, 2012 WL 12920613, at *2 (N.D. Cal. July 16, 2012); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *3 (C.D. Cal. Aug. 4, 2014); *In re Medicis Pharm. Corp. Sec. Litig.*, 2013 WL 12149720, at *2 (D. Ariz. Mar. 8, 2013).

## VII.    THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total fees and expenses charged by the Claims Administrator in this matter are $73,918.24. Mejia Decl., ¶39. To date, the Claims Administrator has received payment of $68,315.26. *Id.* The estimate to conduct the Initial Distribution is $11,874.15. *Id.* & Ex. D. Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $17,477.13 for costs incurred by Epiq, but not yet paid, and in anticipation of the work that will be performed for the Initial Distribution.[4] *Id.*

## VIII.    RECORDS RETENTION AND DESTRUCTION

Lead Plaintiffs respectfully request that the Court order that: (a) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, one year after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (b) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶40(e).

## IX.    CONCLUSION

For the above reasons, Lead Plaintiffs respectfully request that the Motion be granted.

---

[4] If the anticipated fees and expenses to conduct the Initial Distribution are greater than the actual cost to conduct the distribution, the excess will be returned to the Settlement Fund. *Id.*

Dated: November 3, 2023

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Joseph D. Cohen*
Robert V. Prongay
Joseph D. Cohen
Casey E. Sadler
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
        jcohen@glancylaw.com
        csadler@glancylaw.com
        prajesh@glancylaw.com

*Attorneys for Lead Plaintiffs and the Settlement Class*

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On November 3, 2023, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 3, 2023, at Los Angeles, California.

*s/ Joseph D. Cohen*
Joseph D. Cohen